**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Ft. Lauderdale Division**

Case No:  18-cv-62686-UU

AMERICAN PROPERTY INSURANCE
COMPANY, a foreign corporation,
                Plaintiff,


v.


SOUND CONNECTION DISTRIBUTORS, INC.,
a Florida for Profit Corporation; SHIMON SWISSA,
individually; ZEVULONI & ASSOCIATES, INC.,
a Florida for Profit Corporation; and JOSEPH
ZEVULONI, individually.
                Defendants.
_____/

CASE NO.: 18-cv-62709-CIV-UU

SOUND CONNECTION DISTRIBUTORS,
INC., a/k/a SOUND CONNECTION
DISTRIBUTORS,

Plaintiff,

v.

AMERICAN PROPERTY INSURANCE
COMPANY,

      Defendant.
_____/

**AMENDED CIVIL ACTION COMPLAINT**

      The Plaintiff, AMERICAN PROPERTY INSURANCE COMPANY ("APIC"), through

its undersigned counsel, hereby files this Amended Complaint against the Defendants, SOUND

CONNECTION DISTRIBUTORS, INC., a Florida for Profit Corporation; ZEVULONI &

ASSOCIATES, INC., a Florida for Profit Corporation; SHIMON SWISSA; individually; and, JOSEPH ZEVULONI, individually, and in support hereof, states and alleges as follows:

## THE PARTIES

1.      Plaintiff, APIC, is a New Jersey corporation with its principal place of business at 4 Industrial Way West, Suite 102, Eatontown, New Jersey 07724.  It is, thus, a citizen of New Jersey for diversity purposes.

2.      The Defendant, SOUND CONNECTION DISTRIBUTORS, INC. ("SOUND CONNECTION"), was at all material times, a Florida for-profit corporation, with its principal place of business at 2801 Greene Street, Hollywood, Florida.  It is, thus, a citizen of Florida for diversity purposes.

3.      The Defendant, SOUND CONNECTION, was the named insured under a policy of insurance issued by APIC, which provided Commercial General Liability and Property Coverage, described more fully below.  It also owned the subject property, which, as relevant to the instant matter, was insured by APIC and is located at 2801 Greene Street, Hollywood, Florida.  This property is hereinafter referred to as the "insured property" or the "insured premises."

4.      The Defendant, SHIMON SWISSA, is *sui juris* and a resident of Broward County, Florida.  He is, thus, a citizen of Florida for diversity purposes.  He is the owner of the defendant, Sound Connection.

5.      The Defendant, ZEVULONI & ASSOCIATES, INC., was at all material times, a Florida for-profit corporation, with its principal place of business at 10130 NW 47th Street, Sunrise, Florida.  It is, thus, a citizen of Florida for diversity purposes.

6.     The Defendant, JOSEPH ZEVULONI, is *sui juris* and a resident of Broward County, Florida.  He is, thus, a citizen of Florida for diversity purposes.  He is a licensed "public adjuster" pursuant to Florida statutes and regulations pertaining to same.

7.     The Defendant, Zevuloni & Associates, Inc., hired or contracted with a third-party, Donald J. Antol, who *was* a licensed general contractor and roofer, to assist in preparing the subject damage estimates, which are discussed in more detail below, who might need to be subsequently added to the complaint as a defendant *via* an amendment.  If that is the case, his addition will not defeat diversity jurisdiction as he is a *sui juris* individual and a resident of either Palm Beach County or Broward County, Florida.  He is, thus, a citizen of Florida for diversity purposes.

## JURISDICTION AND VENUE

8.     Subject matter jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. §1332, in that the plaintiff is a citizen of New Jersey and all defendants are citizens of Florida; and, the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.  In fact, the underlying claim of Sound Connection for damages allegedly sustained by Hurricane *Irma* which it is seeking against APIC is in excess of $3.8 million.

9.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. §1391(a) because the acts and omissions that gave rise to this matter took place in this jurisdiction, and the insured property is located within this district.

10.    There is *in personam* jurisdiction over all defendants since they are either Florida residents or Florida corporations.

11.    All conditions precedent to bringing this action have been performed or are otherwise waived.

## BACKGROUND FACTS

12.     On May 24, 2017, the Defendant's, Sound Connection's, prior insurance policy that covered the insured property lapsed.  Since this was, essentially, at the very start of hurricane season, Sound Connection desperately needed another insurance policy covering the insured premises.

13.     On May 25, 2017, an application for insurance with APIC pertaining to the insured property was prepared by Sound Connection; it was signed by the defendant, Shimon Swissa, the owner of Sound Connection, on June 26, 2017.  A copy of that application is attached hereto as *Exhibit A*.

14.     In reliance upon the truthfulness and accuracy of the representations and statements made in the application, APIC issued its policy of insurance covering the insured property, which policy was to be effective from May 26, 2017, to May 26, 2018.  The subject policy has a Building Limit of coverage for $3,250,000.00.  A copy of APIC's insurance policy is attached hereto as *Exhibit B*.

15.     In the application, the operations of the named insured, Sound Connection, was described as "wholesale distribution of electronic goods."  Inspection showed that, while that once might have been the case, there were no such operations ongoing at the time periods relevant hereto.

16.     In the application, Sound Connection failed to disclose that a related corporation that was also owned by Shimon Swissa operated a night club of sorts at the insured property, called "Mega Vault," which included a dance floor, wine vault and a full bar, and which was typically and routinely rented by third-parties for various events and parties.

17.     In the application, Sound Connection misrepresented that the entity that operated "Mega Vault" had its own insurance program with respect to its operations at the insured property.

18.     In the application, Sound Connection, misrepresented that "Mega Vault" was a "catering hall," saying nothing about the service of, among other things, alcohol.

19.     In the application, Sound Connection failed to properly describe the operations of another type of business that was operated by another related company, also owned by Shimon Swissa, at the insured property under the name Shimon's Cars, which purchased used cars, cars at auction, and salvaged cars which were repaired and then sold to third-parties, all at the insured premises.

20.     In the application, Sound Connection misrepresented that the entity that operated Shimon's Cars at the insured property had its own insurance program for all of its operations.

21.     APIC issued the insurance policy, and rated the premium that was charged for it, based upon the truthfulness and accuracy of the answers, statements and representations provided by the insured, Sound Connection, in the insurance application.

22.     On September 10, 2017, Hurricane *Irma* impacted, to some extent, the Southeast Florida area, although it was a much stronger wind event in the central and northern parts of the state.  It is, in fact, not clear at all whether the area of the insured premises actually experienced hurricane-force winds.

23.     On or around October 16, 2017, more than one month after Hurricane *Irma*, Sound Connection retained Zevuloni & Associates, Inc. and its principal, Joseph Zevuloni, to act as its public adjuster with respect to making a claim against APIC for alleged damages to the insured premises, the buildings and structures thereon, and certain of the building's contents.

24.     On or around October 18, 2017, Sound Connection retained a company called "Dry Master Specialists, Inc.," which was referred by defendant Joseph Zevuloni, to allegedly perform water/moisture mitigation at the insured property even though this was five weeks after *Irma*.  Sound Connection did not actually pay cash to Dry Masters for its alleged work at the insured premises; rather, Dry Masters worked on an assignment of insurance benefits from Sound Connection and ended-up charging APIC more than $177,000.

25.     The subject insurance policy issued by APIC has a Policy Property Endorsement, titled "Emergency Repairs Limits," which states:

> Subject to any other written correspondence, the specified aggregate annual limit afforded under this policy for the purpose of procuring emergency repairs or measures occurring within 96 hours of the loss occurrence, and exclusively to prevent subsequent loss to covered property is $25,000; and does not exceed any other applicable coverage limit(s).  This provision does not supersede any conditions, limitations, loss adjustment procedures, or duties in the event of a loss as described in the policy documents and is subject to the specified deductible stated in your policy.

26.     The first water mitigation services provided in response to the September 10, 2017 Hurricane *Irma* claim did not, as stated above, occur until *five weeks after Irma*.  The insured, thus, failed to utilize the money available to it under the "Emergency Repairs Limits."

27.     On or around October 30, 2017 -- *i.e.*, nearly fifty days after the storm and two weeks after it hired Zevuloni -- APIC was *first notified* by Sound Connection that it allegedly suffered property damage as a result of Hurricane *Irma*.  Needless to say, this sort of a delay obviously prejudiced APIC's ability to properly investigate and assess Sound Connection's claims.

28.     Notwithstanding this significant delay, APIC acted promptly, and on November 2, 2017, APIC inspected the property so as to assess the alleged hurricane-related damages, to the

extent that they still existed. APIC conducted this inspection, and all subsequent inspections, under a full reservation of rights.

29. On or about November 9, 2017, APIC sent correspondence to Sound Connection requesting documents to support its claim of alleged hurricane damages.

30. Sound Connection again delayed significantly, and responded to APIC's document request three months later, on February 8, 2018, and, even then, did not provide all of the requested information.

31. A second and third request for the supporting documents were sent to Sound Connection on February 26, 2018, and February 28, 2018.

32. Sound Connection again significantly delayed, and on June 1, 2018, over three months from the follow-up request, it responded with another incomplete production of documents, and, *for the first time*, supplied APIC with a Sworn Proof of Loss, which, of course, the policy required the insured to provide much earlier.

33. Due to the incomplete documentation and the complexity of the claim, APIC elected to take the Examination Under Oath ("EUO") of Sound Connection, by its owner and principal, the defendant, Shimon Swissa, and made this request in writing to Sound Connection on June 7, 2018.

34. The Examination Under Oath of the defendant, Shimon Swissa, was set for July 6, 2018.

35. The EUO was reset to July 19, 2018, at the request of counsel for Sound Connection because, according to counsel, the requested documentation had still not all been located.

36.     Less than twenty-four hours prior to the July 19, 2018 EUO, Sound Connection, through its counsel, send APIC's counsel a Dropbox link containing, allegedly the remainder of the requested documents.   However, the documents in the link were totally disorganized; they were not indexed, Bates stamped, or identified as being responsive to APIC's particular enumerated requests.

37.     Due to the late production of the documents and the complexity of the claim, the EUO of Mr. Swissa was not completed in one day and was set for a second day, July 26, 2018.

38.     On July 24, 2018, two days prior to the second day of the EUO, counsel for Sound Connection provided another Dropbox link of unindexed, uncoordinated documents, which were again not Bates-stamped and not identified as responsive to the particular requests that were made by APIC.

39.     Due to this late production of documents, the EUO of defendant, Swissa, was rescheduled for July 31, 2018.

40.     During Mr. Swissa's EUO, he testified that he had made claims against other insurers on behalf of other business entities that operated out of the same insured property.  Such documents had to, of course, be requested.  And when they were received, even these documents were not complete.

41.     It was not until May 24th, 2018 that Sound Connection first provided APIC with an estimate prepared by its public adjuster.  The estimate was frequently changed.  In fact, APIC was provided with three different estimates of damages prepared by its public adjuster, Zevuloni & Associates, Inc. and Joseph Zevuloni: one dated May 24, 2018, for $3,912,574.94; a second dated July 18, 2018, for $3,849,245.37; and a third estimate dated September 12, 2018, for $3,811,589.11.

42.     During Mr. Swissa's EUO, he was unable to answer most of the questions that were related to the itemized damages provided in the public adjuster's estimates.

43.     Additionally, at his EUO, it became apparent that Mr. Swissa failed to preserve important evidence relating to the claim. Specifically, when asked if he possessed photographs taken shortly after the hurricane, proving that loss and damage had occurred, he said that he had them on his cell phone, but he had since dropped that cell phone in the toilet destroying it.  When asked when that occurred, he advised that it was sometime this year, meaning that he was in possession of the subject photographs for several months after the loss allegedly occurred, and yet, despite repeated demands from APIC, they were not provided.

44.     Notwithstanding that Swissa was incapable of producing what would have been highly relevant pictures that he took on his cell phone shortly after the hurricane, he did selectively print some of them out to be produced, such as pictures of a Mr. Michael Corcoran allegedly making repairs to certain electronic equipment that was used in connection with the operations of Mega Vault and damage to the car repairing operations of Shimon's Cars.  Mr. Corcoran also prepared a detailed listing of allegedly damaged electronic sound equipment, which totally approximately $700,000.

45.     When counsel for APIC requested to interview or to take the statement of Mr. Corcoran, it was refused.

46.     The defendant, Shimon Swissa, testified at his EUO that he hired an expert to allegedly recover the photographs from his cell phone that he allegedly dropped in a toilet. When APIC's counsel requested to interview or take the statement of this expert so as to asses what efforts were actually taken to recover the cell phone's contents, it was refused.

9

47.     Defendant, Shimon Swissa, was requested to provide tax and accounting records as to the Sound Connection and Mega Vault entities so that it could determine, among other things, which entity actually owned the equipment and personal property that was allegedly damaged and was being claimed against APIC and whether Mega Vault continued to operate after the hurricane, but this was also refused.  Nonetheless, only a few weeks before the filing of the instant complaint, Sound Connection's counsel sent to APIC's counsel various receipts for events/parties at the Mega Vault club after Hurricane *Irma*.  These invoices always would have been readily available to Sound Connection since it shared the same owner as Mega Vault – *i.e.*, Shimon Swissa.

48.     Sound Connection provided APIC with two different invoices for water mitigation services.  The first, as stated above, was from Dry Masters for water extraction and drying-out services dated December 19, 2017, for a total of $177,187.44.  The second invoice was from a company called, Projekt Property Restoration, Inc., for an emergency service call for water extraction dated May 15, 2018.  Both of these were much after the hurricane.

49.     Based upon a very extensive investigation undertaken by APIC, with the assistance of various experts and professional consultants, APIC issued a formal letter to Sound Connection on October 15, 2018 advising it that the only storm-related damages were well below the applicable policy deductible, which was $177,000.  Notwithstanding this, Sound Connection demanded, through its counsel, that APIC submit to the appraisal process provided for in the subject policy.

## COUNT I – RESCISSION OF POLICY
### (As to Sound Connection)

50.     APIC re-alleges the allegations contained in paragraphs one (1) through forty-nine (49), as if fully set forth herein and below.

51.     In completing its application for insurance, Sound Connection made misrepresentations, as referenced in paragraphs eleven (11) through twenty-one (21), *supra*.

52.     *Florida Statutes* §627.409 pertains to rescission of insurance policies based upon misrepresentations made in insurance applications, and provides as follows:

> (1) Any statement or description made by or on behalf of an insured . . . in an application for an insurance policy . . . or in negotiations for a policy or contract, is a representation and not a warranty. Except as provided in subsection (3), a misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if *any* of the following apply:
>
> **(a)**The misrepresentation, omission, concealment, or statement is fraudulent *or* is material to the acceptance of the risk or to the hazard assumed by the insurer.
>
> **(b)**If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

(Emphasis added).

53.     As stated above, it was based upon and in reliance upon the truthfulness and accuracy of Sound Connection's application of insurance that APIC issued the subject policy and issued it at the particular premium.

54.     Sound Connection's misrepresentations were fraudulent because Sound Connection, through its owner, knew the true and accurate facts, and knew the statements and descriptions in the application did not comport therewith.

55.     Sound Connection's misrepresentations were material in that had APIC known the true set of facts, it would not have issued the policy of insurance or would have issued it at a considerably different premium.

56. Due to the fraudulent and/or the material misrepresentations, the policy issued by APIC should be rescinded pursuant to *Florida Statutes* §627.409.

57. In addition to the above, the subject policy states as follows with respect to fraud or misrepresentations:

> **A. CONCEALMENT, MISREPRESENTATION OR FRAUD**
> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
> **1.** This Coverage Part;
> **2.** The Covered Property;
> **3.** Your interest in the Covered Property; or
> **4.** A claim under this Coverage Part.

58. The policy is void or may be voided – which APIC hereby elects to do – by reason of the fraud and misrepresentations of Sound Connection under this policy provision.

## COUNT II – RESCISSION FOR FRAUD IN MAKING THE CLAIM
### (As to Sound Connection and Shimon Swissa)

59. APIC re-alleges the allegations contained in paragraphs one (1) through forty-nine (49), as if fully set forth herein and below.

60. Defendants, Zevuloni & Associates, Inc. and Joseph Zevuloni, created and prepared estimates of alleged damages at the insured premises. These estimates were adopted by Sound Connection and its owner, Shimon Swissa, as being truthful and accurate, and were submitted to APIC in support of Sound Connection's claim for *Irma*-related damages under the subject APIC policy.

61. As stated above, APIC thoroughly inspected the insured premises as part of its investigation of Sound Connection's claim.

62.     As part of its inspections, APIC had to hire various professional and engineering experts and consultants to assist in assessing Sound Connection's claim, and specifically the various and many items of alleged damages contained on the estimates.  The expense of this was considerable.

63.     APIC was able to unequivocally determine that not only were the estimates significantly inflated, there were many items contained on the estimates that simply did not exist or did not come close to reflecting the accurate circumstances at the insured premises, such as, by way of example, *Irma*-related roof openings that did not exist; stucco delamination that did not exist; drywall that did not exist; and allegedly damaged components of the building that did not exist.

64.     Defendants also represented, in support of Sound Connection's claim against APIC, that certain appurtenant mechanical equipment was destroyed during Hurricane *Irma*. However, during APIC's investigation, it was determined that such mechanical equipment was not actually in place at the time of Hurricane *Irma*.

65.     The Defendants also made a claim for the costs of the labor and materials associated this allegedly destroyed mechanical equipment, and other consequential damages allegedly associated therewith.

66.     The Defendants made a significant claim for labor and materials with respect to certain interior duct work that was allegedly necessitated by damage done by Hurricane *Irma*, but, during APIC's investigation, it was determined that this duct work had been installed prior to *Irma*.

67.     The Defendants made statements and claimed that the electrical, sound system, and air conditioning were not functioning as a result of Hurricane *Irma,* and as a result, that diminished or eliminated the use of the property, and specifically the club, "Mega Vault."

68.     APIC's investigation has, however, shown unequivocally that Mega Vault continued to operate after Hurricane *Irma* and that it continued to book events after *Irma*, and that, in fact, events were held there after *Irma* and even before Dry Masters, did its first "water mitigation."

69.     The estimates containing these many and varied misrepresentations were compiled and prepared by Zevuloni & Associates, Inc. and Joseph Zevuloni.

70.     These estimates were approved and ratified by Sound Connection and its owner, Shimon Swissa, and submitted to APIC in support of its *Irma*-related claims under the subject APIC policy.

71.     The principal of Sound Connection, Shimon Swissa, took various photographs of the building and its condition – inside and the exterior – on his iPhone but concealed this highly relevant evidence from APIC for many months, and this evidence was then destroyed when Swissa allegedly dropped his phone in a toilet.

72.     As stated above, the subject policy states as follows with respect to fraud or misrepresentations:

> **A. CONCEALMENT, MISREPRESENTATION OR FRAUD**
> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
> **1.** This Coverage Part;
> **2.** The Covered Property;
> **3.** Your interest in the Covered Property; or
> **4.** A *claim under this Coverage Part*.

(Emphasis added).  The policy is void *ab initio* or it may presently be voided – which APIC hereby elects to do – by reason of the above-described fraud and misrepresentations in connection with the claim under this policy provision.

**COUNT III – COMMON LAW FRAUD**
**(As to Zevuloni & Associates, Inc., Joseph Zevuloni, Sound Connection and Shimon Swissa)**

73.     APIC re-alleges the allegations contained in paragraphs one (1) through forty-nine (49), as if fully set forth herein and below.

74.     Defendants, Zevuloni & Associates, Inc. and Joseph Zevuloni, created and prepared estimates of alleged damages at the insured premises.  These estimates were adopted by Sound Connection and its owner, Shimon Swissa, as being truthful and accurate, and were submitted to APIC in support of Sound Connection's claim for *Irma*-related damages under the subject APIC policy.

75.     As stated above, APIC thoroughly inspected the insured premises as part of its investigation of Sound Connection's claim.

76.     As part of its inspections, APIC had to hire, at considerable expense, various professional and engineering experts and consultants to assist in assessing Sound Connection's claim, and specifically the various and many items of alleged damages contained on the estimates.

77.     APIC was able to unequivocally determine that not only were the estimates significantly inflated, there were many items contained on the estimates that simply did not exist or did not come close to reflecting the accurate circumstances at the insured premises, such as, by way of example, *Irma*-related roof openings that did not exist; stucco delamination that did

not exist; drywall that did not exist; and allegedly damaged components of the building that did not exist.

78.     Defendants also represented, in support of Sound Connection's claim against APIC, that certain appurtenant mechanical equipment was destroyed during Hurricane *Irma*. However, during APIC's investigation, it was determined that such mechanical equipment was not actually in place at the time of Hurricane *Irma*.

79.     The Defendants also made a claim for the costs of the labor and materials associated this allegedly destroyed mechanical equipment, and other consequential damages allegedly associated therewith.

80.     The Defendants made a significant claim for labor and materials with respect to certain interior duct work that was allegedly necessitated by damage done by Hurricane *Irma*, but, during APIC's investigation, it was determined that this duct work had been installed prior to *Irma*.

81.     The Defendants made statements and claimed that the electrical, sound system, and air conditioning were not functioning as a result of Hurricane *Irma,* and as a result, that diminished or eliminated the use of the property, and specifically the club, "Mega Vault."

82.     APIC's investigation has, however, shown unequivocally that Mega Vault continued to operate after Hurricane *Irma* and that it continued to book events after *Irma*, and that, in fact, events were held there after *Irma* and even before Dry Masters, did its first "water mitigation."

83.     The estimates containing these many and varied misrepresentations were compiled and prepared by Zevuloni & Associates, Inc. and Joseph Zevuloni.

84.     These estimates were approved and ratified by Sound Connection and its owner, Shimon Swissa, and submitted to APIC in support of its *Irma*-related claims under the subject APIC policy.

85.     The principal of Sound Connection, Shimon Swissa, took various photographs of the building and its condition – inside and the exterior – on his iPhone but concealed this highly relevant evidence from APIC for many months, and this evidence was then destroyed when Swissa allegedly dropped his phone in a toilet.

86.     The Defendants' statements, claims and estimates, as stated above, were false.

87.     The Defendants knew the statements, claims and estimates were false.

88.     The Defendants intended by making the false statements, claims and estimates to induce APIC to rely on the same and to pay the claims and estimates.

89.     APIC suffered damages acting in reliance on the false statements, claims and estimates because it had to spend significant sums of money hiring attorneys and engineers to investigate the massive variety of items on the estimates, many of which were fraudulent.

## COUNT IV- DECLARATORY JUDGMENT
### (As to Sound Connection)

90.     APIC re-alleges the allegations contained in paragraphs one (1) through forty-nine (49), and fifty-nine (59) through seventy (70) as if fully set forth herein and below.

91.     APIC requests a judgment pursuant to the DECLARATORY JUDGMENT ACT, 28 U.S.C. §§ 2201 and 2202 for the purpose of declaring that there is no coverage for the claims made by defendant, Sound Connection, due to its failure to perform and breach of its post-loss duties required by the subject policy.

92.     APIC seeks a declaratory judgment regarding its rights and obligations, if any, under the Policy.

93.     Specifically, APIC is in doubt as to its rights and obligations under the policy with respect to the following provision:

> **Duties in The Event of Loss or Damage**
> **a.** You must see that the following are done in the event of loss or damage to Covered Property:
> **(1)** Notify the police if a law may have been broken.
> **(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.
> **(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.
> **(4)** Take all reasonable steps to protect Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside in the best possible order for examination.
> **(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.
> **(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.
> **(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
> **(8)** Cooperate with us in the investigation or settlement of the claim.

94.     There is a *bona fide*, actual, present practical need for the declaration as Defendant, Sound Connection is actively pursuing claims under the subject policy.

95.     Further, as referenced in more detail above, Sound Connection failed to comply with its post-loss duties required by the policy by: (1) providing late notice of the claim (over fifty days after the alleged loss); (2) failing to provide requested documentation in a timely and efficient manner despite repeated attempts by APIC; (3) failing to preserve and/or concealing

highly relevant evidence; making misrepresentations in connection with the claim.  This has severely prejudiced APIC's rights and its investigation of the claim.

96.     Due to Defendant, Sound Connection's failure to perform its post-loss duties under the subject policy, APIC seeks a declaration that there is no coverage under the policy.

97.     The declaration deals with a present, ascertained or ascertainable state of facts or present controversy as to the state of facts.

98.     APIC's privileges and rights under the Policy are dependent upon the facts or the law applicable to the facts.

99.     Defendant, Sound Connection has an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law.

100.     The antagonistic and adverse interests are all before the Court by proper process.

101.     The relief sought is not merely the giving of an advisory opinion by the Court, or the answer to a question propounded from curiosity.

## COUNT V – CIVIL CONSPIRACY
### (As to Zevuloni & Associates, Inc., Joseph Zevuloni, Sound Connection and Shimon Swissa)

102.     APIC re-alleges the allegations contained in paragraphs one (1) through forty-nine (49) and seventy-five (75) through eighty-five (85), as if fully set forth herein and below.

103.     Defendants, Zevuloni & Associates, Inc., Joseph Zevuloni, Sound Connection, and Shimon Swissa conspired to create and submit statements, claims and estimates of false damages at the insured premises to APIC for *Irma*-related damages under the subject APIC policy.

104.     The creation and submission of the false statements, claims and estimates to APIC was an unlawful act or was a lawful act by unlawful means.

105.    The Defendants created and submitted the false statements, claims and estimates to APIC in pursuance of the conspiracy.

106.    APIC suffered injury and damages as a result of the false statements, claims and estimates created and submitted by Defendants in furtherance of the conspiracy.

*Wherefore*, the Plaintiff, AMERICAN PROPERTY INDEMNITY COMPANY, requests that this Court enter a judgment declaring that the policy issued to SOUND CONNECTION DISTRIBUTORS, INC. is hereby voided and/or void *ab initio*; that there is no coverage for the subject claim; and also requests judgment against the Defendants, SOUND CONNECTION DISTRIBUTORS, INC., SHIMON SWISSA; ZEVULONI & ASSOCIATES, INC., and JOSEPH ZEVULONI for damages in excess of the sum of $75,000; and also that the Court award AMERICAN PROPERTY INSURANCE COMPANY its costs and reasonable attorney's fees incurred in connection herewith.

Respectfully submitted,

 */s/Michael Buckley*
**Michael B. Buckley, Esq.**
FBN: 365734
BUCKLEY LAW GROUP, P.A.
*Counsel for APIC*
3637 Fourth Street North, Suite 330
St. Petersburg, FL 33704
Phone: 727-822-4800
Fax: 727-822-4855
Primary Email:
mbuckley@buckleylawgroup.com
jseipel@buckleylawgroup.com
Secondary Email:
hdalmanieras@buckleylawgroup.com
jparmerlee@buckleylawgroup.com

# EXHIBIT A

OP ID: JB1

# ACORD COMMERCIAL INSURANCE APPLICATION
## APPLICANT INFORMATION SECTION

DATE (MM/DD/YYYY): **5/25/2017**

| AGENCY | CARRIER | NAIC CODE |
|---|---|---|
| Riemer Insurance Group<br>Hallandale Branch<br>PO Box 250<br>Hallandale, FL 33008-0250 | **American Property Insurance Co** | |

| UNDERWRITER: | UNDERWRITER OFFICE: |
|---|---|

| POLICIES OR PROGRAM REQUESTED | POLICY NUMBER |
|---|---|
| **PACKAGE** | |

**INDICATE SECTIONS ATTACHED**

| | | |
|---|---|---|
| | ACCOUNTS RECEIVABLE/VALUABLE PAPERS | ELECTRONIC DATA PROC |
| | BOILER & MACHINERY | EQUIPMENT FLOATER |
| | BUSINESS AUTO | GARAGE AND DEALERS |
| X | COMMERCIAL GENERAL LIABILITY | GLASS AND SIGN |
| | CRIME/MISCELLANEOUS CRIME | INSTALLATION/BUILDERS RISK |
| | DEALERS | OPEN CARGO |
| | DRIVER INFO SCHEDULE | X PROPERTY |
| | | TRANSPORTATION/MOTOR TRUCK CARGO |

| TRUCKERS/MOTOR CARRIER |
|---|
| UMBRELLA |
| VEHICLE SCHEDULE |
| WORKERS COMPENSATION |
| YACHT |

CONTACT NAME:

PHONE (A/C, No, Ext): **800-742-1691**

FAX (A/C, No): **954-454-9552**

E-MAIL ADDRESS:

CODE: ___ SUB CODE: ___

AGENCY CUSTOMER ID: **SOUNCO1**

## STATUS OF TRANSACTION

| X | QUOTE | | ISSUE POLICY | | RENEW |
|---|---|---|---|---|---|
| | BOUND (Give Date and/or Attach Copy): | | | | |
| | CHANGE | DATE | | TIME | AM |
| | CANCEL | | : | | PM |

## PACKAGE POLICY INFORMATION

ENTER THIS INFORMATION WHEN COMMON DATES AND TERMS APPLY TO SEVERAL LINES, OR FOR MONOLINE POLICIES.

| PROPOSED EFF DATE | PROPOSED EXP DATE | BILLING PLAN | PAYMENT PLAN | AUDIT |
|---|---|---|---|---|
| 05/26/17 | 05/26/18 | X DIRECT BILL | | |
| | | AGENCY BILL | PACKAGE POLICY PREMIUM: $ | |

## APPLICANT INFORMATION

NAME (First Named Insured & Other Named Insureds)

**Sound Connection Distributors,**

MAILING ADDRESS INCL ZIP+4 (of First Named Insured)

**Shimon Swissa<br>2801 GreenStreet<br>Hollywood, FL 33020**

FEIN OR SOC SEC # (of First Named Insured): **65-0144391**

PHONE (A/C, No, Ext): **954-924-2430**

E-MAIL ADDRESS(ES): **payables@soundcon.net**

WEBSITE ADDRESS(ES):

| INDIVIDUAL | X CORPORATION | SUBCHAPTER "S" CORPORATION | LLC | NO. OF MEMBERS AND MANAGERS | CR BUREAU NAME: | DATE BUS STARTED |
|---|---|---|---|---|---|---|
| PARTNERSHIP | JOINT VENTURE | NOT FOR PROFIT ORG | | | ID NUMBER: | 08/31/89 |

INSPECTION CONTACT: **Shimon Swissa**

ACCOUNTING RECORDS CONTACT: **Shimon Swissa**

PHONE (A/C, No, Ext): **954-924-2430** E-MAIL ADDRESS: **payables@soundcon.net**

PHONE (A/C, No, Ext): **954-924-2430** E-MAIL ADDRESS: **payables@soundcon.net**

## PREMISES INFORMATION    ACORD 823 attached for additional premises

| LOC # | BLD # | STREET, CITY, COUNTY, STATE, ZIP+4 | CITY LIMITS | INTEREST | YR BUILT | # EMPLOYEES | ANNUAL REVENUES | % OCCUPIED |
|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 2801 Greene Street<br>Hollywood FL 33020<br>Broward | X INSIDE / OUTSIDE | X OWNER / TENANT | 1971 | 2 | 1,800,000 | 50 |
| 1 | 1 | 2801 Greene Street<br>Hollywood FL 33020<br>Broward | X INSIDE / OUTSIDE | X OWNER / TENANT | 1971 | | | 50 |
| 1 | | 2801 Greene Street<br>Hollywood FL 33020<br>Broward | X INSIDE / OUTSIDE | X OWNER / TENANT | 1971 | | | 100 |
| | | | INSIDE / OUTSIDE | OWNER / TENANT | | | | |

## NATURE OF BUSINESS/DESCRIPTION OF OPERATIONS BY PREMISE(S)

| 1 | 1 | Wholesale Distrribution of Electronics |
|---|---|---|
| 1 | 1 | Lessor's Risk - 10,000 Sq Ft Rented to Used Auto Lot<br>10,000 Sq Ft Rented to Catering Hall |
| 1 | | Lessor's Risk (Parking)- 59,000 Rented for Used Auto Lot |

ACORD 125 (2007/10)    Page 1 of 3    © 1993-2007 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

**GENERAL INFORMATION**

| | | |
|---|---|---|
| | AGENCY CUSTOMER ID: _____ SOUNCO1 | OP ID: JB1 |

| EXPLAIN ALL "YES" RESPONSES | Y/N |
|---|---|
| 1a.  IS THE APPLICANT A SUBSIDIARY OF ANOTHER ENTITY ? | N |
| 1b.  DOES THE APPLICANT HAVE ANY SUBSIDIARIES? | N |
| 2.   IS A FORMAL SAFETY PROGRAM IN OPERATION? | N |
| 3.   ANY EXPOSURE TO FLAMMABLES, EXPLOSIVES, CHEMICALS? | N |
| 4.   ANY CATASTROPHE EXPOSURE? **Wind** | Y |
| 5.   ANY OTHER INSURANCE WITH THIS COMPANY OR BEING SUBMITTED? | N |
| 6.   ANY POLICY OR COVERAGE DECLINED, CANCELLED OR NON-RENEWED DURING THE PRIOR THREE (3) YEARS?  (Not applicable in MO) | N |
| 7.   ANY PAST LOSSES OR CLAIMS RELATING TO SEXUAL ABUSE OR MOLESTATION ALLEGATIONS, DISCRIMINATION OR NEGLIGENT HIRING? | N |
| 8.   DURING THE LAST FIVE YEARS (TEN IN RI), HAS ANY APPLICANT BEEN INDICTED FOR OR CONVICTED OF ANY DEGREE OF THE CRIME OF FRAUD, BRIBERY, ARSON OR ANY OTHER ARSON-RELATED CRIME IN CONNECTION WITH THIS OR ANY OTHER PROPERTY? (In RI, this question must be answered by any applicant for property insurance.  Failure to disclose the existence of an arson conviction is a misdemeanor punishable by a sentence of up to one year of imprisonment). | N |
| 9.   ANY UNCORRECTED FIRE CODE VIOLATIONS? | N |
| 10.  ANY BANKRUPTCIES, TAX OR CREDIT LIENS AGAINST THE APPLICANT IN THE PAST FIVE (5) YEARS? | N |
| 11.  HAS BUSINESS BEEN PLACED IN A TRUST? IF "YES", NAME OF TRUST: | N |
| 12.  ANY FOREIGN OPERATIONS, FOREIGN PRODUCTS DISTRIBUTED IN USA, OR US PRODUCTS SOLD/DISTRIBUTED IN FOREIGN COUNTRIES? (If "YES", attach ACORD 815 for Liability Exposure and/or ACORD 816 for Property Exposure) | N |

REMARKS/PROCESSING INSTRUCTIONS (Attach additional sheets if more space is required)

COPY OF THE NOTICE OF INFORMATION PRACTICES (PRIVACY) HAS BEEN GIVEN TO THE APPLICANT. (Not applicable in all states, consult your agent or broker for your state's requirements.)

**NOTICE OF INSURANCE INFORMATION PRACTICES** - PERSONAL INFORMATION ABOUT YOU, INCLUDING INFORMATION FROM A CREDIT REPORT, MAY BE COLLECTED FROM PERSONS OTHER THAN YOU IN CONNECTION WITH THIS APPLICATION FOR INSURANCE AND SUBSEQUENT POLICY RENEWALS.  SUCH INFORMATION AS WELL AS OTHER PERSONAL AND PRIVILEGED INFORMATION COLLECTED BY US OR OUR AGENTS MAY IN CERTAIN CIRCUMSTANCES BE DISCLOSED TO THIRD PARTIES WITHOUT YOUR AUTHORIZATION.  YOU HAVE THE RIGHT TO REVIEW YOUR PERSONAL INFORMATION IN OUR FILES AND CAN REQUEST CORRECTION OF ANY INACCURACIES.  A MORE DETAILED DESCRIPTION OF YOUR RIGHTS AND OUR PRACTICES REGARDING SUCH INFORMATION IS AVAILABLE UPON REQUEST. CONTACT YOUR AGENT OR BROKER FOR INSTRUCTIONS ON HOW TO SUBMIT A REQUEST TO US.

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND [NY: SUBSTANTIAL] CIVIL PENALTIES. (Not applicable in CO, FL, HI, MA, NE, OH, OK, OR, or VT; in DC, LA, ME, TN, VA and WA, insurance benefits may also be denied)

IN FLORIDA, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

THE UNDERSIGNED IS AN AUTHORIZED REPRESENTATIVE OF THE APPLICANT AND REPRESENTS THAT REASONABLE ENQUIRY HAS BEEN MADE TO OBTAIN THE ANSWERS TO QUESTIONS ON THIS APPLICATION. HE/SHE REPRESENTS THAT THE ANSWERS ARE TRUE, CORRECT AND COMPLETE TO THE BEST OF HIS/HER KNOWLEDGE.

| PRODUCER'S SIGNATURE | PRODUCER'S NAME (Please Print) | STATE PRODUCER LICENSE NO (Required in Florida) |
|---|---|---|
| | Ian Blank | W270199 |
| APPLICANT'S SIGNATURE | DATE 6/26/17 | NATIONAL PRODUCER NUMBER |

**PRIOR CARRIER INFORMATION**

AGENCY CUSTOMER ID: **SOUNCO1**    OP ID: JB1

| LINE | | CATEGORY | 2016-2017 | | 2015-2016 | | 2014-2015 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **GENERAL COMMERCIAL LIABILITY** | | CARRIER | Covington | | Covington | | Covington | | | | | |
| | | POLICY NUMBER | | | | | | | | | | |
| | LIMITS | POLICY TYPE | CLAIMS MADE | X OCCURRENCE | CLAIMS MADE | X OCCURRENCE | CLAIMS MADE | OCCURRENCE | CLAIMS MADE | OCCURRENCE | CLAIMS MADE | OCCURRENCE |
| | | RETRO DATE | | | | | | | | | | |
| | | EFF-EXP DATE | 05/24/16 | 05/24/17 | 05/24/15 | 05/24/16 | 05/24/14 | 05/24/15 | | | | |
| | | GENERAL AGGREGATE | | 2,000,000 | | 2,000,000 | | 2,000,000 | | | | |
| | | PRODUCTS COMP OP AGGREGATE | | 2,000,000 | | 2,000,000 | | 2,000,000 | | | | |
| | | PERSONAL & ADV INJ | | 1,000,000 | | 1,000,000 | | 1,000,000 | | | | |
| | | EACH OCCURRENCE | | 1,000,000 | | 1,000,000 | | 1,000,000 | | | | |
| | | FIRE DAMAGE | | 100,000 | | 100,000 | | 100,000 | | | | |
| | | MEDICAL EXPENSE | | 5,000 | | 5,000 | | 5,000 | | | | |
| | | BODILY INJURY OCCURRENCE | | | | | | | | | | |
| | | AGGREGATE | | | | | | | | | | |
| | | PROPERTY DAMAGE OCCURRENCE | | | | | | | | | | |
| | | AGGREGATE | | | | | | | | | | |
| | | COMBINED SINGLE LIMIT | | | | | | | | | | |
| | | MODIFICATION FACTOR | | | | | | | | | | |
| | | TOTAL PREMIUM | | | | | | | | | | |
| **AUTOMOBILE LIABILITY** | | CARRIER | | | | | | | | | | |
| | | POLICY NUMBER | | | | | | | | | | |
| | | POLICY TYPE | | | | | | | | | | |
| | | EFF-EXP DATE | | | | | | | | | | |
| | | COMBINED SINGLE LIMIT | | | | | | | | | | |
| | | BODILY INJURY EA PERSON | | | | | | | | | | |
| | | EA ACCIDENT | | | | | | | | | | |
| | | PROPERTY DAMAGE | | | | | | | | | | |
| | | MODIFICATION FACTOR | | | | | | | | | | |
| | | TOTAL PREMIUM | | | | | | | | | | |
| **PROPERTY** | | CARRIER | Lloyds | | Lloyds | | Lloyds | | | | | |
| | | POLICY NUMBER | | | | | | | | | | |
| | | POLICY TYPE | 5% WIND | | 5% WIND | | 5% WIND | | | | | |
| | | EFF-EXP DATE | 05/21/16 | 05/21/17 | 05/21/15 | 05/21/16 | 05/21/14 | 05/21/15 | | | | |
| | | X BUILDING AMT | | 2,000,000 | X 2000000 | | X 2000000 | | | | | |
| | | X PERS PROP AMT | | 1,000,000 | X 1000000 | | X 1000000 | | | | | |
| | | MODIFICATION FACTOR | | | | | | | | | | |
| | | TOTAL PREMIUM | | | | | | | | | | |
| | | CARRIER | | | | | | | | | | |
| | | POLICY NUMBER | | | | | | | | | | |
| | | POLICY TYPE | | | | | | | | | | |
| | | EFF-EXP DATE | | | | | | | | | | |
| | | LIMIT | | | | | | | | | | |
| | | MODIFICATION FACTOR | | | | | | | | | | |
| | | TOTAL PREMIUM | | | | | | | | | | |

**LOSS HISTORY**

ENTER ALL CLAIMS OR LOSSES (REGARDLESS OF FAULT AND WHETHER OR NOT INSURED) OR OCCURRENCES THAT MAY GIVE RISE TO CLAIMS FOR THE PRIOR 5 YEARS (3 YEARS IN KS & NY)    **X** CHK HERE IF NONE    SEE ATTACHED LOSS SUMMARY

| DATE OF OCCURRENCE | LINE | TYPE/DESCRIPTION OF OCCURRENCE OR CLAIM | DATE OF CLAIM | AMOUNT PAID | AMOUNT RESERVED | CLAIM STATUS OPEN | CLSD |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

REMARKS    NOTE: FIDELITY REQUIRES A FIVE YEAR LOSS HISTORY

**SEE ATTACHED REMARKS OVERFLOW**

ATTACHMENTS

STATE SUPPLEMENT(S) (if applicable)

ACORD 125 (2007/10)                    Page 3 of 3

**REMARKS**                                          SOUNCO1          OP ID: JB1              PAGE 1      OF 1

The named insured occupies 50% of the building and operates a wholesale
distribution company of electronic goods. The other 50% of the building is
leased to two other entities that the owner also owns with their own
insurance programs. 25% of the building is leased to his Catering Hall,
while the other 25% of the building is leased to his Used Auto Sales
business. There is also a 59,000 sq ft enclosed parking lot that is leased
to the Used Auto Lot.

OP ID: JB1

**ACORD** **COMMERCIAL GENERAL LIABILITY SECTION**

| DATE (MM/DD/YYYY) |
|---|
| 5/25/2017 |

| AGENCY | PHONE (A/C, No, Ext): | 800-742-1691 | | APPLICANT | Sound Connection Distributors, |
|---|---|---|---|---|---|
| | FAX (A/C, No): | 954-454-9552 | | (First Named Insured) | |

Riemer Insurance Group
Hallandale Branch
PO Box 250
Hallandale, FL 33008-0250

| EFFECTIVE DATE | EXPIRATION DATE | X | DIRECT BILL | PAYMENT PLAN | AUDIT |
|---|---|---|---|---|---|
| 05/26/17 | 05/26/18 | | AGENCY BILL | | |

FOR COMPANY USE ONLY

| CODE: | | SUB CODE: |
|---|---|---|
| AGENCY CUSTOMER ID: | SOUNCO1 | |

## COVERAGES

| | | LIMITS | | |
|---|---|---|---|---|
| X | COMMERCIAL GENERAL LIABILITY | GENERAL AGGREGATE | $ | 2,000,000 |
| | CLAIMS MADE   X   OCCURRENCE | PRODUCTS & COMPLETED OPERATIONS AGGREGATE | $ | Included |
| | OWNER'S & CONTRACTOR'S PROTECTIVE | PERSONAL & ADVERTISING INJURY | $ | Included |
| | | EACH OCCURRENCE | $ | 1,000,000 |
| **DEDUCTIBLES** | | DAMAGE TO RENTED PREMISES (each occurrence) | $ | 100,000 |
| X | PROPERTY DAMAGE   $   500 | MEDICAL EXPENSE (Any one person) | $ | 5,000 |
| X | BODILY INJURY   $   500 | EMPLOYEE BENEFITS | $ | |
| | $   PER CLAIM   X   PER OCCURRENCE | | | |

| PREMIUMS | |
|---|---|
| PREMISES/OPERATIONS | |
| | $ |
| PRODUCTS | |
| | $ |
| OTHER | |
| | $ |
| TOTAL | |
| | $ |

OTHER COVERAGES, RESTRICTIONS AND/OR ENDORSEMENTS (For hired/non-owned auto coverages attach the applicable state Business Auto Section, ACORD 137)

**Legal Defense Costs Included. Cyber Liability Claims
Made with Retro Date: 5-26-2017**

## SCHEDULE OF HAZARDS

| LOC # | HAZ # | CLASSIFICATION | CLASS CODE | PREMIUM BASIS | EXPOSURE | TERR | RATE | | PREMIUM | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | PREM/OPS | PRODUCTS | PREM/OPS | PRODUCTS |
| 1 | 1 | Distributors- No Food or Drink (Electronics) | 12362 | S | 1,800,000 | | | | | |
| 1 | 1 | Lessors Risk 10,000 sq ft Rented to Used Auto Sales 10,000 sq ft Rented to Catering Hall | 61217 | A | 20000 | | | | | |
| 1 | 1 | Parking- Private Rented to Used Auto Lot | 46622 | A | 59,000 | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

| RATING AND PREMIUM BASIS | | | |
|---|---|---|---|
| (S) GROSS SALES - PER $1,000/SALES | (P) PAYROLL - PER $1,000/PAY | (C) TOTAL COST - PER $1,000/COST | (U) UNIT - PER UNIT |
| | (A) AREA - PER 1,000/SQ FT | (M) ADMISSIONS - PER 1,000/ADM | (T) OTHER |

## CLAIMS MADE (Explain all "Yes" responses)

| EXPLAIN ALL "YES" RESPONSES | Y / N |
|---|---|
| 1.  PROPOSED RETROACTIVE DATE: | |
| 2.  ENTRY DATE INTO UNINTERRUPTED CLAIMS MADE COVERAGE | |
| 3.  HAS ANY PRODUCT, WORK, ACCIDENT, OR LOCATION BEEN EXCLUDED, UNINSURED OR SELF-INSURED FROM ANY PREVIOUS COVERAGE? | |
| 4.  WAS TAIL COVERAGE PURCHASED UNDER ANY PREVIOUS POLICY? | |

## EMPLOYEE BENEFITS LIABILITY

| 1.  DEDUCTIBLE PER CLAIM:   $ | 3.  NUMBER OF EMPLOYEES COVERED BY EMPLOYEE BENEFITS PLANS: |
|---|---|
| 2.  NUMBER OF EMPLOYEES: | 4.  RETROACTIVE DATE: |

ACORD 126 (2007/05)          Page 1 of 4          © ACORD CORPORATION 1993-2007.  All rights reserved.
The ACORD name and logo are registered marks of ACORD

**CONTRACTORS**                                                                 SOUNCO1      OP ID: JB1

| EXPLAIN ALL "YES" RESPONSES (For past or present operations) | Y / N |
|---|---|
| 1. DOES APPLICANT DRAW PLANS, DESIGNS, OR SPECIFICATIONS FOR OTHERS? | ☐ |
| 2. DO ANY OPERATIONS INCLUDE BLASTING OR UTILIZE OR STORE EXPLOSIVE MATERIAL? | ☐ |
| 3. DO ANY OPERATIONS INCLUDE EXCAVATION, TUNNELING, UNDERGROUND WORK OR EARTH MOVING? | ☐ |
| 4. DO YOUR SUBCONTRACTORS CARRY COVERAGES OR LIMITS LESS THAN YOURS? | ☐ |
| 5. ARE SUBCONTRACTORS ALLOWED TO WORK WITHOUT PROVIDING YOU WITH A CERTIFICATE OF INSURANCE? | ☐ |
| 6. DOES APPLICANT LEASE EQUIPMENT TO OTHERS WITH OR WITHOUT OPERATORS? | ☐ |

| DESCRIBE THE TYPE OF WORK SUBCONTRACTED | $ PAID TO SUB-CONTRACTORS: | % OF WORK SUBCONTRACTED: | # FULL-TIME STAFF: | # PART-TIME STAFF: |
|---|---|---|---|---|
| | | | | |

**PRODUCTS/COMPLETED OPERATIONS**

| PRODUCTS | ANNUAL GROSS SALES | # OF UNITS | TIME IN MARKET | EXPECTED LIFE | INTENDED USE | PRINCIPAL COMPONENTS |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

| EXPLAIN ALL "YES" RESPONSES (For any past or present product or operation)   PLEASE ATTACH LITERATURE, BROCHURES, LABELS, WARNINGS, ETC. | Y / N |
|---|---|
| 1. DOES APPLICANT INSTALL, SERVICE OR DEMONSTRATE PRODUCTS? | N |
| 2. FOREIGN PRODUCTS SOLD, DISTRIBUTED, USED AS COMPONENTS?  (If "YES", attach ACORD 815) | N |
| 3. RESEARCH AND DEVELOPMENT CONDUCTED OR NEW PRODUCTS PLANNED? | N |
| 4. GUARANTEES, WARRANTIES, HOLD HARMLESS AGREEMENTS? | N |
| 5. PRODUCTS RELATED TO AIRCRAFT/SPACE INDUSTRY? | N |
| 6. PRODUCTS RECALLED, DISCONTINUED, CHANGED? | N |
| 7. PRODUCTS OF OTHERS SOLD OR RE-PACKAGED UNDER APPLICANT LABEL? | N |
| 8. PRODUCTS UNDER LABEL OF OTHERS? | N |
| 9. VENDORS COVERAGE REQUIRED? | N |
| 10. DOES ANY NAMED INSURED SELL TO OTHER NAMED INSUREDS? | N |

**ACORD 126 (2007/05)**                    **ATTACH TO ACORD 125**

| ADDITIONAL INTEREST/CERTIFICATE RECIPIENT | | ☐ ACORD 45 attached for additional names | | | SOUNCO1 | OP ID: JB1 |
|---|---|---|---|---|---|---|

| INTEREST | RANK: | NAME AND ADDRESS | REFERENCE #: | | CERTIFICATE REQUIRED | INTEREST IN ITEM NUMBER | |
|---|---|---|---|---|---|---|---|
| ☐ ADDITIONAL INSURED | | | | | | LOCATION: | BUILDING: |
| ☐ LOSS PAYEE | | | | | | VEHICLE: | BOAT: |
| ☐ MORTGAGEE | | | | | | SCHEDULED ITEM NUMBER: | |
| ☐ LIENHOLDER | | | | | | OTHER | |
| ☐ EMPLOYEE AS LESSOR | | | | | | | |
| | | ITEM DESCRIPTION: | | | | | |

## GENERAL INFORMATION

| EXPLAIN ALL "YES" RESPONSES (For all past or present operations) | Y / N |
|---|---|
| 1.   ANY MEDICAL FACILITIES PROVIDED OR MEDICAL PROFESSIONALS EMPLOYED OR CONTRACTED? | N |
| 2.   ANY EXPOSURE TO RADIOACTIVE/NUCLEAR MATERIALS? | N |
| 3.   DO/HAVE PAST, PRESENT OR DISCONTINUED OPERATIONS INVOLVE(D) STORING, TREATING, DISCHARGING, APPLYING, DISPOSING, OR TRANSPORTING OF HAZARDOUS MATERIAL? (e.g. landfills, wastes, fuel tanks, etc) | N |
| 4.   ANY OPERATIONS SOLD, ACQUIRED, OR DISCONTINUED IN LAST FIVE (5) YEARS? | N |
| 5.   MACHINERY OR EQUIPMENT LOANED OR RENTED TO OTHERS? | N |
| 6.   ANY WATERCRAFT, DOCKS, FLOATS OWNED, HIRED OR LEASED? | N |
| 7.   ANY PARKING FACILITIES OWNED/RENTED? | N |
| 8.   IS A FEE CHARGED FOR PARKING? | N |
| 9.   RECREATION FACILITIES PROVIDED? | N |
| 10. IS THERE A SWIMMING POOL ON THE PREMISES? | N |
| 11. SPORTING OR SOCIAL EVENTS SPONSORED? | N |
| 12. ANY STRUCTURAL ALTERATIONS CONTEMPLATED? | N |
| 13. ANY DEMOLITION EXPOSURE CONTEMPLATED? | N |
| 14. HAS APPLICANT BEEN ACTIVE IN OR IS CURRENTLY ACTIVE IN JOINT VENTURES? | N |
| 15. DO YOU LEASE EMPLOYEES TO OR FROM OTHER EMPLOYERS? | N |
| 16. IS THERE A LABOR INTERCHANGE WITH ANY OTHER BUSINESS OR SUBSIDIARIES? | N |

**ACORD 126 (2007/05)**                      Page 3 of 4

**GENERAL INFORMATION** (continued)                                        SOUNCO1      OP ID: JB1

| EXPLAIN ALL "YES" RESPONSES (For all past or present operations) | Y / N |
|---|---|
| 17.  ARE DAY CARE FACILITIES OPERATED OR CONTROLLED? | N |
| 18.  HAVE ANY CRIMES OCCURRED OR BEEN ATTEMPTED ON YOUR PREMISES WITHIN THE LAST THREE (3) YEARS? | N |
| 19.  IS THERE A FORMAL, WRITTEN SAFETY AND SECURITY POLICY IN EFFECT? | N |
| 20.  DOES THE BUSINESSES' PROMOTIONAL LITERATURE MAKE ANY REPRESENTATIONS ABOUT THE SAFETY OR SECURITY OF THE PREMISES? | N |

**REMARKS**

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND [NY: SUBSTANTIAL] CIVIL PENALTIES. (Not applicable in CO, FL, HI, MA, NE, OH, OK, OR or VT.  In DC, LA, ME, TN, VA and WA insurance benefits may also be denied).
IN FLORIDA, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

**ACORD®**

**PROPERTY SECTION**

AGENCY CUSTOMER ID: SOUNCO1

OP ID: JB1

DATE (MM/DD/YYYY): 5/25/2017

| AGENCY NAME | CARRIER | NAIC CODE |
|---|---|---|
| Riemer Insurance Group, Inc. | American Property Insurance Co | |

| POLICY NUMBER | EFFECTIVE DATE | NAMED INSURED(S) |
|---|---|---|
| | 05/26/17 | Sound Connection Distributors, |

## PREMISES INFORMATION

PREMISES #: 1    STREET ADDRESS:

BUILDING #: 1    BLDG DESCRIPTION:

| SUBJECT OF INSURANCE | AMOUNT | COINS % | VALU-ATION | CAUSES OF LOSS | INFLATION GUARD % | DED | BLKT # | FORMS AND CONDITIONS TO APPLY |
|---|---|---|---|---|---|---|---|---|
| **See attached supplemental page for Subjects of Insurance information** | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

ADDITIONAL INFORMATION    **X**    BUSINESS INCOME / EXTRA EXPENSE - Attach ACORD 810          VALUE REPORTING INFORMATION - Attach ACORD 811

## ADDITIONAL COVERAGES, OPTIONS, RESTRICTIONS, ENDORSEMENTS AND RATING INFORMATION

| SPOILAGE COVERAGE (Y/N) | DESCRIPTION OF PROPERTY COVERED | LIMIT $ | REFRIG MAINT AGREEMENT (Y/N) | OPTIONS |
|---|---|---|---|---|
| ☐ | | DEDUCTIBLE $ | ☐ | BREAKDOWN OR CONTAMINATION     POWER OUTAGE     SELLING PRICE |

SINKHOLE COVERAGE (Required in Florida)     ACCEPT COVERAGE     REJECT COVERAGE     LIMIT: $

☐ PROPERTY HAS BEEN DESIGNATED AN HISTORICAL LANDMARK          # OF OPEN SIDES ON STRUCTURE: _____

| CONSTRUCTION TYPE | DISTANCE TO HYDRANT | FIRE STAT | FIRE DISTRICT | CODE NUMBER | PROT CL | # STORIES | # BASM'TS | YR BUILT | TOTAL AREA |
|---|---|---|---|---|---|---|---|---|---|
| MNC | 500 FT | 2 MI | | | | 2 | 0 | 1971 | 43,196 |

| BUILDING IMPROVEMENTS | BLDG CODE GRADE | TAX CODE | ROOF TYPE | OTHER OCCUPANCIES |
|---|---|---|---|---|
| **X** WIRING, YR: 13   **X** PLUMBING, YR: 13 | | | F | |
| **X** ROOFING, YR: 16   **X** HEATING, YR: 14 | WIND CLASS | | SEMI-RESISTIVE | HEATING SOURCE INCL WOODBURNING STOVE OR FIREPLACE INSERT     DATE INSTALLED: _____ |
| OTHER:     YR: | RESISTIVE | | | MANUFACTURER: |

| PRIMARY HEAT | SECONDARY HEAT |
|---|---|
| ☐ BOILER   ☐ SOLID FUEL | ☐ BOILER   ☐ SOLID FUEL |
| IF BOILER, IS INSURANCE PLACED ELSEWHERE?   Y / N | IF BOILER, IS INSURANCE PLACED ELSEWHERE?   Y / N |

| RIGHT EXPOSURE & DISTANCE | LEFT EXPOSURE & DISTANCE | FRONT EXPOSURE & DISTANCE | REAR EXPOSURE & DISTANCE |
|---|---|---|---|
| Commercial Building | Commercial Building | I-95 | Commercial Building |

| BURGLAR ALARM TYPE | CERTIFICATE # | EXPIRATION DATE | Y | CENTRAL STATION | LOCAL GONG |
|---|---|---|---|---|---|
| Monitored | | | | WITH KEYS | |

| BURGLAR ALARM INSTALLED AND SERVICED BY | EXTENT | GRADE | # GUARDS / WATCHMEN | CLOCK HOURLY |
|---|---|---|---|---|
| | | | | |

| PREMISES FIRE PROTECTION (Sprinklers, Standpipes, CO2 / Chemical Systems) | % SPRNK | FIRE ALARM MANUFACTURER | CENTRAL STATION |
|---|---|---|---|
| | | | LOCAL GONG |

## ADDITIONAL INTEREST     ACORD 45 attached for additional names

| INTEREST | NAME AND ADDRESS   RANK: | EVIDENCE: | CERTIFICATE | INTEREST IN ITEM NUMBER | |
|---|---|---|---|---|---|
| ☐ LOSS PAYEE | | | | LOCATION: | BUILDING: |
| ☐ MORTGAGEE | | | | ITEM CLASS: | ITEM: |
| | | | | ITEM DESCRIPTION | |
| | REFERENCE / LOAN #: | | | | |

## REMARKS

Includes Preferred Package Endorsement - Premier

ACORD 140 (2011/10)          Attach to ACORD 125 © 1985-2011 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD

| AGENCY CUSTOMER ID: | SOUNCO1 | | OP ID: JB1 |
|---|---|---|---|

## ADDITIONAL PREMISES INFORMATION

| PREMISES #: | STREET ADDRESS: |
|---|---|
| BUILDING #: | BLDG DESCRIPTION: |

| SUBJECT OF INSURANCE | AMOUNT | COINS % | VALU-ATION | CAUSES OF LOSS | INFLATION GUARD % | DED | BLKT # | FORMS AND CONDITIONS TO APPLY |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| ADDITIONAL INFORMATION | BUSINESS INCOME / EXTRA EXPENSE - Attach ACORD 810 | VALUE REPORTING INFORMATION - Attach ACORD 811 |
|---|---|---|

## ADDITIONAL COVERAGES, OPTIONS, RESTRICTIONS, ENDORSEMENTS AND RATING INFORMATION

| SPOILAGE COVERAGE (Y/N) | DESCRIPTION OF PROPERTY COVERED | LIMIT $ | REFRIG MAINT AGREEMENT (Y/N) | OPTIONS |
|---|---|---|---|---|
| | | DEDUCTIBLE $ | | BREAKDOWN OR CONTAMINATION / POWER OUTAGE / SELLING PRICE |

| SINKHOLE COVERAGE (Required in Florida) | ACCEPT COVERAGE | REJECT COVERAGE | LIMIT: $ |
|---|---|---|---|

PROPERTY HAS BEEN DESIGNATED AN HISTORICAL LANDMARK          # OF OPEN SIDES ON STRUCTURE: _____

| CONSTRUCTION TYPE | DISTANCE TO HYDRANT FT | FIRE STAT MI | FIRE DISTRICT | CODE NUMBER | PROT CL | # STORIES | # BASM'TS | YR BUILT | TOTAL AREA |
|---|---|---|---|---|---|---|---|---|---|

| BUILDING IMPROVEMENTS | BLDG CODE GRADE | TAX CODE | ROOF TYPE | OTHER OCCUPANCIES |
|---|---|---|---|---|
| WIRING, YR:     PLUMBING, YR: | | | | |
| ROOFING, YR:     HEATING, YR: | WIND CLASS | SEMI- RESISTIVE | HEATING SOURCE INCL WOODBURNING STOVE OR FIREPLACE INSERT   DATE INSTALLED: _____ | |
| OTHER:     YR: | RESISTIVE | | MANUFACTURER: | |

| PRIMARY HEAT | SECONDARY HEAT |
|---|---|
| BOILER     SOLID FUEL | BOILER     SOLID FUEL |
| IF BOILER, IS INSURANCE PLACED ELSEWHERE?     Y / N | IF BOILER, IS INSURANCE PLACED ELSEWHERE?     Y / N |

| RIGHT EXPOSURE & DISTANCE | LEFT EXPOSURE & DISTANCE | FRONT EXPOSURE & DISTANCE | REAR EXPOSURE & DISTANCE |
|---|---|---|---|

| BURGLAR ALARM TYPE | CERTIFICATE # | EXPIRATION DATE | CENTRAL STATION | LOCAL GONG |
|---|---|---|---|---|
| | | | WITH KEYS | |

| BURGLAR ALARM INSTALLED AND SERVICED BY | EXTENT | GRADE | # GUARDS / WATCHMEN | CLOCK HOURLY |
|---|---|---|---|---|

| PREMISES FIRE PROTECTION (Sprinklers, Standpipes, CO2 / Chemical Systems) | % SPRNK | FIRE ALARM MANUFACTURER | CENTRAL STATION |
|---|---|---|---|
| | | | LOCAL GONG |

## ADDITIONAL INTEREST        ACORD 45 attached for additional names

| INTEREST | NAME AND ADDRESS   RANK: | EVIDENCE: | CERTIFICATE | INTEREST IN ITEM NUMBER |
|---|---|---|---|---|
| LOSS PAYEE | | | | LOCATION:     BUILDING: |
| MORTGAGEE | | | | ITEM CLASS:     ITEM: |
| | | | | ITEM DESCRIPTION |
| | REFERENCE / LOAN #: | | | |

## REMARKS

|  |
|---|
|  |

ACORD 140 (2011/10)                    Page 2 of 3

| FRAUD NOTICES | AGENCY CUSTOMER ID: | SOUNCO1 | OP ID: JB1 |
|---|---|---|---|

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND [NY: SUBSTANTIAL] CIVIL PENALTIES. (Not applicable in CO, DC, FL, HI, KS, MA, MN, NE, OH, OK, OR, VT or WA; in LA, ME, TN and VA, insurance benefits may also be denied)

IN THE DISTRICT OF COLUMBIA, WARNING:  IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON.  PENALTIES INCLUDE IMPRISONMENT AND/OR FINES.  IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS, IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT

IN FLORIDA, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

IN KANSAS, ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO DEFRAUD, PRESENTS, CAUSES TO BE PRESENTED OR PREPARES WITH KNOWLEDGE OR BELIEF THAT IT WILL BE PRESENTED TO OR BY AN INSURER, PURPORTED INSURER, BROKER OR ANY AGENT THEREOF, ANY WRITTEN STATEMENT AS PART OF, OR IN SUPPORT OF, AN APPLICATION FOR THE ISSUANCE OF, OR THE RATING OF AN INSURANCE POLICY FOR PERSONAL OR COMMERCIAL INSURANCE, OR A CLAIM FOR PAYMENT OR OTHER BENEFIT PURSUANT TO AN INSURANCE POLICY FOR COMMERCIAL OR PERSONAL INSURANCE WHICH SUCH PERSON KNOWS TO CONTAIN MATERIALLY FALSE INFORMATION CONCERNING ANY FACT MATERIAL THERETO; OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT.

IN MASSACHUSETTS, NEBRASKA, OREGON AND VERMONT, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, MAY BE COMMITTING A FRAUDULENT INSURANCE ACT, WHICH MAY BE A CRIME AND MAY SUBJECT THE PERSON TO CRIMINAL AND CIVIL PENALTIES.

IN WASHINGTON, IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY.  PENALTIES INCLUDE IMPRISONMENT, FINES, AND DENIAL OF INSURANCE BENEFITS.

**REMARKS**

5/25/2017

**Sound Connection Distributors,**                                        SOUNCO1        OP ID: JB1

| PREMISE INFORMATION | | | PREMISES #: | 001 | BUILDING #: | 001 | | ISOTEL#: | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| # | SUBJECT OF INSURANCE | AMOUNT | COINS % | VALUATION | CAUSE OF LOSS | INFL | DEDUCTIBLE | FORMS # | Date | BLN |
| 1. | BUILD | 3,250,000 | 80.00 | RC | SPECIAL | | 1000 | $162.5K WH | | |
| 2. | ORD & LAW A | 2,000,000 | | | | | | | | |
| 3. | ORD &LAW B&C | 650,000 | | | | | | | | |
| 4. | BPP | 70,000 | 80.00 | RC | SPECIAL | | 1000 | $162.5K WH | | |
| 5. | BI/EE | 180,000 | | | SPECIAL | | | ALS | | |
| 6. | EQUIP BREAK | | | | | | | INCLUDED | | |

| ADDITIONAL PREMISES INFORMATION | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SOI | CAUSE | COINS % | RATE | RPT | AMOUNT | TYPE | BAS | SOI | CAUSE | COINS % | RATE | RPT | AMOUNT | TYPE | BAS |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

| PREMISE INFORMATION | | | PREMISES #: | | BUILDING #: | | ISOTEL#: | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| # | SUBJECT OF INSURANCE | AMOUNT | COINS % | VALUATION | CAUSE OF LOSS | INFL | DEDUCTIBLE | FORMS # | Date | BLN |
| 1. | | | | | | | | | | |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| 4. | | | | | | | | | | |
| 5. | | | | | | | | | | |
| 6. | | | | | | | | | | |

| ADDITIONAL PREMISES INFORMATION | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SOI | CAUSE | COINS % | RATE | RPT | AMOUNT | TYPE | BAS | SOI | CAUSE | COINS % | RATE | RPT | AMOUNT | TYPE | BAS |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

| PREMISE INFORMATION | | | PREMISES #: | | BUILDING #: | | ISOTEL#: | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| # | SUBJECT OF INSURANCE | AMOUNT | COINS % | VALUATION | CAUSE OF LOSS | INFL | DEDUCTIBLE | FORMS # | Date | BLN |
| 1. | | | | | | | | | | |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| 4. | | | | | | | | | | |
| 5. | | | | | | | | | | |
| 6. | | | | | | | | | | |

New label

| SOI | CAUSE | COINS % | RATE | RPT | AMOUNT | TYPE | BAS | SOI | CAUSE | COINS % | RATE | RPT | AMOUNT | TYPE | BAS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

ATTACH TO ACORD PROPERTY SECTION

**ACORD**

**BUSINESS INCOME / EXTRA EXPENSE / RENTAL VALUE**
**SUPPLEMENT TO PROPERTY SECTION**

| | |
|---|---|
| AGENCY CUSTOMER ID: | SOUNCO1 |
| OP ID: | JB1 |
| DATE (MM/DD/YYYY) | 5/25/2017 |

| AGENCY | CARRIER | NAIC CODE |
|---|---|---|
| Riemer Insurance Group, Inc. | American Property Insurance Co | |

| POLICY NUMBER | EFFECTIVE DATE | APPLICANT / FIRST NAMED INSURED |
|---|---|---|
| | 05/26/17 | Sound Connection Distributors, |

## PREMISES INFORMATION

| PREMISES #: | 001 |
|---|---|
| BUILDING #: | 001 |

☐ BUSINESS INCOME / EXTRA EXPENSE   ☐ BUSINESS INCOME W/O EXTRA EXPENSE   ☐ EXTRA EXPENSE   ☐ BUSINESS INCOME / RENTAL VALUE   ☐ RENTAL VALUE

**TYPE OF BUSINESS**
☐ NON MFG
☐ MFG
☐ MINING
_____ % COINS

**ORDINARY PAYROLL**
☐ EXCL   ☐ INCL
☐ 90 DAYS
☐ 180 DAYS
$ _____

**EXT PERIOD**
_____ DAYS

**MO PERIOD**
_____ LIMIT

**MAX PERIOD**

**POWER/HEAT**
$ _____ DED

**ELEC MEDIA**

**ORD OR LAW**
_____ DAYS

**CIVIL AUTH**
_____ DAYS

**OFF PREM POWER**
☐ POWER
☐ WATER
☐ COMM (DESCR BELOW)

**TUITION FEES**
$ _____ STUDENTS
$ _____ OTHER ED SERV/INC

**DEPEND PROP**
☐ BROAD FORM   ☐ LIMITED FORM

COIN _____ %

☐ CONT LOC   ☐ MFG LOC
☐ REC LOC   ☐ LDR LOC (DESC BELOW)

**EXTRA EXPENSE**
_____ DAYS PERIOD REST

**LIMIT LOSS PAY**
_____ %   _____ %
_____ %   _____ %

**NAME(S) AND ADDRESS(ES) FOR OFF PREM POWER OR DEPEND PROP**

**OTHER COVERAGES**
Equipment Breakdown
Premier Package Endorsement

## ADDITIONAL PREMISES INFORMATION

**AGENCY CUSTOMER ID:** SOUNCO1     **OP ID:** JB1

| PREMISES #: | | ☐ BUSINESS INCOME / EXTRA EXPENSE | ☐ BUSINESS INCOME W/O EXTRA EXPENSE | ☐ EXTRA EXPENSE | ☐ BUSINESS INCOME / RENTAL VALUE | ☐ RENTAL VALUE |
|---|---|---|---|---|---|---|
| BUILDING #: | | | | | | |

| TYPE OF BUSINESS | ORDINARY PAYROLL | EXT PERIOD | POWER/HEAT | OFF PREM POWER | DEPEND PROP |
|---|---|---|---|---|---|

TYPE OF BUSINESS
- ☐ NON MFG
- ☐ MFG
- ☐ MINING
- _____ % COINS

ORDINARY PAYROLL
- ☐ EXCL    ☐ INCL
- ☐ 90 DAYS
- ☐ 180 DAYS
- $ _____

EXT PERIOD
- _____ DAYS
- MO PERIOD
- LIMIT
- MAX PERIOD

POWER/HEAT
- $ _____ DED
- ELEC MEDIA _____ DAYS
- ORD OR LAW _____ DAYS
- CIVIL AUTH _____ DAYS

OFF PREM POWER
- ☐ POWER
- ☐ WATER
- ☐ COMM (DESCR BELOW)

TUITION FEES
- $ _____ STUDENTS
- $ _____ OTHER ED SERV/INC

DEPEND PROP
- ☐ BROAD FORM   ☐ LIMITED FORM
- _____
- COIN _____ %
- ☐ CONT LOC   ☐ MFG LOC
- ☐ REC LOC   ☐ LDR LOC (DESC BELOW)

EXTRA EXPENSE
- _____ DAYS PERIOD REST

LIMIT LOSS PAY
- _____ %   _____ %
- _____ %   _____ %

**NAME(S) AND ADDRESS(ES) FOR OFF PREM POWER OR DEPEND PROP**

**OTHER COVERAGES**

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND [NY: SUBSTANTIAL] CIVIL PENALTIES. (Not applicable in CO, DC, FL, KS, MA, MN, NE, OH, OK, OR, VT or WA; in LA, ME, TN and VA, insurance benefits may also be denied)

IN THE DISTRICT OF COLUMBIA, WARNING:  IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON.  PENALTIES INCLUDE IMPRISONMENT AND/OR FINES.  IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS, IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT

IN FLORIDA, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

IN KANSAS, ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO DEFRAUD, PRESENTS, CAUSES TO BE PRESENTED OR PREPARES WITH KNOWLEDGE OR BELIEF THAT IT WILL BE PRESENTED TO OR BY AN INSURER, PURPORTED INSURER, BROKER OR ANY AGENT THEREOF, ANY WRITTEN STATEMENT AS PART OF, OR IN SUPPORT OF, AN APPLICATION FOR THE ISSUANCE OF, OR THE RATING OF AN INSURANCE POLICY FOR PERSONAL OR COMMERCIAL INSURANCE, OR A CLAIM FOR PAYMENT OR OTHER BENEFIT PURSUANT TO AN INSURANCE POLICY FOR COMMERCIAL OR PERSONAL INSURANCE WHICH SUCH PERSON KNOWS TO CONTAIN MATERIALLY FALSE INFORMATION CONCERNING ANY FACT MATERIAL THERETO; OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT.

IN MASSACHUSETTS, NEBRASKA, OREGON AND VERMONT, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, MAY BE COMMITTING A FRAUDULENT INSURANCE ACT, WHICH MAY BE A CRIME AND MAY SUBJECT THE PERSON TO CRIMINAL AND CIVIL PENALTIES.

IN WASHINGTON, IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY.  PENALTIES INCLUDE IMPRISONMENT, FINES, AND DENIAL OF INSURANCE BENEFITS.

## Policyholder Disclosure Notice of Terrorism Insurance Coverage

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act. The term "act of terrorism" means any act that is certified by the Secretary of the Treasury- in concurrence with the Secretary of State, and the Attorney General of the United States- to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED ON THE DECLARATIONS AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

IF YOU DO NOT RESPOND TO THIS NOTIFICATION YOUR SELECTION OF ACCEPTANCE OR REJECTION OF TERRORISM INSURANCE COVERAGE WILL CONTINUE AS PER YOUR INITIAL SELECTION OR ON YOUR EXISTING POLICY UPON RENEWAL

| | |
|---|---|
| | I hereby elect to purchase Terrorism coverage for a premium of $          plus t&f. |
| ✓ | I hereby elect to have the exclusion for terrorism coverage apply in full. I understand that I will have no coverage for losses arising from acts of terrorism excluded from my policy. |

Policy Holder/Applicant's Signature

SHIMON SWISSA
Print Name

06/22/17
Date

American Property Insurance Company has been assigned a Financial Stability Rating (R) of A, Exceptional, from Demotech Inc. Additional Rating information can be found on the Demotech website or through your state's department of banking or insurance regulation.

www.api-nj.com

3 e

EXHIBIT B

American Property Insurance Company         **Common Policy Declarations**

## Policy Number: CPP-08129-E17-REG

### Insured Information

| | |
|---|---|
| Insured Company Name: | Sound Connection Distributors |

| | | | |
|---|---|---|---|
| Mailing Address: | 2801 Green Street<br>Hollywood, FL 33020 | Primary Contact:<br>Primary Contact Phn: | Shimon Swissa<br>(954) 924-2430 |
| Business Type: | Corporation | Business Description:<br>Business Website: | Distributor & Lessor's Risk |

### Agent Information

| | | | |
|---|---|---|---|
| Agent Name: | Riemer Insurance Group, Inc. | Agent Address: | 217 East Hallandale Beach Blvd Hallandale Beach, FL 33009 |
| Producer Name: | Lawrence Chiet | Agent Phone: | (305) 945-5529 |

### Coverage Period

| | | |
|---|---|---|
| Policy Effective Date: | 6/26/2017 | at 12:01 AM Standard Time at your Insured |
| Policy Expiration Date: | 6/26/2018 | Company Address shown above. |

### Common Policy Declarations

*In return for the payment of stated premium, and subject to all terms of this policy, we agree to provide insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.*

| | |
|---|---|
| **Property Coverage - Difference in Conditions:** | Included |
| **Commercial General Liability Coverage:** | Included |
| **Umbrella Coverage:** | Not Included |
| **Total Amount Due:** | $22,949.00 |
| **Policy Payment Plan:** 25% Down and Eight (8) Installments - subject to $6 service fee per installment | |

### Endorsements and Optional Coverages

*Applicable forms and endorsements are omitted if shown in specific Coverage Part / Coverage Form Declarations.*

**Standard IL Endorsements**

API0414CRED - Credit Disclosure
API0414PRIV - Privacy Policy
API0414TERR - Terrorism Disclosure
IL00171198 - Common Policy Conditions
IL00210908 - Nuclear Energy Liability Exclusion

IL09350702 - Exclusion - Certain Computer Related Losses
IL09850108 - Disclosure Pursuant to TRIA
IL01750907 - Florida Changes - Legal Action Against Us
IL02550316 - Florida Changes - Cancellation and Nonrenewal

**Policy IL Endorsements**

IL09530115 - Exclusion of Certified Acts of Terrorism

**Additional Policy Notes**

*These declarations and policy may not be altered in any way. Any modification without the expressed written consent of the Corporate Secretary voids the policy and coverages contained therein.*

**Executed by:** *Douglas C Gorman*

Douglas C. Gorman, Corporate Secretary

Includes copyrighted material by Insurance Services Office, Inc. with its permission.

7/19/2017

American Property Insurance Company                                    **CPP Property Section Declarations**

# Policy Number: CPP-08129-E17-REG

## Insured Information

| | |
|---|---|
| Insured Company Name: | Sound Connection Distributors |

| | | | |
|---|---|---|---|
| Primary Contact Name: | Shimon Swissa | Agent Name: | Riemer Insurance Group, Inc. |
| Primary Contact Phone: | (954) 924-2430 | Agent Address: | 217 East Hallandale Beach Blvd Hallandale Beach, FL 33009 |
| | | Agent Phone: | (305) 945-5529 |

## Endorsements and Notes

| | |
|---|---|
| **American Property Preferred Package** | Premier |
| **Standard Property Endorsements** | CP00900788 - Commercial Property Conditions<br>CP01400706 - Exclusion of Loss Due to Virus/Bacteria<br>CP10301012 - Causes of Loss - Special Form<br>CP01250212 - Florida Changes<br>CP00101012 - Building and Personal Property Coverage Form |
| **Policy Property Endorsements** | **Emergency Repairs Limit** – Subject to any other written correspondence, the specified aggregate annual limit afforded under this policy for the purpose of procuring emergency repairs or measures occurring within 96 hours of the loss occurrence, and exclusively to prevent subsequent loss to covered property is $25,000; and does not exceed any other applicable coverage limit(s). This provision does not supersede any conditions, limitations, loss adjustment procedures, or duties in the event of a loss as described in the policy documents and is subject to the specified deductible stated in your policy. |

## Description of Coverage Terms and Premises

Coverage Type: Commercial Inland Marine – Difference In Conditions

Causes of Loss Form: Special - Including Theft

| Designated Location | Occupancy | Effective Date |
|---|---|---|
| 2801 Greene St HOLLYWOOD FL 33020 | Distributors, Auto Lot Rented to Others, Parking Lot Rented to Others | 6/26/2017 |

| | | | | |
|---|---|---|---|---|
| Deductible: | $1,000.00 | Special Wind Deductible: | $177,500.00 | |
| Inflation Guard: | N/A | | | |
| Building Limit: | $3,250,000.00 | Replacement Cost | | 80% coinsurance |
| BPP Limit: | $370,000.00 | Replacement Cost | | 80% coinsurance |

Additional Interests: Mortgagee: Marquis Bank ISAOA/ATIMA
355 Alhambra Circle, Ste 1200
Coral Gables, FL 33134

Location Specific Endorsements: CP00301012 - Business Income with Extra Expense: $180,000.00
EB00200113 - Equipment Breakdown: Included as Sublimit of Building Value, Not to Exceed $2,000,000
CP04051012 - Ordinance or Law Coverage: Coverage A Included as Sublimit of Building Value
CP04051012 - Ordinance or Law Coverage: B&C Inclusive $650,000 Included as Sublimit of Building Value

Notice To Policy Holder:



American Property Insurance Company **Commercial General Liability Section Declarations**

# Policy Number: CPP-08129-E17-REG

## Insured Information

| | |
|---|---|
| Insured Company Name: | Sound Connection Distributors |

| | | | |
|---|---|---|---|
| Primary Contact Name: | Shimon Swissa | Agent Name: | Riemer Insurance Group, Inc. |
| Primary Contact Phone: | (954) 924-2430 | Agent Address: | 217 East Hallandale Beach Blvd Hallandale Beach, FL 33009 |
| | | Agent Phone: | (305) 945-5529 |

## Common General Liability Limits of Insurance

| | | |
|---|---|---|
| Each Occurence Limit: | $1,000,000.00 | |
| Policy Period Aggregate Limit: | $2,000,000.00 | |
| Coverage C - Medical Payments: | $5,000 Per Occurrence | *Coverage C Premium included in GL Premium |
| Damage to Premises Rented to You Limit: | $100,000 Per Occurrence | *Premium included in GL Premium |
| Fire Legal Liability Limit: | $100,000 Aggregate Per Occurence | |

## Endorsements and Notes

| | |
|---|---|
| **Standard GL Endorsements** | CG00010413 - Commercial General Liability Coverage Form - Occurrence<br>CG00991185 - Changes in General Liability Forms for Package Policy<br>CG21060514 - Exclusion - Access or Disclosure of Confidential or Personal Information and Data Related Liability<br>CG21320509 - Communicable Disease Exclusion<br>CG21671204 - Fungi or Bacteria Exclusion<br>CG21730115 - Exclusion of Certified Acts of Terrorism<br>CG02200312 - Florida Changes- Cancellation and Nonrenewal<br>CG21471207 - Employment-Related Practices Exclusion<br>API1016CYBR - Cyber Liability Claims Made Cvg Retroactive to Current Term Inception<br>CG00370413 - Products / Completed Operations Liability Coverage Form |
| **GL Line Endorsements** | General Liability Deductible - $500 Per Occurrence<br>CG 20 18 04 13 - Additional Insured - Mortgagee, Assignee or Receiver |

## Insured Locations

| Address | Effective | Occupancy | Location Specific Endorsements |
|---|---|---|---|
| 2801 Greene St HOLLYWOOD FL 33020 | 6/26/2017 | Distributors, Auto Lot Rented to Others, Parking Lot Rented to Others | |

Includes copyrighted material by Insurance Services Office, Inc. with its permission.

7/19/2017

**API Package Policy Forms**

 American Property Insurance Company

# INTERLINE FORMS



American Property Insurance Company

# <u>Disclosure - Credit Information Usage</u>

Under the Fair Credit and Reporting Act, an insurer is required to disclose to its customers whether credit information will be obtained on the applicant or insured and used as part of the insurance scoring process.

This notice is to inform you that American Property Insurance Company will obtain and use credit information on you as a routine part of the insurance scoring process.

If credit information is obtained or used on the applicant or insured, we are required to inform the applicant or insured of the name of each person on whom credit information was obtained or used and how each person's credit information was used to underwrite or rate the policy.   This information may be provided with this disclosure or in a separate notice.

Credit information is any credit-related information derived from a credit report itself or provided in an application for personal insurance. The term does not include information that is not credit-related, regardless of whether the information is contained in a credit report, in an application for insurance coverage, or is used to compute an insurance score.

Insurance score is a number or rating derived from a mathematical formula, computer application, model, or other process that is based on credit information and used to predict the expected insurance loss exposure of a consumer.

The types of factors that go into developing the insurance score are:

- Number of new applications for credit

- Payment history

- Bankruptcy, foreclosures, existence and extent of collection activity

- Credit history length

- Amount of outstanding debt in relation to credit limits

- Types of credit being used (eg: mortgage, installment loans)

Race, religion, gender, ethnicity, age, income and residency are not considerations in the computation of insurance score.

If you need any further information regarding the content of this disclosure, or feel that your score has been impacted by an extraordinary life event (e.g. death of an immediate family member, medical collections, dissolution of marriage, temporary loss of employment, identity theft, catastrophic illness, etc.), please contact your agent.

API 0414CRED                          Copyright, American Property Insurance Company 2014.



American Property Insurance Company

# **Privacy Policy**

Our policyholders are highly valued, and client confidentiality is of the utmost concern to us.  It is imperative to make sure your personal information is protected and that you understand the policies that protect you, as there are various legal terms in our privacy policy that we are required to use. It is our intent to provide self-explanatory descriptions of the most frequently used legal terms. This is not a solicitation. You do not need to respond.

This Privacy Policy describes the types of data we collect, use, share or disclose; and the kinds of companies with whom we may share such data. These examples serve only as illustrations and not an exhaustive list of the data we may collect, use or share. In addition, we must comply with various state and federal privacy laws that may apply to your information.

**Privacy Principles**

- We do not sell your personal information.
- We do not share customer information with anyone unless you expressly authorize the sharing, or it is permitted or required by law.
- We do not allow those with whom we do business to use our customer information for their own marketing purposes. We require any person or business providing products or services on our behalf to safeguard our customer information.

**Information We May Collect**

The types of information we may collect and how we gather it:

1.  From you (or provided to us on your behalf), on applications and other forms you submit to us; for example: your name; address; tax identification number; telephone number; driving record; transaction history; claims history; premiums.

2.  From consumer reporting agencies, public records and data collection agencies; for example: your obligations with others and your creditworthiness.

3.  From you when you enroll, request a service, or file a claim; for example: your name, address, credit card issuer and policy number, e-mail address, claim information.

4.  From your visits to our Internet websites; for example: session number and IP address. By reviewing the legal notice, terms of use, site agreement or similar named link appearing on any of our
websites that you visit you may learn of any "cookies" utilized by us and of any additional information that
may be collected from you on that site

**Information We May Disclose or Share and with Whom**

We may share customer information with other entities as needed to deliver products and services to you,
provide customer service, or handle your account.

**Disclosures Permitted by Law**

We may share customer information as described above and as permitted by law.

**Information Regarding Former Customers**

We treat the information of prospective, current, and former customers in the same manner with respect to the use of personal information.

**Our Security Procedures**

We restrict access to customer information to those employees only that have a valid business purpose to access such data. The safeguards we maintain are physical, electronic and procedural in nature.  We require those who
provide services for us and to whom we may share your data with to keep it safeguarded and confidential.

**Changes to this Privacy Policy**

We reserve the right to change this Privacy Policy at our discretion. If we make material changes, we will provide current and prospective policyholders a new notice that describes our new practices and will post it on our website.

**Notice of Insurance Information Practices**

We may collect personal information from persons other than the individual or individuals proposed for coverage. Personal information as well as other personal or privileged information subsequently collected by us
may in certain circumstances be disclosed to a third party without your authorization. You have the right to
access and correct all personal information collected.

We value our relationship with all of our policyholders. If you have any questions about our Privacy Policy, please write to us at American Property Insurance Company 36 Corbett Way Eatontown, NJ 07724 or e-mail us your question at info@api-nj.com.  Thank you.



American Property Insurance Company

# **Policyholder Disclosure Notice of Terrorism Insurance Coverage**

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury- in concurrence with the Secretary of State, and the Attorney General of the United States- to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED ON THE DECLARATIONS AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

IF YOU DO NOT RESPOND TO THIS NOTIFICATION YOUR SELECTION OF ACCEPTANCE OR REJECTION OF TERRORISM INSURANCE COVERAGE WILL CONTINUE AS PER YOUR INITIAL SELECTION OR ON YOUR EXISTING POLICY UPON RENEWAL.

API 0414TERR        Copyright, American Property Insurance Company 2014.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 ☐

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

IL 09 35 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

  **1.** The failure, malfunction or inadequacy of:

  **a.** Any of the following, whether belonging to any insured or to others:

  **(1)** Computer hardware, including micro-processors;

  **(2)** Computer application software;

  **(3)** Computer operating systems and related software;

  **(4)** Computer networks;

  **(5)** Microprocessors (computer chips) not part of any computer system; or

  **(6)** Any other computerized or electronic equipment or components; or

  **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

  due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

  **2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

  **1.** In a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

  **2.** Under the Commercial Property Coverage Part:

  **a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

  **b.** In a Covered Cause of Loss under the Causes Of Loss – Basic Form or the Causes Of Loss – Broad Form;

  we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

POLICY NUMBER:

IL 09 85 01 08

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| |
|---|
| **Terrorism Premium (Certified Acts) $**<br>**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**<br><br><br><br><br><br>**Additional information, if any, concerning the terrorism premium:**<br><br><br> |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

IL 01 75 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART

The following replaces the second paragraph of the **Legal Action Against Us** Condition:

**LEGAL ACTION AGAINST US**

Legal action against us involving direct physical loss or damage to property must be brought within 5 years from the date the loss occurs.

 © ISO Properties, Inc., 2006  □

IL 02 55 03 16

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation For Policies In Effect 90 Days Or Less**

**a.** If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with underwriting requirements established by the insurer.

**b.** We may not cancel:

**(1)** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**(2)** Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**B.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

**C.** The following is added to the **Cancellation** Common Policy Condition:

    **7. Cancellation For Policies In Effect For More Than 90 Days**

        **a.** If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

            **(1)** Nonpayment of premium;

            **(2)** The policy was obtained by a material misstatement;

            **(3)** In the event of failure to comply, within 90 days after the effective date of coverage, with underwriting requirements established by us before the effective date of coverage;

            **(4)** There has been a substantial change in the risk covered by the policy;

            **(5)** The cancellation is for all insureds under such policies for a given class of insureds;

            **(6)** On the basis of property insurance claims that are the result of an act of God, if we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

            **(7)** On the basis of a single property insurance claim which is the result of water damage, if we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

            **(8)** The cancellation of some or all of our policies is necessary to protect the best interests of the public or policyholders and such cancellation is approved by the Florida Office of Insurance Regulation.

        **b.** If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

            **(1)** 10 days before the effective date of cancellation if cancellation is for nonpayment of premium;

            **(2)** 45 days before the effective date of cancellation if:

                **(a)** Cancellation is for one or more of the reasons stated in Paragraphs **7.a.(2)** through **7.a.(7)** above, and this policy does not cover a residential structure or its contents; or

                **(b)** Cancellation is based on the reason stated in Paragraph **7.a.(8)** above;

            **(3)** 120 days before the effective date of cancellation if:

                **(a)** Cancellation is for one or more of the reasons stated in Paragraphs **7.a.(2)** through **7.a.(7)** above; and

                **(b)** This policy covers a residential structure or its contents.

        **c.** If this policy has been in effect for more than 90 days and covers a residential structure or its contents, we may not cancel this policy based on credit information available in public records.

**D.** The following is added:

**Nonrenewal**

    **1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least:

        **a.** 45 days prior to the expiration of the policy if this policy does not cover a residential structure or its contents, or if nonrenewal is for the reason stated in Paragraph **D.5.**; or

        **b.** 120 days prior to the expiration of the policy if this policy covers a residential structure or its contents.

    **2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

    **3.** We may not refuse to renew this policy:

        **a.** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

 © Insurance Services Office, Inc., 2015

**b.** On the basis of filing of claims for sinkhole loss. However, we may refuse to renew this policy if:

    **(1)** The total of such property insurance claim payments for this policy equals or exceeds the policy limits in effect on the date of loss for property damage to the covered building; or

    **(2)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based; or

**c.** Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**4.** Notwithstanding the provisions of Paragraph **D.3.,** we may refuse to renew this policy if this policy includes Sinkhole Loss coverage. If we nonrenew this policy for purposes of removing Sinkhole Loss coverage, pursuant to section 627.706, Florida Statutes, we will offer you a policy that includes catastrophic ground cover collapse coverage.

**5.** Notwithstanding the provisions of Paragraph **D.3.,** we may refuse to renew this policy if nonrenewal of some or all of our policies is necessary to protect the best interests of the public or policyholders and such nonrenewal is approved by the Florida Office of Insurance Regulation.

**E. Limitations On Cancellation And Nonrenewal In The Event Of Hurricane Or Wind Loss – Residential Property**

**1.** The following provisions apply to a policy covering a residential structure or its contents, if such property has sustained damage as a result of a hurricane or windstorm that is the subject of a declaration of emergency by the Governor and filing of an order by the Commissioner of Insurance Regulation:

**a.** Except as provided in Paragraph **E.1.b.,** we may not cancel or nonrenew the policy until at least 90 days after repairs to the residential structure or its contents have been substantially completed so that it is restored to the extent that it is insurable by another insurer writing policies in Florida. If we elect to not renew the policy, we will provide at least 100 days' notice that we intend to nonrenew 90 days after the substantial completion of repairs.

**b.** We may cancel or nonrenew the policy prior to restoration of the structure or its contents for any of the following reasons:

    **(1)** Nonpayment of premium;

    **(2)** Material misstatement or fraud related to the claim;

    **(3)** We determine that you have unreasonably caused a delay in the repair of the structure; or

    **(4)** We have paid the policy limits.

    If we cancel or nonrenew for nonpayment of premium, we will give you 10 days' notice. If we cancel or nonrenew for a reason listed in Paragraph **b.(2), b.(3)** or **b.(4),** we will give you 45 days' notice.

**2.** With respect to a policy covering a residential structure or its contents, any cancellation or nonrenewal that would otherwise take effect during the duration of a hurricane will not take effect until the end of the duration of such hurricane, unless a replacement policy has been obtained and is in effect for a claim occurring during the duration of the hurricane. We may collect premium for the period of time for which the policy period is extended.

**3.** With respect to Paragraph **E.2.,** a hurricane is a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service (hereafter referred to as NHC). The hurricane occurrence begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the NHC and ends 72 hours after the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the NHC.

 © Insurance Services Office, Inc., 2015

POLICY NUMBER:                                                                    IL 09 53 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

### SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

                          © Insurance Services Office, Inc., 2015

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

   © Insurance Services Office, Inc., 2015   **IL 09 53 01 15**

 American Property Insurance Company

# COMMERCIAL PROPERTY FORMS

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

  **a.** During the policy period shown in the Declarations; and

  **b.** Within the coverage territory.

**2.** The coverage territory is:

  **a.** The United States of America (including its territories and possessions);

  **b.** Puerto Rico; and

  **c.** Canada.

**I.** **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a loss to your Covered Property or Covered Income.

**2.** After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    **a.** Someone insured by this insurance;

    **b.** A business firm:

        **(1)** Owned or controlled by you; or

        **(2)** That owns or controls you; or

    **c.** Your tenant.

This will not restrict your insurance.

COMMERCIAL PROPERTY
CP 01 40 07 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

**COMMERCIAL PROPERTY**
**CP 10 30 10 12**

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance Or Law**

The enforcement of or compliance with any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for Volcanic Action as set forth in **(5)(a)**, **(5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

© Insurance Services Office, Inc., 2011

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

 © Insurance Services Office, Inc., 2011 CP 10 30 10 12

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

**(1)** An abrupt falling down or caving in;

**(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.,** does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

   © Insurance Services Office, Inc., 2011   CP 10 30 10 12

**4.  Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

**a.  Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

**(a)** Damage or destruction of "finished stock"; or

**(b)** The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b.  Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

**(a)** Your cancelling the lease;

**(b)** The suspension, lapse or cancellation of any license; or

**(c)** Any other consequential loss.

**c.  Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

**(a)** Paragraph **B.1.a.** Ordinance Or Law;

**(b)** Paragraph **B.1.c.** Governmental Action;

**(c)** Paragraph **B.1.d.** Nuclear Hazard;

**(d)** Paragraph **B.1.e.** Utility Services; and

**(e)** Paragraph **B.1.f.** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)** Your assumption of liability was executed prior to the accident; and

**(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

   d. Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

      However, this limitation does not apply to:

      (1) Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

      (2) Business Income Coverage or Extra Expense Coverage.

   e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

   f. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

   g. Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

      (1) Dampness or dryness of atmosphere or of soil supporting the vegetation;

      (2) Changes in or extremes of temperature;

      (3) Disease;

      (4) Frost or hail; or

      (5) Rain, snow, ice or sleet.

2. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

   a. Animals, and then only if they are killed or their destruction is made necessary.

   b. Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

      (1) Glass; or

      (2) Containers of property held for sale.

   c. Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

      However, this limitation does not apply:

      (1) If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

      (2) To Business Income Coverage or to Extra Expense Coverage.

© Insurance Services Office, Inc., 2011

**3.** The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

    **a.** $2,500 for furs, fur garments and garments trimmed with fur.

    **b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

    **c.** $2,500 for patterns, dies, molds and forms.

    **d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

**4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

    **a.** Results in discharge of any substance from an automatic fire protection system; or

    **b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.** For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

    **a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

    **b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

    **c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

    **d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

        **(1)** A cause of loss listed in **2.a.** or **2.b.;**

        **(2)** One or more of the "specified causes of loss";

        **(3)** Breakage of building glass;

        **(4)** Weight of people or personal property; or

        **(5)** Weight of rain that collects on a roof.

**3.** This **Additional Coverage – Collapse** does **not** apply to:

    **a.** A building or any part of a building that is in danger of falling down or caving in;

    **b.** A part of a building that is standing, even if it has separated from another part of the building; or

    **c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

    **a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**b.** Awnings, gutters and downspouts;

**c.** Yard fixtures;

**d.** Outdoor swimming pools;

**e.** Fences;

**f.** Piers, wharves and docks;

**g.** Beach or diving platforms or appurtenances;

**h.** Retaining walls; and

**i.** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.**, we will pay for loss or damage to that property only if:

**(1)** Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

**(2)** The property is Covered Property under this Coverage Form.

**5.** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

**a.** The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

**b.** The personal property which collapses is inside a building; and

**c.** The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**6.** This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.** This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**8.** The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

**E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

**1.** The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

**a.** A "specified cause of loss" other than fire or lightning; or

**b.** Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**2.** We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

**a.** Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

**b.** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

**c.** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

**3.** The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

    © Insurance Services Office, Inc., 2011    CP 10 30 10 12

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.** The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

**6.** The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

**a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

## F. Additional Coverage Extensions

**1. Property In Transit**

This Extension applies only to your personal property to which this form applies.

**a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

**b.** Loss or damage must be caused by or result from one of the following causes of loss:

**(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

**(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

**(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

**c.** The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

**3. Glass**

**a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension **F.3.** does not increase the Limit of Insurance.

## G. Definitions

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

**(1)** The cost of filling sinkholes; or

**(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss or damage to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

 © Insurance Services Office, Inc., 2011 CP 10 30 10 12

COMMERCIAL PROPERTY
CP 01 25 02 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** When this endorsement is attached to Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The following provision applies when a Coinsurance percentage is shown in the Declarations:

Florida law states as follows:

Coinsurance contract: The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the Insured.

**C.** The following is added:

If windstorm is a Covered Cause of Loss and loss or damage to Covered Property is caused by or results from windstorm, the following exclusion applies in:

**1.** Broward County;

**2.** Dade County;

**3.** Martin County;

**4.** Monroe County;

**5.** Palm Beach County; and

**6.** All the areas east of the west bank of the Intracoastal Waterway in the counties of:

**a.** Indian River; and

**b.** St. Lucie.

**Windstorm Exterior Paint And Waterproofing Exclusion**

We will not pay for loss or damage caused by windstorm to:

**1.** Paint; or

**2.** Waterproofing material;

applied to the exterior of buildings unless the building to which such loss or damage occurs also sustains other loss or damage by windstorm in the course of the same storm event. But such coverage applies only if windstorm is a Covered Cause of Loss.

When loss or damage to exterior paint or waterproofing material is excluded, we will not include the value of paint or waterproofing material to determine:

**a.** The amount of the Windstorm or Hail Deductible; or

**b.** The value of Covered Property when applying the Coinsurance Condition.

**D.** The **Loss Payment** Condition dealing with the number of days within which we must pay for covered loss or damage is replaced by the following:

Provided you have complied with all the terms of this Coverage Part, we will pay for covered loss or damage upon the earliest of the following:

**(1)** Within 20 days after we receive the sworn proof of loss and reach written agreement with you;

**(2)** Within 30 days after we receive the sworn proof of loss and:

**(a)** There is an entry of a final judgment; or

**(b)** There is a filing of an appraisal award with us; or

**(3)** Within 90 days of receiving notice of an initial, reopened or supplemental claim, unless we deny the claim during that time or factors beyond our control reasonably prevent such payment. If a portion of the claim is denied, then the 90-day time period for payment of claim relates to the portion of the claim that is not denied.

Paragraph **(3)** applies only to the following:

**(a)** A claim under a policy covering residential property;

**(b)** A claim for building or contents coverage if the insured structure is 10,000 square feet or less and the policy covers only locations in Florida; or

(c) A claim for contents coverage under a tenant's policy if the rented premises are 10,000 square feet or less and the policy covers only locations in Florida.

**E. Sinkhole Collapse Coverage Removed**

Sinkhole Collapse coverage is removed, as indicated in Paragraphs **E.1.** through **E.4.;** and coverage for Catastrophic Ground Cover Collapse is added instead as set forth in Paragraph **F.**

**1.** In the Causes Of Loss – Basic Form and in the Standard Property Policy, Sinkhole Collapse is deleted from the Covered Causes of Loss and sinkhole collapse is no longer an exception to the Earth Movement Exclusion.

**2.** In the Causes Of Loss – Broad Form, Sinkhole Collapse is deleted from the Covered Causes of Loss and from the Additional Coverage – Collapse; and sinkhole collapse is no longer an exception to the Earth Movement Exclusion.

**3.** In the Causes Of Loss – Special Form, Sinkhole Collapse is deleted from the "specified causes of loss" and is no longer an exception to the Earth Movement Exclusion.

**4.** In the Mortgageholders Errors And Omissions Coverage Form, Sinkhole Collapse is deleted from the Covered Causes of Loss under Coverage **B** and from the "specified causes of loss", and is no longer an exception to the Earth Movement Exclusion.

Further, this Coverage Part does not insure against Sinkhole Loss as defined in Florida law unless an endorsement for Sinkhole Loss is made part of this policy. However, if Sinkhole Loss causes Catastrophic Ground Cover Collapse, coverage is provided for the resulting Catastrophic Ground Cover Collapse even if an endorsement for Sinkhole Loss is not made part of this policy.

**F.** The following is added to this Coverage Part as a Covered Cause of Loss. In the Causes Of Loss – Special Form and Mortgageholders Errors And Omissions Coverage Form, the following is also added as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage – Collapse.

**Catastrophic Ground Cover Collapse**

We will pay for direct physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse, meaning geological activity that results in all of the following:

**1.** The abrupt collapse of the ground cover;

**2.** A depression in the ground cover clearly visible to the naked eye;

**3.** "Structural damage" to the building, including the foundation; and

**4.** The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

However, damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a catastrophic ground cover collapse.

The **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply to coverage for Catastrophic Ground Cover Collapse.

Coverage for Catastrophic Ground Cover Collapse does not increase the applicable Limit of Insurance. Regardless of whether loss or damage attributable to catastrophic ground cover collapse also qualifies as Sinkhole Loss or Earthquake (if either or both of those causes of loss are covered under this Coverage Part), only one Limit of Insurance will apply to such loss or damage.

**G.** The following applies to the **Additional Coverage – Civil Authority** under the Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form and Extra Expense Coverage Form:

**1.** The Additional Coverage – Civil Authority includes a requirement that the described premises are not more than one mile from the damaged property. With respect to described premises located in Florida, such one-mile radius does not apply.

**2.** The Additional Coverage – Civil Authority is limited to a coverage period of up to four weeks. With respect to described premises located in Florida, such four-week period is replaced by a three-week period.

**3.** Civil Authority coverage is subject to all other provisions of that Additional Coverage.

 © Insurance Services Office, Inc., 2011 CP 01 25 02 12

**H.** The following provisions are added to the **Duties In The Event Of Loss Or Damage** Loss Condition:

    **(1)** A claim, supplemental claim or reopened claim for loss or damage caused by hurricane or other windstorm is barred unless notice of claim is given to us in accordance with the terms of this policy within three years after the hurricane first made landfall or a windstorm other than hurricane caused the covered damage. (Supplemental claim or reopened claim means an additional claim for recovery from us for losses from the same hurricane or other windstorm which we have previously adjusted pursuant to the initial claim.)

    This provision concerning time for submission of claim, supplemental claim or reopened claim does not affect any limitation for legal action against us as provided in this policy under the Legal Action Against Us Condition, including any amendment to that condition.

    **(2)** Any inspection or survey by us, or on our behalf, of property that is the subject of a claim, will be conducted with at least 48 hours' notice to you. The 48-hour notice may be waived by you.

**I.** The following definition of structural damage is added with respect to the coverage provided under this endorsement:

"Structural damage" means a covered building, regardless of the date of its construction, has experienced the following.

**1.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

**2.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the primary structural members or primary structural systems that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those primary structural members or primary structural systems exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

**3.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical primary structural members to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**4.** Damage that results in the building, or any portion of the building containing primary structural members or primary structural systems, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**5.** Damage occurring on or after October 15, 2005, that qualifies as substantial structural damage as defined in the Florida Building Code.

COMMERCIAL PROPERTY
CP 00 10 10 12

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire-extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

(1) In your care, custody or control; and

(2) Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

  **(1)** The lowest basement floor; or

  **(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

  **(1)** Are licensed for use on public roads; or

  **(2)** Are operated principally away from the described premises.

  This paragraph does not apply to:

    **(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

 © Insurance Services Office, Inc., 2011

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $    500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |

($10,000 is 20% of $50,000.)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $    500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense: | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**(b)** Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced at the same or another premises; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

© Insurance Services Office, Inc., 2011

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

© Insurance Services Office, Inc., 2011

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

© Insurance Services Office, Inc., 2011

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

**(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

**(2)** If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

**(3)** Coverage under this Extension:

**(a)** Will end 90 days after the business personal property has been placed in the storage unit;

**(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

**(4)** Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

**(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

 © Insurance Services Office, Inc., 2011

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

**1.** Fire Department Service Charge;

**2.** Pollutant Clean-up And Removal;

**3.** Increased Cost Of Construction; and

**4.** Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | |
|---|---:|
| Deductible: | $     250 |
| Limit of Insurance – Building 1: | $  60,000 |
| Limit of Insurance – Building 2: | $  80,000 |
| Loss to Building 1: | $  60,100 |
| Loss to Building 2: | $  90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

$ 60,100
–     250
$ 59,850 Loss Payable – Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | |
|---|---:|
| Loss to Building 1: | $  70,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building 2: | $  90,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Building 1: | $  60,000 |
| (Limit of Insurance) | |
| Loss Payable – Building 2: | $  80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $ 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

© Insurance Services Office, Inc., 2011

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 100,000 |
| | The Deductible is: | $     250 |
| | The amount of loss is: | $  40,000 |

Step **(1):** $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $100,000 ÷ $200,000 = .50

Step **(3):** $40,000 x .50 = $20,000

Step **(4):** $20,000 – $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 200,000 |
| | The Deductible is: | $     250 |
| | The amount of loss is: | $  40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

When:  The value of the property is:

Building at Location 1:                $  75,000

Building at Location 2:                $ 100,000

Personal Property
at Location 2:                         $   75,000

                                       $ 250,000

The Coinsurance percentage
for it is:                                   90%

The Limit of Insurance for
Buildings and Personal Property
at Locations 1 and 2 is:               $ 180,000

The Deductible is:                     $   1,000

The amount of loss is:

Building at Location 2:                $  30,000

Personal Property
at Location 2:                         $  20,000

                                       $  50,000

Step **(1)**: $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2)**: $180,000 ÷ $225,000 = .80

Step **(3)**: $50,000 x .80 = $40,000

Step **(4)**: $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

    **a.** The term mortgageholder includes trustee.

    **b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

    **c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

    **d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

        **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

    All of the terms of this Coverage Part will then apply directly to the mortgageholder.

    **e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

        **(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

        **(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

    At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

    **f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

        **(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

        **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

    **g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

    **a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)** On or after the effective date of this Optional Coverage; and

**(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

| If: | The applicable Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The annual percentage increase is: | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is: | 146 |
| | The amount of increase is: $100,000 x .08 x 146 ÷ 365 = | $ 3,200 |

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence;

**(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

**(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

**(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

**(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© Insurance Services Office, Inc., 2011
**CP 00 10 10 12**

API0414PREM

# "Premier" Preferred Package

BUILDING AND PERSONAL PROPERTY COVERAGE FORM CP 00 10 10 12

CAUSES OF LOSS — SPECIAL FORM CP 10 30 10 12

You should read your policy, its endorsements, and any changes to your policy under this endorsement for complete information on coverages you are provided. If there is any conflict your policy and the endorsements will control.

COVERAGES

The provisions of the Building and Personal Property Coverage Form and Causes of Loss - Special Form apply except as otherwise provided in this endorsement.

## CHANGES TO BUILDING AND PERSONAL PROPERTY COVERAGE FORM CP 00 10 10 12 :

### I.  Section C. Limits of insurance

Outdoor Signs

a. We will pay for direct physical loss of or damage to all outdoor signs at the described premises, whether or not the sign is attached to the building:

(1) Owned by you; or

(2) Owned by others but in your care, custody or control.

b. The most we will pay under this Additional Coverage for loss or damage in any one occurrence is **$5,000** unless a different Limit of Insurance for outdoor signs is shown in the Declarations.

c. The provisions of this Additional Coverage supersede all other outdoor signs coverage references in the Building and Personal Property Coverage Form.

### II.  The Additional Coverages in Section A. Coverage of the Building and Personal Property Coverage Form are amended as follows:

4.a. (4) Debris Removal

The limit of insurance under Additional Coverages Debris Removal is changed to up to an additional **$25,000** for each location in any one occurrence.

4.a. (5) c. Fire Department Service Charge

The limit of insurance under Additional Coverages, Fire Department Service Charge, is changed to **$5,000** unless a different Limit of Insurance for Fire Department Service Charge is shown in the Declarations.

4.f. (4) Electronic Data

The most we will pay under Additional Coverages, Electronic Data, is changed to **$4,500** for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations, or computer systems involved.

©American Property Insurance Company, 2014.

**III.  The following are ADDED to Section A. Coverage subsection 4. Additional Coverages of the Building and Personal Property Coverage Form:**

4.9. Accounts Receivable

a.  You may extend the insurance that applies to your Business Personal Property to accounts receivable. We will pay:

(1) All amounts due from your customers that you are unable to collect;

(2) interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

(3) Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

(4) Other reasonable expenses that you incur to reestablish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

b.  The most we will pay under this Extension for loss or damage in any one occurrence at each described premises is **$10,000**.

c.  For accounts receivable not at a described premises, the most we will pay is **$10,000** in any one occurrence.

d.  To the extent that coverage for accounts receivable is provided under this Extension, the provisions of Property Not Covered in the Coverage Section do not apply.


4.h. Reward Payment

a.  We will reimburse you for rewards paid as follows:

(1) Up to **$2,500** to an eligible person for information leading to the arrest and conviction of any person or persons committing a crime resulting in loss to Covered Property from a Covered Cause of Loss.

However, we will pay no more than the lesser of the following amounts:

(a) Actual cash value of the Covered Property at the time of loss or damage, but not more than the amount required to repair or replace it; or

(b) The amount determined by the loss settlement procedure applicable to the Covered Property under the Loss Payment Condition.

(2) Up to **$2,500** to an eligible person for the return of stolen Covered Property, when the loss is caused by theft. However, we will pay no more than the lesser of the following amounts:

(a) Actual cash value based on the condition of the Covered Property at the time it is returned, but not more than the amount required to repair or replace it; or

(b) The amount determined by the loss settlement procedure applicable to the returned Covered Property under the Loss Payment Condition.

This Additional Coverage applies subject to the following conditions:

(1) An eligible person means that person designated by a law enforcement agency as being the first to voluntarily provide the information leading to the arrest and conviction or return of the stolen Covered Property and who is not:

(a) You or any family member;

©American Property Insurance Company, 2014.

(b) Your employee or any of his or her family members;

(c) An employee of a law enforcement agency;

(d) An employee of a business engaged in property protection;

(e) Any person who had custody of the Covered Property at the time the theft was committed; or

(f) Any person involved in the crime.

(2) No reward will be reimbursed unless and until the person(s) committing the crime is (are) convicted or the Covered Property is returned.

(3) The lesser of the amount of the reward or **$2,500** is the most we will reimburse for loss under this Additional Coverage in any one occurrence.

i. Back-up of Sewers or Drains

a. We will pay for direct loss caused by water that backs up through sewers or drains, or water that enters into and overflows from or within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

b. The most we will pay under this Extension is **$25,000** per occurrence, subject to a policy aggregate of **$25,000** per policy period.

c. If CP1032 Water Exclusion Endorsement IS NOT a part of this policy, Section B., Exclusions Item g.(3) in Causes of Loss Special Form is replaced by (3) below:

(3) Water that backs up from a sewer, drain or sump, except as provided by Additional Coverage 4.i above - Back-up of Sewers or Drains.

## THIS IS NOT FLOOD INSURANCE

We will not pay for water or other materials that back up from any sewer or drain or overflow from a sump when the back up or overflow is caused by any flood. This applies regardless of the proximity of the flood to Covered Property Flood includes accumulation of surface water, waves, tidal waves, overflow of streams or other bodies of water, or their spray, all whether driven by wind or not that enters the sewer or drain system.

4.j. Brands and Labels

a. If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value.  If so, we will pay your reasonable expenses and you may:

(1) Stamp the word "salvage" on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

(2) Remove the brands or labels, if doing so will not physically damage the merchandise. You must re-label the merchandise or its containers to comply with the law.

b. We will pay for the loss in value of the salvage merchandise that results from stamping it or removing the brands and labels.

c. The most we will pay under this Additional Coverage for loss or damage in any one occurrence is **$7,500**.

©American Property Insurance Company, 2014.

4.k. Consequential Loss to Stock

a. We will pay the reduction in value of the remaining parts of "stock" in process of manufacture when the reduction is caused by direct physical loss or damage from a Covered Cause of Loss to other parts of "stock" in process of manufacture at the described premises.

b. In the application of the COINSURANCE Additional Condition, the value of "stock" in process of manufacture at any location to which this endorsement applies, includes the additional value that it represents in "stock" at other locations.

c. The most we will pay under this Additional Coverage for each described premises is **$7,500** over the policy term.

4.l. Employee Theft and Forgery or Alteration

A. Insuring Agreements

Coverage is provided for the following insuring Agreements:

1. Employee Theft

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

This coverage does not apply to any "employee" immediately upon discovery by you or any of your partners, officers, or directors not in collusion with the "employee"; of any theft or dishonest act committed by that "employee" before or after being employed by you.

2. Forgery or Alteration:

a. We will pay for loss resulting directly from "forgery" or unauthorized alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

      (1) Made or drawn by or drawn upon you; or

      (2) Made or drawn by one acting as your agent; or

      (3) That are purported to have been so made or drawn.

b.  If you are sued for refusing to pay any instrument covered in Paragraph a. above, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for reasonable legal expenses that you incur and pay in that defense.

c. We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

d. For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act and will be treated the same as the original it replaced.

e. The most we will pay for any loss in any one "occurrence", including legal expenses, under this Additional Coverage is **$30,000** unless a different Limit of Insurance for forgery or alteration is shown in the Declarations.

B. Limit Of Insurance

The most we will pay for loss in any one "occurrence", including legal expenses, under this Additional Coverage, is **$30,000** unless a different limit of insurance for Employee Theft, Forgery or Alteration is shown in the Declarations. All loss or damage caused by one or more "employees," or involving a single act or series of related acts, is considered one occurrence.

C. Exclusions

©American Property Insurance Company, 2014.

1. This Additional Coverage does not apply to:

a. Acts Committed By You, Your Partners Or Your Members

Loss resulting from "theft" or any other dishonest act committed by:

      (1) You; or

      (2) Any of your partners or "members"; whether acting alone or in collusion with other persons.

b. Confidential information

Loss resulting from:

      (1) The unauthorized disclosure of your confidential information including, but not limited to, patents, trade secrets, processing methods or customer lists; or

      (2) The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information or similar non-public information.

c. Indirect Loss

Loss that is an indirect result of any act or "occurrence" covered by this Additional Coverage including, but not limited to, loss resulting from:

      (1) Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property".

      (2) Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this Additional Coverage.

      (3) Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this Additional Coverage. Item 4. r of this enhancement endorsement is not applicable to this section.

d. Legal Fees, Costs And Expenses

Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement A2.

2. Insuring Agreement A.1. does not cover:

a. Inventory Shortages

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

      (1) An inventory computation; or

      (2) A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

b. Trading

Loss resulting directly or indirectly from trading, whether in your name or in a genuine or fictitious account.

c. Warehouse Receipts

Loss resulting from fraudulent or dishonest signing, issuing, canceling or failing to cancel, a warehouse receipt or any papers connected with it.

3. Insuring Agreement A2. does not apply to:

©American Property Insurance Company, 2014.

Acts of Employees, Managers, Directors, Trustees or Representatives

Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

a. Whether acting alone or in collusion with other persons; or

b. While performing services for you or otherwise.

D. Discovery

1. We will pay for loss that you sustain through acts committed at any time and discovered by     you during the policy period shown in the Declarations; or

2. Discovery of loss occurs when you first become aware of facts which would cause a reasonable person to assume that a loss covered by this Additional Coverage has been or will be incurred, even though the exact amount or details of loss may not then be known. Discovery also occurs when you receive notice of an actual or potential claim against you alleging facts that if true would constitute a covered loss under this Additional Coverage.

E. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this Additional Coverage at any time during the policy period and up to 3 years afterward.

F. Definitions

1. "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed     with or without authority, in any capacity, for any purpose.

2. "Occurrence" means:

> (a) As respects Insuring Agreement A.1., all loss caused by, or involving, one or more "employees", whether the result of a single act or series of acts.

> (b) As respects Insuring Agreement A.2., all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments.

3. "Other property" means any tangible property other than "money" and "securities" that has     intrinsic value but does not include any property excluded under this policy.

4. "Theft" means the unlawful taking of "money", "securities" or "other property" to the   deprivation of the Insured.


4.m.  Employees Tools

a.  You may extend the insurance provided by this Coverage Form for direct physical loss or damage to covered property located at the premises described in the Declarations to apply to tools owned by your "employees." Our payment for loss of or damage to "employees" tools will only be for the account of the owner of the property. The loss or damage must be caused by or result form a Covered Cause of Loss.

The most we will pay for loss or damage under this Extension is **$2,000** for the duration of the policy period as described in the Declarations.


4.n.  Fine Arts

a. You may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to objects of art, art glass windows, antique or period furniture, and other items that have artistic merit, antique value or historical worth owned by you, or in your care, custody or control, located at the

©American Property Insurance Company, 2014.

premises described in the Declarations. We will not cover such property if held for sale, nor for loss or damage caused by repair, restoration or retouching. Loss or damage must be caused by or result from a Covered Cause of Loss.

b. If loss or damage occurs, we will pay the appraisal value.  If you do not have an appraisal, we will pay your cost at the time of purchase.

c. Our payment for loss of or damage to property of others will only be for the account of the owner of the property.

d. The most we will pay for loss or damage under this Fine Arts Coverage Extension is **$5,000** at each described premises over the policy term.


4.o. Fire Extinguisher Recharge Expense

a. We will pay:

> (1) The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

> (2) For loss or damage to Covered Property if such Foss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or fire extinguishing system.

b. No coverage will apply if the fire extinguishing system is discharged during installation or testing.

c. The most we will pay under this Additional Coverage is **$2,000** in any one occurrence


4.p. Lock and Key Replacement

a. We will pay for the cost to repair or replace locks at the described premises due to theft or other loss to keys.

b. The most we will pay under this Additional Coverage for all loss or damage in any one occurrence is **$2,000**.

c. A per occurrence deductible of $50 will apply.


4.q. Loss Adjustment Expenses

We will pay your expenses for preparation of loss data, including recording information, compiling inventories, or obtaining appraisals, that we require in connection with any claim covered under this policy, except for public adjusters hired by you.

The most we will pay under this Extension is **$2,000** for any one loss.


4.r. Money and Securities

a. We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any "employee" having use and custody of the property, at the described premises, or in transit between any of these places.

b. We will pay only for loss of "money" and "securities" resulting directly from:

> (1) Theft, meaning any act of stealing;

> (2) Disappearance; or

> (3) Destruction.

©American Property Insurance Company, 2014.

API0414PREM

c. We will not pay for loss:

 (1) Resulting from accounting or arithmetical errors or omissions;

 (2) Due to the giving or surrendering of property in any exchange or purchase; or

 (3) Of property contained in any money-operated device unless the amount of "money" deposited in it is recorded by a continuous reading instrument in the device.

d. Unless different limits are shown in the Declarations for "money" and "securities", the most we will pay for loss in any one occurrence is:

 (1) **$5,000** for "money" and "securities" while:

  (a) in or on the described premises; or

  (b) Within a bank or savings institution;

and

 (2) **$2,500** for "money" and "securities" while anywhere else described in Paragraph d.(1).(a). above.

e. All loss:

 (1) Caused by one or more persons; and

 (2) Involving a single act or series of related acts;

is considered one occurrence.

f. You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

g. To the extent that coverage for "money" and "securities" is provided under this Additional Coverage, the Property Not Covered Provisions in the Coverage Section do not apply.


4.s. Theft Damage to Building

We will pay for damage caused directly by burglary, theft or attempted burglary or theft to:

a. That part of any building described in the policy Declarations containing your Business Personal Property; or

b. Equipment within that building used to maintain or service the building.

We will not pay for damage caused by fire or explosion.  The most we will pay under this Additional Coverage for all loss or damage in any one occurrence is **$2,500**.


4.t. Spoilage

a. Insuring Agreements

Paragraph A.1., Covered Property, is replaced by the following:

1. Covered Property

 Covered Property includes "perishable stock" at any building described in the policy Declarations owned by you or by others that is in your care, custody or control. With respect to the coverage provided by this endorsement, property located on buildings or in the open or in vehicles is considered to be Property Not Covered.

b.  The following are added to the Covered Causes of Loss form**:**

1. Breakdown or Contamination, meaning:

a.  Change in temperature or humidity resulting from mechanical breakdown or mechanical failure of

©American Property Insurance Company, 2014.

refrigerating, cooling or humidity control apparatus or equipment, only while such equipment or apparatus is at any building described in the policy Declarations; and

b.  Contamination by the refrigerant.

2.  Power Outage, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the any building described in the policy Declarations, due to conditions beyond your control.

c.  The following is added to the Valuation Loss Condition:

We will determine the value of finished "perishable stock" in the event of loss or damage at:

1.  The selling price, as if no loss or damage had occurred;

2.  Less discounts and expenses you otherwise would have had.

d.  The most we will pay under this Additional Coverage for all loss or damage in any one occurrence  is **$2,500**.

e.  Paragraph A.5., Coverage Extensions, does not apply.

f.  Paragraph B., Exclusions, is replaced by the following:

B.  Exclusions

1.  The following Exclusions are added:

We will not pay for loss or damage caused by or resulting from:

a.  The disconnection of any refrigerating, cooling or humidity control system from the source of power.

b.  The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

c.  The inability of an Electrical Utility Company or other power source to provide sufficient power due to:

(1) Lack of fuel; or

(2) Governmental order.

d.  The inability of a power source at any building described in the policy Declarations to provide sufficient power due to lack of generating capacity to meet demand.

e.  Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

g.  The following is added to Paragraph F., Additional Conditions:

3. REFRIGERATION MAINTENANCE AGREEMENTS

You must maintain a refrigeration maintenance or service agreement. If you voluntarily terminate this agreement and do not notify us, the insurance provided by this endorsement will be automatically suspended at the involved location.

h.  Paragraph G., Optional Coverages, does not apply.

i.  The following is added to the Definitions:

"Perishable stock" means personal property:

a.  Maintained under controlled conditions for its preservation; and

b.  Susceptible to loss or damage if the controlled conditions change.


4.u  Electric Generators

a. We will pay for the cost to repair or replace electric generators, whether mobile or permanently installed, and meant as a backup source of utility provided electricity that incur damage caused by or result from a Covered Cause of Loss, including theft, and provided the equipment is not held for sale.

©American Property Insurance Company, 2014.

b. The most we will pay for loss or damage under this Additional Coverage is **$1,000** for the duration of the policy period as described in the Declarations, subject to the deductible.

4.v  "Green" Upgrades

a. We will pay for the cost to repair or replace "Green" upgrades that incur damage caused by or result from a caused by a Covered Cause of Loss, provided the equipment is not held for sale.  We will not pay under this endorsement unless the property is actually repaired or replaced at the same or another premises, and unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed six months. If the property is being relocated to another premises, the most we will pay for Green upgrades is the cost of Green upgrades at the original premises, subject to all other terms and conditions.

b. The most we will pay for loss or damage under this Additional Coverage is **$5,000** for the duration of the policy period as described in the Declarations, subject to the deductible.

c. The following is added to the Definitions:

> "Green" means enhanced energy efficiency or use of environmentally preferable, sustainable materials, products or methods in design, construction, manufacture or operation, as recognized by a Green standards-setter such as:
>
> > a. The Leadership in Energy and Environmental Design (LEED®) program of the U.S. Green Building Council;
> >
> > b. ENERGY STAR, a joint program of the U.S. Environmental Protection Agency and the U.S. Department of Energy; and
> >
> > c. Green Globes™, a program of the Green Building Initiative.

---

**IV. Section A. Coverage, 5. Coverage Extensions of the Building and Personal Property Coverage Form is amended as follows:**

5.a. Newly Acquired or Constructed Property

We will extend coverage in accordance with item 5.a Coverage Extension, Newly Acquired or Constructed Property, except that:

> (1) The most we will pay at each newly acquired location for loss or damage to your Building under this extension is increased to the lesser of 25% of your Building Limit or $**250,000** at each location.
>
> (2) The most we will pay at each newly acquired location for loss or damage under this extension for Your Business Personal Property is increased to the lesser of 25% of your Business and Personal Property Limit or **$100,000** at each location.
>
> (3) The maximum days under paragraph (3)(h) is maintained at 30 days.

5.b. Personal Effects and Property of Others

Personal Effects and Property of Others is replaced by the following:

You may extend the insurance that applies to Your Business Personal Property to apply to:

a. Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft; and

b. Personal property of others in your care, custody or control.

©American Property Insurance Company, 2014.

The most we will pay for loss or damage in any one occurrence under this Extension is **$5,000** at each described premises, unless a different limit of insurance for personal and property of others is shown in the Declarations. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property. This extension does not apply to tools owned by your "employees".

5.c.4. Valuable Papers and Records (Other Than Electronic Data)

Item 5.c.(4) under Valuable Papers and Records (Other Than Electronic Data) is replaced by the following:

Under this Extension, the most we will pay to replace or restore the lost information **is $5,000** at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

5.6. Property Off-Premises

1. The most we will pay for loss or damage under item 5.d, Coverage Extensions, Property Off-Premises, is increased to **$15,000**, except that the most we will pay for loss of or damage to laptops and portable office equipment is **$3,500**. For purposes of this extension, the coverage territory with respect to laptops and portable office equipment only is amended to worldwide.

2. You may extend this insurance provided by this Coverage Extension to include Business Personal Property, other than "stock," in a salesperson's care, custody or control. This extension also applies to Covered Property in or on a vehicle while in a salesperson's care, custody and control. The most we will pay under this extension is **$5,000**.

Outdoor Property

A.5.e.Coverage Extensions, Outdoor Property, is replaced by the following:

You may extend the insurance provided by this Coverage Form to apply to the following property:

a. Your outdoor fences, retaining walls, light poles, and flag poles that are not part of a building.

b. Your outdoor radio, television, satellite, dish-type or other antennas, including their masts, towers, lead-in and support wiring.

c. Your outdoor trees, shrubs and plants that are not "stock."

including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

      (1) Fire;

      (2) Lightning;

      (3) Explosion;

      (4) Riot or Civil Commotion; or

      (5) Aircraft.

The most we will pay is **$2,500** in any one occurrence, but not more than **$500** for any one tree, shrub or plant.

©American Property Insurance Company, 2014.

API0414PREM

## V. Additional Conditions

The following Additional Conditions are added to all coverages provided under this Preferred Package coverage enhancement:

a. Coverage afforded the insured under this Preferred Package coverage enhancement will be excess over any other valid and collectible insurance available to the insured.

b. Non-Cumulation of Limit of Insurance

Regardless of the number of years this Preferred Package coverage enhancement endorsement remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or policy period to policy period.

## VI. Additional Definitions

1. "Employee"

a. "Employee" means:

    (1) Any natural person:

        (a) While in your service or for 30 days after termination of service;

        (b) Who you compensate directly by salary, wages or commissions; and

        (c) Who you have the right to direct and control while performing services for you;

    (2) Any natural person who is furnished temporarily to you:

        (a) To substitute for a permanent "employee" as defined in Paragraph (1) above who is on leave; or

        (b) To meet seasonal or short-term work load conditions;

        while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises" ;

    (3) Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business but does not mean a temporary employee as defined in Paragraph (2) above;

    (4) Any natural person who is:

        (a) A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan(s)" insured under this policy; and

        (b) Your director or trustee while that person is handling "funds" or "other property" of any "employee benefit plan(s) " insured under this policy;

    (5) Any natural person who is a former "employee", director, partner, "member", "manager", representative or trustee retained as a consultant while performing services for you; or

    (6) Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the "premises".

b. "Employee" does not mean:

    (1) Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

©American Property Insurance Company, 2014.

API0414PREM

(2) Any "manager", director or trustee except while performing acts coming within the scope of the usual duties of an "employee".

2. "Manager" means a person serving in a directorial capacity for a limited liability company.

3. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

4. "Money" means:

(a) Currency, coins and bank notes in current use and having a face value; and

(b) Travelers checks, register checks and money orders held for safe to the public.

5. "Operations" means your business activities occurring at the described premises.

6. "Premises" means the interior of that portion of any building you occupy in conducting your business.

7. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

(a) Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

(b) Evidences of debt issued in connection with creditor charge cards, which cards are not issued by you;

(c) but does not include "money".

**Except as amended herein, all of the terms and conditions of your policy remain unchanged.**

©American Property Insurance Company, 2014.

COMMERCIAL PROPERTY
CP 00 30 10 12

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation – Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

    **(a)** Used in the construction, alterations or additions; or

    **(b)** Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

**(1) Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

    **(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

    **(b)** Ends on the earlier of:

        **(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

        **(ii)** 60 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2) "Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

    **(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

    **(b)** Ends on the earlier of:

        **(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

        **(ii)** 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation – Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

  **(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

  **(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

  **(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

  **(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

  **a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

  **b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

  **c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

    **(1)** This policy expires;

**(2)** 30 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

## B. Limits Of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

**1.** Alterations And New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

## C. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

## 2. Duties In The Event Of Loss

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Loss Determination**

    **a.** The amount of Business Income loss will be determined based on:

      **(1)** The Net Income of the business before the direct physical loss or damage occurred;

      **(2)** The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

      **(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

      **(4)** Other relevant sources of information, including:

        **(a)** Your financial records and accounting procedures;

        **(b)** Bills, invoices and other vouchers; and

        **(c)** Deeds, liens or contracts.

    **b.** The amount of Extra Expense will be determined based on:

      **(1)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

        **(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

        **(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

      **(2)** Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

**c. Resumption Of Operations**

    We will reduce the amount of your:

    **(1)** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

    **(2)** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

    **d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. Loss Payment**

    We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

    **a.** We have reached agreement with you on the amount of loss; or

    **b.** An appraisal award has been made.

**D. Additional Condition**

**COINSURANCE**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

**1.** The Coinsurance percentage shown for Business Income in the Declarations; times

**2.** The sum of:

    **a.** The Net Income (Net Profit or Loss before income taxes), and

    **b.** Operating expenses, including payroll expenses,

    that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

© Insurance Services Office, Inc., 2011

Instead, we will determine the most we will pay using the following steps:

Step **(1):** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step **(2):** Divide the Limit of Insurance for the described premises by the figure determined in Step **(1);** and

Step **(3):** Multiply the total amount of loss by the figure determined in Step **(2).**

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

**(1)** Prepaid freight – outgoing;

**(2)** Returns and allowances;

**(3)** Discounts;

**(4)** Bad debts;

**(5)** Collection expenses;

**(6)** Cost of raw stock and factory supplies consumed (including transportation charges);

**(7)** Cost of merchandise sold (including transportation charges);

**(8)** Cost of other supplies consumed (including transportation charges);

**(9)** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

**(10)** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

**(11)** All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

**(12)** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example 1 (Underinsurance)**

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: $ 400,000

The Coinsurance percentage is: 50%

The Limit of Insurance is: $ 150,000

The amount of loss is: $ 80,000

Step **(1):** $400,000 x 50% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $150,000 ÷ $200,000 = .75

Step **(3):** $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example 2 (Adequate Insurance)**

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: $ 400,000

The Coinsurance percentage is: 50%

The Limit of Insurance is: $ 200,000

The amount of loss is: $ 80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

**1. Maximum Period Of Indemnity**

**a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

**(1)** The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

**(2)** The Limit Of Insurance shown in the Declarations.

**2. Monthly Limit Of Indemnity**

**a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

**(1)** The Limit of Insurance, multiplied by

**(2)** The fraction shown in the Declarations for this Optional Coverage.

**Example**

| When: | The Limit of Insurance is: | $ 120,000 |
|---|---|---|
| | The fraction shown in the Declarations for this Optional Coverage is: | 1/4 |
| | The most we will pay for loss in each period of 30 consecutive days is: | $ 30,000 |
| | ($120,000 x 1/4 = $30,000) | |
| | If, in this example, the actual amount of loss is: | |
| | Days 1–30: | $ 40,000 |
| | Days 31–60: | $ 20,000 |
| | Days 61–90: | $ 30,000 |
| | | $ 90,000 |
| | We will pay: | |
| | Days 1–30: | $ 30,000 |
| | Days 31–60: | $ 20,000 |
| | Days 61–90: | $ 30,000 |
| | | $ 80,000 |

The remaining $10,000 is not covered.

**3. Business Income Agreed Value**

**a.** To activate this Optional Coverage:

**(1)** A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

**(a)** During the 12 months prior to the date of the Work Sheet; and

**(b)** Estimated for the 12 months immediately following the inception of this Optional Coverage.

**(2)** The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

**(a)** The Coinsurance percentage shown in the Declarations; multiplied by

**(b)** The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

**b.** The Additional Condition, Coinsurance, is suspended until:

**(1)** 12 months after the effective date of this Optional Coverage; or

**(2)** The expiration date of this policy;

whichever occurs first.

**c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

**(1)** Within 12 months of the effective date of this Optional Coverage; or

**(2)** When you request a change in your Business Income Limit of Insurance.

**d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

**(1)** The Business Income Limit of Insurance; divided by

**(2)** The Agreed Value.

**Example**

| When: | The Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The Agreed Value is: | $ 200,000 |
| | The amount of loss is: | $ 80,000 |

Step **(1):** $100,000 ÷ $200,000 = .50

Step **(2):** .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

Under Paragraph **A.5.c., Extended Business Income,** the number 60 in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

## F. Definitions

1. "Finished stock" means stock you have manufactured.

   "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

   a. Your business activities occurring at the described premises; and

   b. The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3. "Period of restoration" means the period of time that:

   a. Begins:

      (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

      (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

   b. Ends on the earlier of:

      (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2) The date when business is resumed at a new permanent location.

   "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down, of any property; or

      (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. "Rental Value" means Business Income that consists of:

   a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   b. Continuing normal operating expenses incurred in connection with that premises, including:

      (1) Payroll; and

      (2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6. "Suspension" means:

   a. The slowdown or cessation of your business activities; or

   b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

# EQUIPMENT BREAKDOWN PROTECTION COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Covered Cause Of Loss

Covered Cause of Loss is a "Breakdown" to "Covered Equipment".

### 2. Coverages Provided

Each of the following coverages is provided if either a limit or the word INCLUDED is shown for that coverage in the Declarations. If neither a limit nor the word INCLUDED is shown, then that coverage is not provided.

These coverages apply only to that portion of the loss or damage that is a direct result of a Covered Cause of Loss.

#### a. Property Damage

We will pay for direct damage to "Covered Property" located at the premises described in the Declarations.

#### b. Expediting Expenses

With respect to direct damage to "Covered Property", we will pay for the extra cost you necessarily incur to:

**(1)** Make temporary repairs; and

**(2)** Expedite the permanent repairs or replacement of the damaged property.

#### c. Business Income And Extra Expense Or Extra Expense Only

**(1)** We will pay:

**(a)** Your actual loss of "Business Income" during the "Period of Restoration"; and

**(b)** The "Extra Expense" you necessarily incur to operate your business during the "Period of Restoration".

However, if coverage for "Extra Expense" only is indicated in the Declarations, then coverage for "Business Income" is not provided.

We will consider the experience of your business before the "Breakdown" and the probable experience you would have had without the "Breakdown" in determining the amount of our payment.

**(2)** If you have coverage for "Business Income" and "Extra Expense" or "Extra Expense" only and:

**(a)** If a number of days is shown in the Declarations for Extended Period Of Restoration Coverage, it will replace the five consecutive days in the definition of "Period of Restoration".

**(b)** If you have coverage for Ordinance or Law, then the "Period of Restoration" is extended to include the additional period of time required for demolition, removal, repair, remodeling or reconstruction.

**(c)** If "Media" are damaged or "Data" are lost or corrupted, we will pay your actual loss of "Business Income" and/or "Extra Expense" during the time necessary to:

**(i)** Research, replace or restore the damaged "Media" or lost or corrupted "Data"; and

**(ii)** Reprogram instructions used in any covered "Computer Equipment".

There shall be no coverage for any "Media" or "Data" that we determine are not or cannot be replaced or restored.

Unless a higher limit is shown in the Declarations, we will pay the lesser of your actual loss of "Business Income" and/or "Extra Expense" up to 30 days after the "Period of Restoration", or $25,000.

**d. Spoilage Damage**

**(1)** We will pay for the spoilage damage to raw materials, property in process or finished products, provided all of the following conditions are met:

    **(a)** The raw materials, property in process or finished products must be in storage or in the course of being manufactured;

    **(b)** You must own or be legally liable under written contract for the raw materials, property in process or finished products; and

    **(c)** The spoilage damage must be due to the lack or excess of power, light, heat, steam or refrigeration.

**(2)** We will also pay any necessary expenses you incur to reduce the amount of loss under this coverage. We will pay such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this Coverage Form.

**e. Utility Interruption**

If you have coverage for "Business Income" and "Extra Expense", "Extra Expense" only or Spoilage Damage, that coverage is extended to include loss resulting from the interruption of utility services, provided all of the following conditions are met:

**(1)** The interruption is the direct result of a "Breakdown" to "Covered Equipment" owned, operated or controlled by the local private or public utility or distributor that directly generates, transmits, distributes or provides utility services which you receive;

**(2)** The "Covered Equipment" is used to supply electric power, communication services, air conditioning, heating, gas, sewer, water or steam to your premises; and

**(3)** The interruption of utility service to your premises lasts at least the consecutive period of time shown in the Declarations. Once this waiting period is met, coverage will commence at the initial time of the interruption and will be subject to all applicable deductibles.

**f. Newly Acquired Premises**

We will automatically provide coverage at newly acquired premises you have purchased or leased. This coverage begins at the time you acquire the property and continues for a period not exceeding the number of days indicated in the Declarations for Newly Acquired Premises, under the following conditions:

**(1)** You must inform us, in writing, of the newly acquired premises as soon as practicable;

**(2)** You agree to pay an additional premium as determined by us;

**(3)** The coverage for these premises will be subject to the same terms, conditions, exclusions and limitations as other insured premises; and

**(4)** If the coverages and deductibles vary for existing premises, then the coverages for the newly acquired premises will be the broadest coverage and highest limits and deductible applicable to the existing premises.

**g. Ordinance Or Law Coverage**

The following applies despite the Ordinance Or Law Exclusion and provided these increases in loss are necessitated by the enforcement of or compliance with any ordinance or law that is in force at the time of the "Breakdown", which regulates the demolition, construction, repair or use of the building or structure. With respect to the building or structure that was damaged as a result of a "Breakdown":

**(1)** We will pay for:

    **(a)** The loss in value of the undamaged portion of the building or structure as a consequence of enforcement of or compliance with an ordinance or law that requires the demolition of undamaged parts of the same building or structure;

    **(b)** Your actual cost to demolish and clear the site of the undamaged parts of the same building or structure as a consequence of enforcement of or compliance with an ordinance or law that requires the demolition of such undamaged property; and

© Insurance Services Office, Inc., 2011

**(c)** The increased cost actually and necessarily expended to:

**(i)** Repair or reconstruct the damaged or destroyed portions of the building or structure; and

**(ii)** Reconstruct or remodel the undamaged portion of that building or structure with buildings or structures of like materials, height, floor area and style for like occupancy, whether or not demolition is required on:

**i.** The same premises or on another premises if you so elect. However, if you rebuild at another premises, the most we will pay is the increased cost of construction that we would have paid to rebuild at the same premises; or

**ii.** Another premises if the relocation is required by the ordinance or law. The most we will pay is the increased cost of construction at the new premises.

**(2)** We will not pay for any:

**(a)** Demolition or site clearing until the undamaged portions of the buildings or structures are actually demolished;

**(b)** Increase in loss until the damaged or destroyed buildings or structures are actually rebuilt or replaced and approved by the regulating government agency;

**(c)** Loss due to any ordinance or law that:

**(i)** You were required to comply with before the loss, even if the building was undamaged; and

**(ii)** You failed to comply with;

**(d)** Increase in loss, excess of the amount required to meet the minimum requirement of any ordinance or law enforcement at the time of the "Breakdown";

**(e)** Increase in loss resulting from a substance declared to be hazardous to health or environment by any government agency;

**(f)** Loss or expense sustained due to the enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to the presence, growth, proliferation, spread or any activity of "Fungus", wet or dry rot; or

**(g)** Costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "Fungus", wet or dry rot.

**(3)** If:

**(a)** The building or structure is damaged by a "Breakdown" that is covered under this policy;

**(b)** There is other physical damage that is not covered under this policy; and

**(c)** As a result of the building damage in its entirety, you are required to comply with the ordinance or law;

then we will not pay the full amount of the loss under this coverage. Instead, we will pay only that proportion of such loss, meaning the proportion that the covered "Breakdown" loss bears to the total physical damage.

But if the building or structure sustains direct physical damage that is not covered under this policy and such damage is the subject of the ordinance or law, then there is no Ordinance Or Law Coverage under this Coverage Part even if the building has also sustained damage by a covered "Breakdown".

**h. Errors And Omissions**

We will pay for any loss or damage, which is not otherwise payable under this Coverage Part, solely because of the items listed below:

**(1)** Any error or unintentional omission in the description or location of property as insured under this Coverage Part or in any subsequent amendments;

**(2)** Any failure through error to include any premises owned or occupied by you at the inception date of this Coverage Part; or

**(3)** Any error or unintentional omission by you that results in cancellation of any premises insured under this policy.

No coverage is provided as a result of any error or unintentional omission by you in the reporting of values or the coverage you requested.

It is a condition of this coverage that such errors or unintentional omissions shall be reported and corrected when discovered. The policy premium will be adjusted accordingly to reflect the date the premises should have been added had no error or omission occurred.

**i. Brands And Labels**

**(1)** If branded or labeled merchandise that is "Covered Property" is damaged by a "Breakdown", we may take all or any part of the property at an agreed or appraised value. If so, you may:

**(a)** Stamp the word SALVAGE on the merchandise or its containers if the stamp will not physically damage the merchandise; or

**(b)** Remove the brands or labels if doing so will not physically damage the merchandise. You must relabel the merchandise or its containers to comply with any law.

**(2)** We will pay reasonable costs you incur to perform the activity described in Paragraphs **(1)(a)** and **(1)(b)**, but the total we pay for these costs and the value of the damaged property will not exceed the applicable Limit of Insurance on such property.

**j. Contingent Business Income And Extra Expense Or Extra Expense Only Coverage**

**(1)** Subject to the same terms and conditions, the "Business Income" and "Extra Expense" or "Extra Expense" only coverage provided by this Coverage Part is extended to cover your loss, if any, resulting from a "Breakdown" to "Covered Equipment" at a premises shown in the Declarations, that is not owned or operated by you which:

**(a)** Wholly or partially prevents the delivery of services or materials shown in the Declarations to you or from you to others for your account; or

**(b)** Results in the loss of sales at your premises shown in the Declarations.

**(2)** You shall use your influence to induce the contributing or recipient premises to make use of any other machinery, equipment, supplies or premises available in order to resume operations and delivery of services or materials to you, or the acceptance of products or services from you. You shall cooperate with the contributing or recipient premises to this effect in every way, but not financially unless authorized by us.

**B. Exclusions**

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded, regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

The exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**1. Ordinance Or Law**

Increase in loss from the enforcement of or compliance with any ordinance, law, rule, regulation or ruling which restricts or regulates the repair, replacement, alteration, use, operation, construction, installation, cleanup or disposal of "Covered Property".

However, the words use and operation shall be eliminated as respects a covered "Breakdown" to electrical supply and emergency generating equipment located on the premises of a hospital.

**2. Earth Movement**

Earth movement, including, but not limited to, earthquake, tremors and aftershocks relating to earthquake, landslide, land subsidence, mine subsidence or volcanic action.

**3. Water**

**a.** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**b.** Mudslide or mudflow;

**c.** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**d.** Water damage caused by the discharge or leakage of a sprinkler system or domestic water piping;

© Insurance Services Office, Inc., 2011

    **e.** Water under the ground surface pressing on, or flowing or seeping through:

      **(1)** Foundations, walls, floors or paved surfaces;

      **(2)** Basements, whether paved or not;

      **(3)** Doors, windows or other openings; or

    **f.** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **a.**, **c.** or **e.**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies, regardless of whether any of the above, in Paragraphs **a.** through **f.**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

**4. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

**5. War Or Military Action**

    **a.** War, including undeclared or civil war;

    **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**6.** An explosion. However, we will pay for loss or damage caused by an explosion of "Covered Equipment" of a kind specified in **a.** through **g.** below, if not otherwise excluded in this Section **B.**:

    **a.** Steam boiler;

    **b.** Electric steam generator;

    **c.** Steam piping;

    **d.** Steam turbine;

    **e.** Steam engine;

    **f.** Gas turbine; or

    **g.** Moving or rotating machinery when such explosion is caused by centrifugal force or mechanical breakdown.

**7.** Fire or combustion explosion including those that:

    **a.** Result in a "Breakdown";

    **b.** Occur at the same time as a "Breakdown"; or

    **c.** Ensue from a "Breakdown".

**8. "Fungus", Wet Rot And Dry Rot**

Presence, growth, proliferation, spread or activity of "Fungus", wet or dry rot. However, if a "Breakdown" occurs, we will pay the resulting loss or damage.

This exclusion does not apply to the extent that coverage for "Fungus", wet rot or dry rot is provided elsewhere in this Coverage Form and then only for that portion of any loss or damage resulting from the presence, growth, proliferation, spread or activity of "Fungus", wet or dry rot as a result of a "Breakdown".

**9.** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease. However:

    **a.** If a "Breakdown" occurs, we will pay the resulting loss or damage;

    **b.** This exclusion does not apply to loss or damage caused by or resulting from "Fungus", wet rot or dry rot. Such loss or damage is addressed in Exclusion **B.8.;**

    **c.** Regardless of the application of this exclusion to any particular loss, the provisions of this Exclusion **9.** do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Form.

**10.** Explosion within the furnace of a chemical recovery type boiler or within the passage from the furnace to the atmosphere.

**11.** Damage to "Covered Equipment" undergoing a pressure or electrical test.

**12.** Water or other means used to extinguish a fire, even when the attempt is unsuccessful.

**13.** Depletion, deterioration, corrosion, erosion or wear and tear. However, if a "Breakdown" occurs, we will pay the resulting loss or damage.

**14.** A "Breakdown" that is caused by any of the following causes of loss if coverage for that cause of loss is provided by another policy of insurance you have, whether collectible or not:

    **a.** Aircraft or vehicles;

    **b.** Freezing caused by cold weather;

    **c.** Lightning;

    **d.** Sinkhole collapse;

    **e.** Smoke;

    **f.** Riot, civil commotion or vandalism; or

    **g.** Weight of snow, ice or sleet.

15. A "Breakdown" that is caused by windstorm or hail.

16. A delay in, or an interruption of, any business, manufacturing or processing activity except as provided by the "Business Income" and "Extra Expense", "Extra Expense" only and Utility Interruption Coverages.

17. With respect to "Business Income" and "Extra Expense", "Extra Expense" only and Utility Interruption Coverages, the following additional exclusions shall apply:

    a. The business that would not or could not have been carried on if the "Breakdown" had not occurred;

    b. Your failure to use due diligence and dispatch and all reasonable means to operate your business as nearly normal as practicable at the premises shown in the Declarations; or

    c. The suspension, lapse or cancellation of a contract following a "Breakdown" extending beyond the time business could have resumed if the contract had not lapsed, been suspended or canceled.

18. Any indirect loss following a "Breakdown" to "Covered Equipment" that results from the lack or excess of power, light, heat, steam or refrigeration except as provided by the "Business Income" and "Extra Expense", "Extra Expense" only, Spoilage Damage and Utility Interruption Coverages.

19. With respect to Utility Interruption Coverage, any loss resulting from the following additional causes of loss whether or not coverage for that cause of loss is provided by another policy you have:

    a. Acts of sabotage;

    b. Collapse;

    c. Deliberate act(s) of load-shedding by the supplying utility;

    d. Freezing caused by cold weather;

    e. Impact of aircraft, missile or vehicle;

    f. Impact of objects falling from an aircraft or missile;

    g. Lightning;

    h. Riot, civil commotion or vandalism;

    i. Sinkhole collapse;

    j. Smoke; or

    k. Weight of snow, ice or sleet.

20. Any indirect result of a "Breakdown" to "Covered Equipment" except as provided by the "Business Income" and "Extra Expense", "Extra Expense" only, Spoilage Damage and Utility Interruption Coverages.

21. Neglect by you to use all reasonable means to save and preserve "Covered Property" from further damage at and after the time of the loss.

**C. Limits Of Insurance**

1. The most we will pay for any and all coverages for loss or damage from any "One Breakdown" is the applicable Limit Of Insurance shown in the Declarations.

2. Any payment made will not be increased if more than one insured is shown in the Declarations.

3. For each coverage in Paragraph **A.2.,** if:

    a. INCLUDED is shown in the Declarations, the limit for such coverage is part of, not in addition to, the Limit per Breakdown.

    b. A limit is shown in the Declarations, we will not pay more than the Limit of Insurance for each such coverage.

4. For any "Covered Equipment" that is:

    a. Used solely to supply utility services to your premises;

    b. Owned by a public or private utility;

    c. Not in your care, custody or control and for which you are legally liable; and

    d. Covered under this Coverage Form;

    the Limit Of Insurance for Property Damage stated in the Declarations is replaced by the sum of one dollar.

    If you are a public or private utility, **4.b.** is replaced by the following:

    b. Owned by a public or private utility other than you.

5. Unless a higher limit or INCLUDED is shown in the Declarations, the most we will pay for direct damage as a direct result of a "Breakdown" to "Covered Equipment" is $25,000 for each of the following. The limits are part of, not in addition to, the Limit of Insurance for Property Damage or Limit per Breakdown.

    a. **Ammonia Contamination**

       The spoilage to "Covered Property" contaminated by ammonia, including any salvage expense.

**b. Consequential Loss**

The reduction in the value of undamaged "Stock" parts of a product which becomes unmarketable. The reduction in value must be caused by a physical loss or damage to another part of the product.

**c. Data And Media**

Your cost to research, replace or restore damaged "Data" or "Media" including the cost to reprogram instructions used in any "Computer Equipment".

**d. Hazardous Substance**

Any additional expenses incurred by you for the cleanup, repair or replacement or disposal of "Covered Property" that is damaged, contaminated or polluted by a "Hazardous Substance".

As used here, additional expenses means the additional cost incurred over and above the amount that we would have paid had no "Hazardous Substance" been involved with the loss.

Ammonia is not considered to be a "Hazardous Substance" as respects this limitation.

This coverage applies despite the operation of the Ordinance Or Law Exclusion.

**e. Water Damage**

The damage to "Covered Property" by water including any salvage expenses.

If "Fungus", wet or dry rot results from damage by water as limited in this paragraph, loss or damage attributable to "Fungus", wet or dry rot will be:

**(1)** Limited as described in Paragraphs **C.6.a.(1)** through **C.6.a.(5);** and

**(2)** Part of the Water Damage limit, not in addition to it.

**6. Limited Coverage For "Fungus", Wet Rot And Dry Rot**

**a. Property Damage**

We will pay for loss or damage by "Fungus", wet or dry rot only when the "Fungus", wet or dry rot is the direct result of a "Breakdown" to "Covered Equipment" that occurs during the policy period. As used in this Limited Coverage, the term loss or damage means:

**(1)** Direct physical loss or damage to "Covered Property" caused by "Fungus", wet or dry rot including the cost of removal of the "Fungus", wet or dry rot:

**(a)** The cost to tear out and replace any "Covered Property" as needed to gain access to the "Fungus", wet or dry rot; and

**(b)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "Fungus", wet or dry rot is present.

**(2)** The coverage described under Paragraph **6.a.(1)** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "Breakdown" to "Covered Equipment" which take place within the 12-month period starting with the beginning of the present annual policy period. With respect to a particular occurrence of loss which results in "Fungus", wet or dry rot, we will not pay more than a total of $15,000 even if the "Fungus", wet or dry rot continues to be present or active or recurs in a later policy period.

**(3)** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any "Covered Property". If a particular occurrence results in loss or damage by "Fungus", wet or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected "Covered Property".

© Insurance Services Office, Inc., 2011

If there is covered loss or damage to "Covered Property" not caused by "Fungus", wet or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "Fungus", wet or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**(4)** If a Revised Limit is shown in the Declarations, the amount of $15,000 in Paragraph **6.a.(2)** is replaced by the amount indicated in the Declarations.

**(5)** If the Declarations indicates that the Separate Premises Option applies, then the amount of coverage ($15,000, unless a higher amount is shown in the Declarations) is made applicable to separate premises as described in the Declarations. For each premises so described, the amount of coverage is an annual aggregate limit, subject to the terms set forth in Paragraph **6.a.(2).**

**b. Business Income And Extra Expense Or Extra Expense Only**

**(1)** If you have coverage for "Business Income" and "Extra Expense" or "Extra Expense" only, then Paragraph **b.(1)(a)** or **b.(1)(b)** applies, provided that the incurred loss or expense satisfies the terms and conditions applicable to the "Business Income" and "Extra Expense" or "Extra Expense" only coverage.

  **(a)** If:

    **(i)** The "Breakdown"; or

    **(ii)** Any damage from water resulting from the "Breakdown";

    which resulted in "Fungus", wet or dry rot, does not in itself generate a loss of "Business Income" or an "Extra Expense", but the loss of "Business Income" or "Extra Expense" is solely due to loss or damage to property caused by "Fungus", wet or dry rot, then our payment under "Business Income" and "Extra Expense" or "Extra Expense" only is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

  **(b)** If a covered loss of "Business Income" or an "Extra Expense" was caused by loss or damage other than "Fungus", wet or dry rot, but remediation of "Fungus", wet or dry rot prolongs the "Period of Restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "Period of Restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**(2)** If a Revised Number of Days is shown in the Declarations, the number of days (30) in Paragraph **b.(1)(a)** or **b.(1)(b)** is replaced by the number of days indicated in the Declarations.

**c.** If you have coverage for Ordinance Or Law, then with respect to Property Damage, "Business Income" and "Extra Expense" or "Extra Expense" only, we will not pay under the Ordinance Or Law Coverage for:

**(1)** Loss or expense sustained due to the enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to the presence, growth, proliferation, spread or any activity of "Fungus", wet or dry rot; or

**(2)** The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "Fungus", wet or dry rot.

**7. Increased Cost Of Loss And Related Expenses For "Green" Upgrades**

  **a. Property Damage**

    Coverage is extended to include the additional loss or damage and related expenses incurred by you that are attributable to "Green" upgrades as a direct result of a "Breakdown" to "Covered Equipment" that occurs during the policy period. As provided in this "Green" upgrades coverage, we will pay for:

  **(1)** Additional expense to repair or replace the damaged "Covered Property" except raw materials, property in process, finished goods and "Stock";

**(2)** Related additional expenses to:

**(a)** Reuse or salvage the damaged "Covered Property";

**(b)** Remove, transport and dispose of the recyclable damaged "Covered Property" and its construction waste to appropriate sites; and

**(c)** Replace the damaged portions of roof section(s) of buildings or structures with a vegetated roof in accordance with the recommended procedures of a "Green standards-setter";

**(3)** Additional reasonable and customary expense to hire the services of an accredited architect or engineer with respect to any necessary design and engineering recommendations in the course of repair or replacement of damaged portions of the building; and

**(4)** Additional reasonable expense to pay:

**(a)** Fees imposed by the "Green standards-setter" in order to determine if certification or recertification is appropriate according to the organization's standard;

**(b)** Fees to test "Covered Equipment" following its repair or installation as replacements, when such testing is undertaken in the course of submitting to the certification or recertification process; and

**(c)** After repair or reconstruction is completed, to flush out the renovated space and/or conduct air quality testing of the renovated space in accordance with the recommended procedures of a "Green standards-setter" and for the purpose of mitigating indoor air quality deficiencies resulting from the repair or reconstruction of the "Covered Property".

As used here, additional expenses are limited to the additional cost incurred over and above the amount that we would have paid had no "Green" upgrades been involved with the loss.

In addition, we will not pay for any:

**(i)** Further modification if the "Covered Property" fails to obtain certification, recertification or a specific level of certification; or

**(ii)** Additional cost to repair or replace damaged property solely for the purpose of achieving points toward certification or recertification of the property by a "Green standards-setter".

Unless a different limit or INCLUDED is shown in the Declarations, the most we pay under this "Green" upgrades coverage is an amount equal to 25% of the total Property Damage loss otherwise recoverable, subject to a maximum limit of $100,000.

**b. Business Income And Extra Expense Or Extra Expense Only**

If you have coverage for "Business Income" and "Extra Expense" or "Extra Expense" only and the terms and conditions applicable to the "Business Income" and "Extra Expense" or "Extra Expense" only coverage are satisfied, then:

**(1)** If the remediation of the damaged "Covered Property" using "Green" upgrades prolongs the "Period of Restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "Period of Restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**(2)** If a Revised Number of Days is shown in the Declarations, the number of days (30) in Paragraph **b.(1)** is replaced by the number of days indicated in the Declarations.

**(3)** As used here, the prolonged "Period of Restoration" is limited to the additional days incurred over and above the amount needed had no "Green" upgrades been involved with the loss.

**c.** The coverage provided under this "Green" upgrades coverage:

**(1)** Does not increase any of the applicable Limits of Insurance;

**(2)** Applies despite the operation of the Ordinance Or Law Exclusion; and

**(3)** Does not reduce the coverage otherwise applicable for repair or replacement of "Covered Property" that qualified as "Green" prior to loss or damage, with comparable materials and products.

**D. Deductibles**

**1. Application Of Deductibles**

We will not pay for loss or damage resulting from any "One Breakdown" until the amount of covered loss or damage exceeds the deductible shown in the Declarations for each applicable coverage. We will then pay the amount of covered loss or damage in excess of the deductible, up to the applicable Limit of Insurance.

Deductibles apply separately for each applicable coverage except if:

**a.** A deductible is shown as COMBINED for any of the coverages in the Declarations, then we will first subtract the combined deductible amount from the aggregate amount of any loss to which the combined deductible applies; or

**b.** More than one "Covered Equipment" is involved in "One Breakdown", then only one deductible, the highest, shall apply for each of the applicable coverages.

**2. Determination Of Deductibles**

**a. Dollar Deductible**

If a dollar deductible is shown in the Declarations, we will first subtract the deductible amount from any loss we would otherwise pay.

**b. Time Deductible**

If a time deductible is shown in the Declarations, we will not be liable for any loss under that coverage that occurs during that specified time period immediately following a "Breakdown". If a time deductible is shown in days, each day shall mean 24 consecutive hours.

**c. Multiple Of Daily Value Deductible**

If a multiple of daily value is shown in the Declarations, this deductible will be calculated as follows:

**(1)** For the entire premises where the loss occurred, determine the total amount of "Business Income" that would have been earned during the "Period of Restoration" had no "Breakdown" taken place.

**(2)** Divide the result in Paragraph **(1)** by the number of days the business would have been open during the "Period of Restoration". The result is the daily value.

**(3)** Multiply the daily value in Paragraph **(2)** by the number of days shown in the Declarations. We will first subtract this deductible amount from any loss we would otherwise pay. We will then pay the amount of loss or damage in excess of the deductible, up to the applicable Limit of Insurance.

**d. Percentage Of Loss Deductible**

If a deductible is expressed as a percentage of loss in the Declarations, we will not be liable for the indicated percentage of gross amount of loss or damage (prior to the applicable deductible or coinsurance) insured under the applicable coverage.

**e. Minimum Or Maximum Deductibles**

**(1)** If:

**(a)** A minimum dollar amount deductible is shown in the Declarations; and

**(b)** The dollar amount of the Multiple of Daily Value or the Percentage of Loss Deductible is less than the Minimum Deductible;

then the Minimum Deductible amount shown in the Declarations will be the applicable deductible.

**(2)** If:

**(a)** A maximum dollar amount deductible is shown in the Declarations; and

**(b)** The dollar amount of the Multiple of Daily Value or the Percentage of Loss Deductible is greater than the Maximum Deductible;

then the Maximum Deductible amount shown in the Declarations will be the applicable deductible.

**E. Equipment Breakdown Protection Conditions**

The following conditions apply in addition to the Common Policy Conditions:

**1. Loss Conditions**

**a. Abandonment**

There can be no abandonment of any property to us.

© Insurance Services Office, Inc., 2011

**b. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that the selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Each party will:

**(1)** Pay its chosen appraiser; and

**(2)** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**c. Defense**

We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**d. Duties In The Event Of Loss Or Damage**

**(1)** You must see that the following are done in the event of loss or damage to "Covered Property":

**(a)** Give us a prompt notice of the loss or damage. Include a description of the property involved.

**(b)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(c)** Allow us a reasonable time and opportunity to examine the property and premises before repairs are undertaken or physical evidence of the "Breakdown" is removed. But you must take whatever measures are necessary to protect the property and premises from further damage.

**(d)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(e)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(f)** Cooperate with us in the investigation or settlement of the claim.

**(2)** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**e. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**f. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Part unless:

**(1)** There has been full compliance with all the terms of this Coverage Part; and

**(2)** The action is brought within two years after the date of the "Breakdown"; or

**(3)** We agree in writing that you have an obligation to pay for damage to "Covered Property" of others or until the amount of that obligation has been determined by final judgment or arbitration award. No one has the right under this policy to bring us into any action to determine your liability.

**g. Loss Payable Clause**

**(1)** We will pay you and the loss payee shown in the Declarations for loss due to a "Breakdown" to "Covered Equipment", as interests may appear. The insurance covers the interest of the loss payee unless the loss results from conversion, secretion or embezzlement on your part.

**(2)** We may cancel the policy as allowed by the Cancellation Condition. Cancellation ends this agreement as to the loss payee's interest. If we cancel, we will mail you and the loss payee the same advance notice.

**(3)** If we make any payment to the loss payee, we will obtain their rights against any other party.

**h. Other Insurance**

**(1)** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**(2)** If there is other insurance covering the same loss or damage, other than that described in Paragraph **(1)**, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**i. Privilege To Adjust With Owner**

In the event of loss or damage involving property of others in your care, custody or control, we have the right to settle the loss or damage with the owner of the property. A receipt for payment from the owner of that property will satisfy any claim of yours against us.

**j. Reducing Your Loss**

As soon as possible after a "Breakdown", you must:

**(1)** Resume business, partially or completely;

**(2)** Make up for lost business within a reasonable period of time. This reasonable period does not necessarily end when operations are resumed; and

**(3)** Make use of every reasonable means to reduce or avert loss, including:

**(a)** Working extra time or overtime at the premises or at another premises you own or acquire to carry on the same operations;

**(b)** Utilizing the property and/or services of other concerns;

**(c)** Using merchandise or other property, such as surplus machinery, duplicate parts, equipment, supplies and surplus or reserve stock you own, control or can obtain; or

**(d)** Salvaging the damaged "Covered Property".

**k. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment.

That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**(1)** Prior to a loss to your "Covered Property" or covered income.

**(2)** After a loss to your "Covered Property" or covered income only if, at time of loss, that party is one of the following:

**(a)** Someone insured by this insurance;

**(b)** A business firm:

**(i)** Owned or controlled by you; or

**(ii)** That owns or controls you; or

**(c)** Your tenant.

This will not restrict your insurance.

**l. Valuation**

**(1)** We will determine the value of "Covered Property" in the event of loss or damage as follows:

**(a)** The cost to repair, rebuild or replace the damaged property with property of the same kind, capacity, size or quality on the same site or another site, whichever is the less costly; or

**(b)** The cost actually and necessarily expended in repairing, rebuilding or replacing on the same site or another site, whichever is the less costly;

except we will not pay for such damaged property that is obsolete and useless to you.

**(2)** If you elect or we require that the repair or replacement of the damaged "Covered Equipment" be done in a manner that enhances safety while maintaining the existing function, then we will pay, subject to the limit of insurance, up to an additional 25% of the property damage amount for the "Covered Equipment" otherwise recoverable.

 © Insurance Services Office, Inc., 2011

**(3)** If:

**(a)** Any damaged "Covered Property" is protected by an extended warranty, or maintenance or service contract; and

**(b)** That warranty or contract becomes void or unusable due to a "Breakdown";

we will reimburse you for the unused costs of nonrefundable, nontransferable warranties or contracts.

**(4)** Unless we agree otherwise in writing, if you do not repair or replace the damaged property within 24 months following the date of the "Breakdown", then we will pay only the smaller of:

**(a)** Cost it would have taken to repair or replace; or

**(b)** Actual cash value at the time of the "Breakdown".

**(5)** If all of the following conditions are met, property held by you for sale will be valued at the selling price as if no loss or damage had occurred, less any discounts you offered and expenses you otherwise would have had:

**(a)** The property was manufactured by you;

**(b)** The selling price of the property is more than the replacement cost of the property; and

**(c)** You are unable to replace the property before its anticipated sale.

**(6)** We will pay for loss to damaged "Data" or "Media" as follows:

**(a)** Replacement cost for "Data" or "Media" that are mass produced and commercially available; and

**(b)** The cost you actually spend to reproduce the records on blank material for all other "Data" or "Media", including the cost of gathering or assembling information for such reproduction.

However, we will not pay for "Data" or "Media" that we determine are not or cannot be replaced with "Data" or "Media" of like kind and quality or property of similar functional use.

**(7)** We will determine the value of "Covered Property" under Spoilage Damage Coverage as follows:

**(a)** For raw materials, the replacement cost;

**(b)** For property in process, the replacement cost of the raw materials, the labor expended and the proper proportion of overhead charges; and

**(c)** For finished products, the selling price, as if no loss or damage had occurred, less any discounts you offered and expenses you otherwise would have had.

**(8)** Any salvage value of property obtained for temporary repairs or use following a "Breakdown" which remains after repairs are completed will be taken into consideration in the adjustment of any loss.

**m.** The following additional conditions apply to the "Business Income" and "Extra Expense" Coverage:

**(1) Annual Reports**

You must complete an Annual Report of Values form approved by us once each year. Your reports must reach us within three months of the annual report date shown in the Declarations and each anniversary of that date.

**(2) Adjustment Of Premium**

Upon receipt of the annual reports of values you furnish us, we will determine the amount of premium we earned for the past year. If the amount determined is more than the premium we have already charged for this coverage, you must pay the difference. If the amount determined is less than the premium we originally charged, we will refund the difference. However, the amount we return will not exceed 75% of the premium we originally charged.

**(3) Coinsurance**

This Coinsurance Condition applies only if we did not receive your Annual Report of Values form within three months of the due date as outlined in Paragraph **(1)**.

© Insurance Services Office, Inc., 2011

**(a)** We will not pay the full amount of any loss if:

    **(i)** The "Business Income Actual Annual Value" at the time of loss is greater than the "Business Income Estimated Annual Value" shown in your latest report; or

    **(ii)** Your report was received by us more than three months after the due date, or your report is overdue.

**(b)** Instead, we will determine the most we will pay using the following steps:

    **(i)** Divide the "Business Income Estimated Annual Value" by the "Business Income Actual Annual Value" at the time of the "Breakdown";

    **(ii)** Multiply the total amount of the covered loss of "Business Income" by the figure determined in Step **(i);** and

    **(iii)** Subtract any applicable deductible from the amount determined in Step **(ii).**

    We will pay the amount determined in Step **(iii)** or the "Business Income" and "Extra Expense" limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

If coverage is provided for more than one premises, then this Coinsurance Condition applies separately to each premises.

## 2. General Conditions

### a. Additional Insured

If a person or organization is designated in this Coverage Part as an additional insured, we will consider them to be an insured under this Coverage Part to the extent of their interest.

### b. Bankruptcy

The bankruptcy or insolvency of you or your estate will not relieve us of our obligation under this Coverage Part.

### c. Concealment, Misrepresentation Or Fraud

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact by you or any other insured, at any time, concerning:

**(1)** This Coverage Part;

**(2)** The "Covered Property";

**(3)** Your interest in the "Covered Property"; or

**(4)** A claim under this Coverage Part.

### d. Liberalization

If we adopt any standard form revision for general use that would broaden coverage in this Coverage Part without additional premium, the broadened coverage will immediately apply to this Coverage Part if the revision is effective within 45 days prior to or during the policy period.

### e. Mortgageholder

**(1)** The term mortgageholder includes trustee.

**(2)** We will pay for direct damage to "Covered Property" due to a "Breakdown" to "Covered Equipment" to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**(3)** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the "Covered Property".

**(4)** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

    **(a)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

    **(b)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(c)** Has notified us of any change in ownership or material change in risk known to the mortgageholder.

    All of the terms of this Coverage Part will then apply directly to the mortgageholder.

© Insurance Services Office, Inc., 2011

**(5)** If we pay the mortgageholder for any loss and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

    **(a)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

    **(b)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**(6)** If we cancel this policy, we will give written notice to the mortgageholder at least:

    **(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **(b)** 30 days before the effective date of cancellation if we cancel for any other reason.

**(7)** If we do not renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**(8)** If we suspend coverage, it will also be suspended as respects the mortgageholder. We will give written notice of the suspension to the mortgageholder.

**f. No Benefit To Bailee**

No person or organization, other than you, having custody of "Covered Property" will benefit from this insurance.

**g. Policy Period, Coverage Territory**

Under this Coverage Part:

**(1)** We cover loss or damage commencing:

    **(a)** During the policy period shown in the Declarations; and

    **(b)** Within the coverage territory.

**(2)** The coverage territory is:

    **(a)** The United States of America (including its territories and possessions);

    **(b)** Puerto Rico; and

    **(c)** Canada.

**h. Premium And Adjustments**

You shall report to us 100% of the total insurable values at each premises every year as of the anniversary date. The values shall be reported separately for each of the coverages provided. Premium for each anniversary will be promulgated for the ensuing period on the basis of rates in effect at the anniversary date and for all values at risk.

You agree to keep the applicable records for each policy year available for inspection by our representatives at all times during business hours, during the respective policy year, and for a period of 12 months after the end of the respective policy year or after cancellation of this Coverage Part.

**i. Suspension**

Whenever "Covered Equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from a "Breakdown" to that "Covered Equipment". This can be done by delivering or mailing a written notice of suspension to:

**(1)** Your last known address; or

**(2)** The address where the "Covered Equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "Covered Equipment".

If we suspend your insurance, you will get a pro rata refund of premium for that "Covered Equipment". But the suspension will be effective even if we have not yet made or offered a refund.

**3. Joint Or Disputed Loss Agreement**

**a.** This condition is intended to facilitate payment of insurance proceeds when:

**(1)** Both a commercial property policy and this equipment breakdown protection policy are in effect;

**(2)** Damage occurs to "Covered Property" that is insured by the commercial property policy and this equipment breakdown protection policy; and

**(3)** There is disagreement between the insurers as to whether there is coverage or as to the amount of the loss to be paid, if any, by each insurer under its own policies.

**b.** This condition does not apply if:

   **(1)** Both the commercial property insurer(s) and we do not admit to any liability; and

   **(2)** Neither the commercial property insurer(s) nor we contend that coverage applies under the other insurer's policy.

**c.** The provisions of this condition apply only if all of the following requirements are met:

   **(1)** The commercial property policy carried by the Named Insured, insuring the "Covered Property", contains a similar provision at the time of the loss or damage, with substantially the same requirements, procedures and conditions as contained in this condition;

   **(2)** The damage to the "Covered Property" was caused by a loss for which:

     **(a)** Both the commercial property insurer(s) and we admit to some liability for payment under the respective policies; or

     **(b)** Either:

       **(i)** The commercial property insurer(s) does not admit to any liability for payment, while we contend that:

         **i.** All liability exists under the commercial property policy; or

         **ii.** Some liability exists under both the commercial property policy and this equipment breakdown protection policy;

       **(ii)** We do not admit to any liability for payment, while the commercial property insurer(s) contends that:

         **i.** All liability exists under this equipment breakdown protection coverage policy; or

         **ii.** Some liability exists under both the commercial property policy and this equipment breakdown protection policy; or

       **(iii)** Both the commercial property insurer(s) and we:

         **i.** Do not admit to any liability for payment; and

         **ii.** Contend that some or all liability exists under the other insurer's policy; and

     **(c)** The total amount of the loss is agreed to by you, the commercial property insurer(s) and us.

**d.** If the requirements listed in Paragraph **c.** above are satisfied, we and the commercial property insurer(s) will make payments to the extent, and in the manner, described as follows:

   **(1)** We will pay, after your written request, the entire amount of loss that we have agreed as being covered, if any, by this equipment breakdown protection policy and one-half (1/2) the amount of the loss that is in disagreement.

   **(2)** The commercial property insurer(s) will pay, after your written request, the entire amount of loss that they have agreed as being covered, if any, by the commercial property policy and one-half (1/2) the amount of loss that is in disagreement.

   **(3)** Payments by the insurers of the amounts that are in disagreement, as described in Paragraphs **(1)** and **(2),** do not alter, waive or surrender any rights of any insurer against any other with regard to the portion of the loss for which each insurer is liable.

   **(4)** The amount in disagreement to be paid by us under this condition shall not exceed the amount payable under the equivalent Loss Agreement(s) of the commercial property policy.

   **(5)** The amount to be paid under this condition shall not exceed the amount we would have paid had no commercial property policy been in effect at the time of loss. In no event will we pay more than the applicable Limit Of Insurance shown in the Declarations.

   **(6)** Acceptance by you of sums paid under this condition does not alter, waive or surrender any other rights against us.

**e. Arbitration**

   **(1)** If the circumstances described in Paragraph **c.(2)(a)** exist and the commercial property insurer(s) and we agree to submit our differences to arbitration, the commercial property insurer(s) and we will determine the amount each will pay and will pay the insured within 90 days. Arbitration will then take place within 90 days after payment of the loss under the terms of this condition.

 © Insurance Services Office, Inc., 2011 EB 00 20 01 13

**(2)** If any of the circumstances described in Paragraph **c.(2)(b)** exist, then the commercial property insurer(s) and we agree to submit our differences to arbitration within 90 days after payment of the loss under the terms of this condition.

**(3)** You agree to cooperate with any arbitration procedures. There will be three arbitrators: one will be appointed by us, and another will be appointed by the commercial property insurer(s). The two arbitrators will select a third arbitrator. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. A decision agreed to by two of the three arbitrators will be binding on both parties. Judgment on any award can be entered in any court that has jurisdiction.

**f. Final Settlement Between Insurers**

The insurer(s) found responsible for the greater percentage of the ultimate loss must return the excess contribution to the other insurer(s). In addition, the insurer(s) found responsible for the greater portion of the loss must pay Liquidated Damages to the other insurer(s) on the amount of the excess contribution of the other insurer(s). Liquidated Damages are defined as interest from the date the insured invokes this Agreement to the date the insurer(s) that contributed the excess amount is reimbursed. The interest is calculated at 1.5 times the highest prime rate from the Money Rates column of the Wall Street Journal during the period of the Liquidated Damages. Arbitration expenses are not a part of the excess contribution for which Liquidated Damages are calculated. Arbitration expenses will be apportioned between insurers on the same basis that the ultimate loss is apportioned.

**F. Definitions**

**1.** "Breakdown":

**a.** Means the following direct physical loss that causes damage to "Covered Equipment" and necessitates its repair or replacement:

**(1)** Failure of pressure or vacuum equipment;

**(2)** Mechanical failure including rupture or bursting caused by centrifugal force; or

**(3)** Electrical failure including arcing;

unless such loss or damage is otherwise excluded within this Coverage Form.

**b.** Does not mean or include:

**(1)** Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

**(2)** Defects, erasures, errors, limitations or viruses in computer equipment and programs including the inability to recognize and process any date or time or provide instructions to "Covered Equipment";

**(3)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(4)** Damage to any vacuum tube, gas tube, or brush;

**(5)** Damage to any structure or foundation supporting the "Covered Equipment" or any of its parts;

**(6)** The functioning of any safety or protective device; or

**(7)** The cracking of any part on an internal combustion gas turbine exposed to the products of combustion.

**2.** "Business Income" means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

**3.** "Business Income Actual Annual Value" means the sum of the Net Income and continuing normal operating expenses incurred, including payroll that would have been earned had the "Breakdown" not occurred.

**4.** "Business Income Estimated Annual Value" means the sum of the Net Income and continuing normal operating expenses incurred, including payroll as estimated by you in the most recent Annual Report of Values form on file with us.

**5.** "Computer Equipment" means:

**a.** Your programmable electronic equipment that is used to store, retrieve and process data; and

**b.** Associated peripheral equipment that provides communication including input and output functions such as printing or auxiliary functions such as data transmission.

It does not include "Data" or "Media".

6. "Covered Equipment":

   **a.** Means and includes any:

     **(1)** Equipment built to operate under internal pressure or vacuum other than weight of contents;

     **(2)** Electrical or mechanical equipment that is used in the generation, transmission or utilization of energy;

     **(3)** Communication equipment and "Computer Equipment"; and

     **(4)** Equipment in Paragraphs **(1)**, **(2)** and **(3)** that is owned by a public or private utility and used solely to supply utility services to your premises.

     However, if Coverage **A.2.e.** Utility Interruption is provided, then Paragraph **6.a.(4)** does not apply.

     Except for Paragraph **6.a.(4)**, Utility Interruption and Contingent "Business Income" and "Extra Expense" or "Extra Expense" only coverages, the "Covered Equipment" must be located at a premises described in the Declarations and be owned, leased or operated under your control.

   **b.** Does not mean or include any:

     **(1)** "Media";

     **(2)** Part of pressure or vacuum equipment that is not under internal pressure of its contents or internal vacuum;

     **(3)** Insulating or refractory material, but not excluding the glass lining of any "Covered Equipment";

     **(4)** Nonmetallic pressure or vacuum equipment, unless it is constructed and used in accordance with the American Society of Mechanical Engineers (A.S.M.E.) code or another appropriate and approved code;

     **(5)** Catalyst;

     **(6)** Vessels, piping and other equipment that is buried belowground and requires the excavation of materials to inspect, remove, repair or replace;

     **(7)** Structure, foundation, cabinet or compartment supporting or containing the "Covered Equipment" or part of the "Covered Equipment" including penstock, draft tube or well casing;

     **(8)** Vehicle, aircraft, self-propelled equipment or floating vessel including any "Covered Equipment" that is mounted upon or used solely with any one or more vehicle(s), aircraft, self-propelled equipment or floating vessel;

     **(9)** Dragline, excavation or construction equipment including any "Covered Equipment" that is mounted upon or used solely with any one or more dragline(s), excavation or construction equipment;

    **(10)** Felt, wire, screen, die, extrusion plate, swing hammer, grinding disc, cutting blade, nonelectrical cable, chain, belt, rope, clutch plate, brake pad, nonmetal part or any part or tool subject to periodic replacement;

    **(11)** Machine or apparatus used solely for research, diagnosis, medication, surgical, therapeutic, dental or pathological purposes including any "Covered Equipment" that is mounted upon or used solely with any one or more machine(s) or apparatus unless Diagnostic Equipment is shown as INCLUDED in the Declarations; or

    **(12)** Equipment or any part of such equipment manufactured by you for sale.

7. "Covered Property" means any property that:

   **a.** You own; or

   **b.** Is in your care, custody or control and for which you are legally liable.

8. "Data" means:

   **a.** Programmed and recorded material stored on "Media"; and

   **b.** Programming records used for electronic data processing, or electronically controlled equipment.

9. "Extra Expense" means the additional cost you incur to operate your business during the "Period of Restoration" over and above the cost that you normally would have incurred to operate the business during the same period had no "Breakdown" occurred.

10. "Fungus" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi.

 © Insurance Services Office, Inc., 2011 EB 00 20 01 13

11. "Green" means enhanced energy efficiency or use of environmentally-preferable, sustainable materials, products or methods in design, construction, manufacture or operation, as recognized by a "Green standards-setter".

12. "Green standards-setter" means an organization or governmental agency which produces and maintains guidelines related to "Green" products and practices. "Green standards-setters" include but are not limited to:

   a. The Leadership in Energy and Environmental Design (LEED®) program of the U.S. Green Building Council;

   b. ENERGY STAR, a joint program of the U.S. Environmental Protection Agency and the U.S. Department of Energy; and

   c. Green Globes™, a program of the Green Building Initiative.

13. "Hazardous Substance" means any substance other than ammonia that has been declared to be hazardous to health by a government agency.

14. "Media" means electronic data processing or storage media such as films, tapes, discs, drums or cells.

15. "One Breakdown" means if an initial "Breakdown" causes other "Breakdowns", all will be considered "One Breakdown". All "Breakdowns" at any one premises that manifest themselves at the same time and are the direct result of the same cause will be considered "One Breakdown".

16. "Period of Restoration" means the period of time that:

   a. Begins at the time of the "Breakdown" or 24 hours before we receive notice of "Breakdown", whichever is later; and

   b. Ends five consecutive days after the date when the damaged property at the premises described in the Declarations is repaired or replaced with reasonable speed and similar quality.

17. "Stock" means merchandise held in storage or for sale, raw materials, property in process or finished products including supplies used in their packing or shipping.

POLICY NUMBER:

**COMMERCIAL PROPERTY
CP 04 05 10 12**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ORDINANCE OR LAW COVERAGE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
STANDARD PROPERTY POLICY

**SCHEDULE**

| Building Number/ Premises Number | Coverage A | Coverage B Limit Of Insurance | Coverage C Limit Of Insurance | Coverage B And C Combined Limit Of Insurance |
|---|---|---|---|---|
| / | ☐ | $ | $ | $ * |
| / | ☐ | $ | $ | $ * |
| / | ☐ | $ | $ | $ * |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

*Do **not** enter a Blanket Limit of Insurance if individual Limits of Insurance are selected for Coverages **B** and **C**, or if one of these Coverages is not applicable.

**A.** Each Coverage – Coverage **A,** Coverage **B** and Coverage **C** – is provided under this endorsement only if that Coverage(s) is chosen by entry in the above Schedule and then only with respect to the building identified for that Coverage(s) in the Schedule.

**B. Application Of Coverage(s)**

The Coverage(s) provided by this endorsement applies only if both **B.1.** and **B.2.** are satisfied and are then subject to the qualifications set forth in **B.3.**

1. The ordinance or law:

   **a.** Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

   **b.** Is in force at the time of loss.

   But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

**2.a.** The building sustains direct physical damage that is covered under this policy and as a result of such damage, you are required to comply with the ordinance or law; or

**b.** The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and as a result of the building damage in its entirety, you are required to comply with the ordinance or law.

**c.** But if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this endorsement even if the building has also sustained covered direct physical damage.

**3.** In the situation described in **B.2.b.** above, we will not pay the full amount of loss otherwise payable under the terms of Coverages **A, B,** and/or **C** of this endorsement. Instead, we will pay a proportion of such loss, meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

(Section **H.** of this endorsement provides an example of this procedure.)

However, if the covered direct physical damage, alone, would have resulted in a requirement to comply with the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Coverages **A, B** and/or **C** of this endorsement.

**C.** We will not pay under Coverage **A, B** or **C** of this endorsement for:

**1.** Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**2.** The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**D. Coverage**

**1. Coverage A – Coverage For Loss To The Undamaged Portion Of The Building**

With respect to the building that has sustained covered direct physical damage, we will pay under Coverage **A** for the loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires demolition of undamaged parts of the same building.

Coverage **A** is included within the Limit Of Insurance shown in the Declarations as applicable to the covered building. Coverage **A** does not increase the Limit of Insurance.

**2. Coverage B – Demolition Cost Coverage**

With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged property.

The Coinsurance Additional Condition does not apply to Demolition Cost Coverage.

**3. Coverage C – Increased Cost Of Construction Coverage**

**a.** With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

**(1)** Repair or reconstruct damaged portions of that building; and/or

**(2)** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

However:

**(1)** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

**(2)** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

The Coinsurance Additional Condition does not apply to Increased Cost of Construction Coverage.

**b.** When a building is damaged or destroyed and Coverage **C** applies to that building in accordance with **3.a.** above, coverage for the increased cost of construction also applies to repair or reconstruction of the following, subject to the same conditions stated in **3.a.:**

**(1)** The cost of excavations, grading, backfilling and filling;

(2) Foundation of the building;

(3) Pilings; and

(4) Underground pipes, flues and drains.

The items listed in **b.(1)** through **b.(4)** above are deleted from Property Not Covered, but only with respect to the coverage described in this provision, **3.b.**

## E. Loss Payment

1. All following loss payment provisions, **E.2.** through **E.5.,** are subject to the apportionment procedures set forth in Section **B.3.** of this endorsement.

2. When there is a loss in value of an undamaged portion of a building to which Coverage **A** applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

   a. If the Replacement Cost Coverage Option applies and the property is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

      (1) The amount you would actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

      (2) The Limit Of Insurance shown in the Declarations as applicable to the covered building.

   b. If the Replacement Cost Coverage Option applies and the property is **not** repaired or replaced, or if the Replacement Cost Coverage Option does **not** apply, we will not pay more than the lesser of:

      (1) The actual cash value of the building at the time of loss; or

      (2) The Limit Of Insurance shown in the Declarations as applicable to the covered building.

3. Unless Paragraph **E.5.** applies, loss payment under Coverage **B** – Demolition Cost Coverage will be determined as follows:

   We will not pay more than the lesser of the following:

   a. The amount you actually spend to demolish and clear the site of the described premises; or

   b. The applicable Limit Of Insurance shown for Coverage **B** in the Schedule above.

4. Unless Paragraph **E.5.** applies, loss payment under Coverage **C** – Increased Cost Of Construction Coverage will be determined as follows:

   a. We will not pay under Coverage **C**:

      (1) Until the property is actually repaired or replaced, at the same or another premises; and

      (2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

   b. If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage **C** is the lesser of:

      (1) The increased cost of construction at the same premises; or

      (2) The applicable Limit Of Insurance shown for Coverage **C** in the Schedule above.

   c. If the ordinance or law requires relocation to another premises, the most we will pay under Coverage **C** is the lesser of:

      (1) The increased cost of construction at the new premises; or

      (2) The applicable Limit Of Insurance shown for Coverage **C** in the Schedule above.

5. If a Combined Limit Of Insurance is shown for Coverages **B** and **C** in the Schedule above, Paragraphs **E.3.** and **E.4.** of this endorsement do not apply with respect to the building that is subject to the Combined Limit, and the following loss payment provisions apply instead:

   The most we will pay, for the total of all covered losses for Demolition Cost and Increased Cost of Construction, is the Combined Limit Of Insurance shown for Coverages **B** and **C** in the Schedule above. Subject to this Combined Limit of Insurance, the following loss payment provisions apply:

   a. For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

 © Insurance Services Office, Inc., 2011

**b.** With respect to the Increased Cost of Construction:

**(1)** We will not pay for the increased cost of construction:

   **(a)** Until the property is actually repaired or replaced, at the same or another premises; and

   **(b)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(2)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

**(3)** If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

**F.** The terms of this endorsement apply separately to each building to which this endorsement applies.

**G.** Under this endorsement we will not pay for loss due to any ordinance or law that:

**1.** You were required to comply with before the loss, even if the building was undamaged; and

**2.** You failed to comply with.

**H.** Example of proportionate loss payment for Ordinance Or Law Coverage Losses (procedure as set forth in Section **B.3.** of this endorsement).

Assume:

- Wind is a Covered Cause of Loss; Flood is an excluded Cause of Loss
- The building has a value of $200,000
- Total direct physical damage to building: $100,000
- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value
- Portion of direct physical damage that is covered (caused by wind): $30,000
- Portion of direct physical damage that is not covered (caused by flood): $70,000
- Loss under Ordinance Or Law Coverage **C** of this endorsement: $60,000

**Step 1:** Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 \div \$100,000 = .30$

**Step 2:** Apply that proportion to the Ordinance or Law loss.

$60,000 \times .30 = \$18,000$

In this example, the most we will pay under this endorsement for the Coverage **C** loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

**Note:** The same procedure applies to losses under Coverages **A** and **B** of this endorsement.

**I.** The following definition is added:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**API Commercial General Liability Policy Forms**

 American Property Insurance Company

# COMMERCIAL GENERAL LIABILITY FORMS

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

  **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

  **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

  **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

  **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

  **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

  **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

  **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

  **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

    However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

  **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

    **(1)** On premises you own or rent;

    **(2)** On ways next to premises you own or rent; or

    **(3)** Because of your operations;

    provided that:

      **(a)** The accident takes place in the "coverage territory" and during the policy period;

      **(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

      **(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

  **b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

    **(1)** First aid administered at the time of an accident;

    **(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

    **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

  **a. Any Insured**

    To any insured, except "volunteer workers".

  **b. Hired Person**

    To a person hired to do work for or on behalf of any insured or a tenant of any insured.

  **c. Injury On Normally Occupied Premises**

    To a person injured on that part of premises you own or rent that the person normally occupies.

  **d. Workers' Compensation And Similar Laws**

    To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

  **e. Athletics Activities**

    To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

  **f. Products-Completed Operations Hazard**

    Included within the "products-completed operations hazard".

  **g. Coverage A Exclusions**

    Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

  **a.** All expenses we incur.

  **b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

  **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

  **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

  **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

  **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CHANGES IN GENERAL LIABILITY FORMS FOR COMMERCIAL PACKAGE POLICIES

This endorsement modifies insurances provided under the following:

> COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE
> COMPREHENSIVE GENERAL LIABILITY INSURANCE
> CONTRACTUAL LIABILITY INSURANCE
> DRUGGISTS LIABILITY INSURANCE
> ELEVATOR COLLISION INSURANCE
> MANUFACTURERS AND CONTRACTORS LIABILITY INSURANCE
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY INSURANCE
> OWNERS, LANDLORDS AND TENANTS LIABILITY INSURANCE
> PREMISES MEDICAL PAYMENTS INSURANCE
> SPECIAL MULTI-PERIL POLICY LIABILITY INSURANCE
> STOREKEEPERS INSURANCE

**A.** Whenever the term "policy" is used in any form listed above or in the declarations or any related endorsement, it is changed to "coverage part."

**B.** The Common Policy Declarations (other than any references to premiums) and the Common Policy Conditions do not apply).

**C.** With respect to the Special Multi-Peril Policy Conditions and Definitions Form attached to this policy:

**1.** The General Conditions, Conditions Applicable to Section II and Definitions Applicable to Section II apply only to the Commercial General Liability Coverage Part;

**2.** The Conditions Applicable to Section I do not apply to any part of this policy; and

**3.** The Cancellation condition is replaced by the following:

Cancellation. This policy may be cancelled by the "named insured" by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the "named insured" at the address shown in this policy, written notice stating when not less than thirty days thereafter such cancellation shall be effective; provided that in the event of non-payment of premium, such notice shall state when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the "named insured" or by the company shall be equivalent to mailing.

If the "named insured" cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

COMMERCIAL GENERAL LIABILITY
CG 21 32 05 09

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

    **2. Exclusions**

        This insurance does not apply to:

        **Communicable Disease**

        "Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

        This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

        **a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

        **b.** Testing for a communicable disease;

        **c.** Failure to prevent the spread of the disease; or

        **d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

    **2. Exclusions**

        This insurance does not apply to:

        **Communicable Disease**

        "Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

        This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

        **a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

        **b.** Testing for a communicable disease;

        **c.** Failure to prevent the spread of the disease; or

        **d.** Failure to report the disease to authorities.

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

   © Insurance Services Office, Inc., 2014

COMMERCIAL GENERAL LIABILITY
CG 02 20 03 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART PRODUCT WITHDRAWAL
COVERAGE PART PRODUCTS/COMPLETED OPERATIONS LIABILITY
COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect**

**a. For 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with the underwriting requirements established by the insurer.

**b. For More Than 90 Days**

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The policy was obtained by a material misstatement;

**(3)** Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

**(4)** A substantial change in the risk covered by the policy; or

**(5)** The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph **2.b.**

**B.** Paragraph **3.** of the **Cancellation** Common Policy Condition is replaced by the following:

**3.** We will mail or deliver our notice to the first Named Insured at the last mailing address known to us.

© Insurance Services Office, Inc., 2011

**C.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

**D.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

**1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of                                                    notice.

                    © Insurance Services Office, Inc., 2011                    **CG 02 20 03 12**

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

API1016CYBR

# CYBER LIABILITY INSURANCE
## (Claims-Made and Reported Coverage)

POLICY NUMBER:   *(See Declarations)*

ENDORSEMENT EFFECTIVE DATE:   *(Policy Inception unless otherwise indicated on Declarations)*

RETROACTIVE DATE:   *(Policy Inception unless otherwise indicated on Declarations)*

### SCHEDULE OF LIMITS

| Coverage | Limits |
|---|---|
| Multimedia Liability Coverage | $25,000 each **claim**/aggregate |
| Security and Privacy Liability Coverage | $25,000 each **claim**/aggregate |
| Privacy Regulatory Defense and Penalties Coverage | $25,000 each **claim**/aggregate |
| PCI DSS Assessment Coverage | $25,000 each **claim**/aggregate |
| Privacy Breach Response Costs, Notification Expenses and Breach Support and Credit Monitoring Expenses Coverage | $25,000 each **claim**/aggregate |
|    Proactive Privacy Breach Responses Costs Sublimit | $25,000 each **claim**/aggregate |
|    Voluntary Notification Expenses Sublimit | $25,000 each **claim**/aggregate |
| Network Asset Protection Coverage | $25,000 each **claim**/aggregate |
| Cyber Extortion Coverage | $25,000 each **claim**/aggregate |
| Cyber Terrorism Coverage | $25,000 each **claim**/aggregate |
| BrandGuard Coverage | $25,000 each **claim**/aggregate |
| Annual Aggregate Limit | $25,000 each **claim**/aggregate |

This Endorsement ("Endorsement") amends **your** policy to provide Cyber Liability insurance on a Claims-Made and Reported basis. Read the entire Endorsement carefully to determine **your** rights and duties and what is and is not covered. The terms, conditions, exclusions, and limits of insurance set forth in this Endorsement apply only to the coverage provided by this Endorsement.

All words and phrases in this Endorsement that appear in bold print have the meanings set forth in Section V of this Endorsement.  To the extent any words or phrases used in this Endorsement are also defined elsewhere in the Policy, such definitions do not apply give meaning to the words or phrases used in this Endorsement.

The Cyber Liability limits of insurance are specified in the Schedule of Limits ("Schedule") above. Such limits of insurance are in addition to, and will not erode, the limits of insurance provided elsewhere under **your** Policy. **Defense costs** paid under this Endorsement will erode the limits set forth in the Schedule.

**SECTION I – COVERAGE AGREEMENTS**

**A.      MULTIMEDIA LIABILITY COVERAGE**

Subject to the limits shown in the Schedule, the Company will pay **damages**, including liability **assumed under contract**, which an **insured** becomes legally obligated to pay, and related **defense costs**, because of a **claim** for a **multimedia peril**, provided that:

**(1)**      Such **claim** is first made against the **insured** during the **endorsement period**;
**(2)**      Such **claim** is reported to the Company no later than sixty (60) days after the **claim** is first made against the **insured**; and
**(3)**      The **multimedia peril** takes place or first commences on or after the **retroactive date**.

**B.      SECURITY AND PRIVACY LIABILITY COVERAGE**

Subject to the limits shown in the Schedule, the Company will pay **damages**, including liability **assumed under contract**, which an **insured** becomes legally obligated to pay, and related **defense costs**, because of a **claim** for a **security and privacy wrongful act**, provided that:

**(1)**      Such **claim** is first made against the **insured** during the **endorsement period**;
**(2)**      Such **claim** is reported to the Company no later than sixty (60) days after the **claim** is first made against the **insured**; and
**(3)**      The **security and privacy wrongful act** takes place or first commences on or after the **retroactive date**.

**C.      PRIVACY REGULATORY DEFENSE AND PENALTIES COVERAGE**

Subject to the limits shown in the Schedule, the Company will pay **regulatory fines and penalties** and **regulatory compensatory awards** which an **insured** becomes legally obligated to pay, and related **defense costs**, because of a **claim** for a **security breach** or **privacy breach**, provided that:

**(1)**      Such **claim** is first made against the **insured** during the **endorsement period**;
**(2)**      Such **claim** is reported to the Company no later than sixty (60) days after the **claim** is first made against the **insured**; and
**(3)**      The **security breach** or **privacy breach** takes place or first commences on or after the **retroactive date**.

**D.      PCI DSS ASSESSMENT COVERAGE**

Subject to the limits shown in the Schedule, the Company will pay **PCI DSS assessments** which an **insured** becomes legally obligated to pay, and related **defense costs**, because of a **claim** for a **security breach** or **privacy breach**, provided that:

**(1)**      Such **claim** is first made against the **insured** during the **endorsement period**;
**(2)**      Such **claim** is reported to the Company no later than sixty (60) days after the **claim** is first made against the **insured**; and
**(3)**      The **security breach** or **privacy breach** takes places or first commences on or after the **retroactive date**.

**E.      PRIVACY BREACH RESPONSE COSTS, NOTIFICATION EXPENSES, AND BREACH SUPPORT AND CREDIT MONITORING EXPENSES COVERAGE**

Subject to the limits shown in the Schedule, the Company will pay reasonable and necessary **privacy breach response costs**, **notification expenses**, and **breach support and credit monitoring expenses** which **you** incur as a direct result of an **adverse media report**, **security breach** or **privacy breach**, provided that:

**(1)**      The **adverse media report**, **security breach** or **privacy breach** takes place or first commences on or after the **retroactive date**;
**(2)**      An **insured** first discovers the **adverse media report**, **security breach** or **privacy breach** during the **endorsement period**; and
**(3)**      **You** report the **adverse media report**, **security breach** or **privacy breach** to the Company no later than sixty (60) days from the date an **insured** first discovers the **adverse media report**, **security breach** or **privacy breach**.

API1016CYBR

**F.     NETWORK ASSET PROTECTION COVERAGE**

**(1)     Data Recovery**

Subject to the limits shown in the Schedule, the Company agrees to pay **digital assets loss** and **special expenses** which **you** incur as a direct result of a **covered cause of loss** that causes damage, alteration, corruption, distortion, theft, misuse or destruction of **your digital assets**, provided that:

**(a)**     The **covered cause of loss** takes place or first commences on or after the **retroactive date**;
**(b)**     An **insured** first discovers the **covered cause of loss** during the **endorsement period**;
**(c)**     **You** report the **covered cause of loss** to the Company no later than sixty (60) days from the date an **insured** first discovers the **covered cause of loss**; and
**(d)**     **You** provide clear evidence that the **digital assets loss** and **special expenses** directly resulted from the **covered cause of loss**.

The Company will pay **digital assets loss** and **special expenses** for a period of up to twelve (12) months following the discovery of the damage to, or alteration, corruption, distortion, theft, misuse or destruction of, **your digital assets**.

**(2)     Non-Physical Business Interruption and Extra Expense**

Subject to the limits shown in the Schedule, the Company agrees to pay **income loss**, **interruption expenses** and **special expenses** which **you** incur during the **period of restoration**, but after the **waiting period**, as a direct result of a **covered cause of loss** that causes a total or partial interruption, degradation in service or failure of an **insured computer system**, provided that:

**(a)**     The **covered cause of loss** takes place or first commences on or after the **retroactive date**;
**(b)**     An **insured** first discovers the **covered cause of loss** during the **endorsement period**;
**(c)**     **You** report the **covered cause of loss** to the Company no later than sixty (60) days from the date an **insured** first discovers the **covered cause of loss**; and
**(d)**     **You** provide clear evidence that the **digital assets loss** and **special expenses** directly resulted from the **covered cause of loss**.

**G.     CYBER EXTORTION COVERAGE**

Subject to the limits shown in the Schedule, the Company agrees to pay **cyber extortion expenses** and **cyber extortion monies** which **you** incur as a direct result of a **cyber extortion threat**, provided that:

**(1)**     Such **cyber extortion threat** is first made against an **insured** during the **endorsement period**;
**(2)**     **You** report the **cyber extortion threat** to the Company no later than sixty (60) days from the date the **cyber extortion threat** is made against an **insured**; and
**(3)**     **You** provide clear evidence that the **cyber extortion expenses** and **cyber extortion monies**       directly resulted from the **cyber extortion threat**.

The **insured** shall not incur **cyber extortion expenses** or **cyber extortion monies** without the Company's prior consultation and written authorization.  **You** must make every reasonable effort to notify local law enforcement authorities and the Federal Bureau of Investigation or any similar equivalent foreign agency before surrendering any **cyber extortion monies** in response to a **cyber extortion threat**.

**H.     CYBER TERRORISM COVERAGE**

Subject to the limits shown in the Schedule, the Company agrees to pay **income loss**, **interruption expenses** and **special expenses** which **you** incur during the **period of restoration**, but after the **waiting period**, as a direct result of an **act of cyber terrorism** that causes a total or partial interruption, degradation in service or failure of an **insured computer system**, provided that:

**(1)**     The **act of cyber terrorism** takes place or first commences on or after the **retroactive date**;
**(2)**     An **insured** first discovers the **act of cyber terrorism** during the **endorsement period**;
**(3)**     **You** report the **act of cyber terrorism** to the Company no later than sixty (60) days from the date an **insured** first discovers the **act of cyber terrorism**; and
**(4)**     **You** provide clear evidence that the **income loss**, **interruption expenses** and **special expenses** directly resulted from the **act of cyber terrorism**.

**I.    BRANDGUARD COVERAGE**

Subject to the limits shown in the Schedule, the Company will reimburse **you** for provable and ascertainable **brand loss** which **you** sustain during the **period of indemnity**, but after the **waiting period**, as a direct result of an **adverse media report** or **notification**, provided that:

(1)    The **adverse media report** or **notification** results from a **privacy breach** or **security breach** that takes place or first commences on or after the **retroactive date**;

(2)    **You** discover the **brand loss** during the **endorsement period**;

(3)    **You** report the **brand loss** to the Company no later than sixty (60) days from the date **you** first discover the **brand loss**; and

(4)    **You** provide clear evidence that the **brand loss** directly resulted from the **adverse media report** or **notification**.

**SECTION II – DEFENSE, INVESTIGATION, AND SETTLEMENT**

The Company will have the right and duty to defend any claim under Coverage Agreement A, B, C or D, even if the allegations of the **claim** are groundless, false or fraudulent. The Company has the right to appoint counsel to defend any such **claim**.

The Company may investigate or settle any **claim** at its sole discretion. The applicable limit of insurance will be reduced and may be completely exhausted by payment of **defense costs**. The Company will not be obligated to pay or defend any **claim** after the applicable limit of insurance hereunder has been exhausted.

No **insured** will incur any **defense costs** or other expenses, or settle any **claim**, assume any contractual obligation, admit liability, voluntarily make any payment, or otherwise consent to any settlement or judgment with respect to any **claim** without the Company's prior written consent, which will not be unreasonably withheld.  The Company will not be liable for any **defense costs** or other expenses, settlement or judgment to which the Company has not consented.

**SECTION III – EXCLUSIONS**

The insurance provided under this Endorsement does not apply to:

A.    Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving any **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach**, **adverse media report**, **covered cause of loss**, **cyber extortion threat**, or **act of cyber terrorism**:

(1)    Which was the subject of written notice given to us or to any other insurer prior to the original inception date of this Cyber Liability coverage;

(2)    Which was the subject of any prior or pending written demand made against an **insured**, or a civil, administrative or arbitration proceeding commenced against an **insured**, prior to the original inception date of this Cyber Liability coverage, or that involved the same or substantially the same fact, circumstance, or situation underlying or alleged in such prior demand or proceeding;

(3)    That was identified in any summary or statement of **claims** or potential **claims** submitted in connection with **your** application for insurance; or

(4)    Which an **insured** had knowledge of prior to the original inception date of this Cyber Liability coverage.

B.    Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving any actual, alleged or threatened discharge, dispersal, release or escape of pollutants, or any direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, nuclear material or nuclear waste. For purposes of this exclusion, "pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including mold, smoke, vapor, soot, fumes, acids, alkalis, chemicals, odors, noise, lead, oil or oil products, radiation, asbestos or asbestos-containing products and waste, and any electric, magnetic or electromagnetic field of any frequency.  "Waste" includes, but is not limited to, material that is, or is to be, recycled, reconditioned or reclaimed.

C.    Any **claim** for liability assumed by an **insured** under any oral or written contract or agreement, except where such liability would apply apart from such contract or agreement and is otherwise covered by this Endorsement. With respect to any **multimedia peril**, **security breach** or **privacy breach**, this exclusion does not apply to any **claim** alleging liability **assumed under contract**.

**D.** Any **claim** for breach of any express, implied, actual or constructive contract, representation, guarantee, or promise, except where such liability would apply apart from such contract, representation, guarantee or promise and is otherwise covered by this Endorsement.  This exclusion does not apply to any **claim** alleging breach of **your** privacy policy or liability **assumed by contract**.

**E.** Any business, joint venture or enterprise which is not named on the Declarations or by endorsement to the Policy.

**F.** Any **claim** for violation of the False Claims Act or any similar federal or state law, rule, or regulation concerning billing errors or fraudulent billing practices or abuse.

**G.** Any **claim** for infringement of any patent or the misappropriation, theft, copying, display, or publication of any trade secret.

**H.** Any **claim** for unfair competition, price fixing, deceptive trade practices, restraint of trade, or violation of any anti-trust laws.

**I.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

(1) Any employment or employment-related matters, including, but not limited to, employer-employee relations, policies, acts or omissions;
(2) Any actual or alleged refusal to employ any person or any other actual or alleged misconduct with respect to employees; or
(3) Any actual or alleged obligations of an **insured** under any workers' compensation, unemployment insurance, social security, disability benefits or other similar law.

This exclusion does not apply to an otherwise covered **claim** under Coverage Agreement B, which is brought by **your** past, present or future employee alleging a **security and privacy wrongful act**.

**J.** Any **claim** for **bodily injury** or **property damage**.

**K.** Any **claim** for harassment or discrimination because of, or relating to, race, creed, color, age, sex, sexual orientation or preference, national origin, religion, handicap, disability, political affiliation, marital status, or any other basis prohibited by federal, state or local law.

**L.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

(1) Satellite failures;
(2) Electrical or mechanical failure or interruption including, but not limited to, electrical disturbance, spike, brownout, or blackout;
(3) Outages to gas, water, telephone, cable, telecommunications or other infrastructure, unless such infrastructure is under **your** direct operational control and such **claim** is otherwise covered under Coverage Agreement F or Coverage Agreement H;
(4) The failure of overhead transmission and distribution lines; or
(5) The gradual deterioration of subterranean insulation.

**M.** Any **claim** for violation of any of United States of America's economic or trade sanctions, including, but not limited to, sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**N.** Any **criminal proceeding**.

**O.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving any of the following, if committed by an **insured**, whether acting alone or in collusion with other persons:

(1) Any willful, deliberately dishonest, malicious, or fraudulent act or omission;
(2) Any intentional violation of the law or **your** privacy policy; or
(3) The gaining in fact of any profit, remuneration or financial advantage to which an **insured** was not legally entitled.

Notwithstanding the foregoing, the insurance afforded by this Endorsement will apply to **defense costs** incurred in defending any such **claim** until such time as there is a judgment or other final adjudication adverse to the **insured** establishing such willful, dishonest, fraudulent, or malicious conduct.  The Company will have the right to recover

**defense costs** incurred in defending such **claim** from those parties found to have committed the conduct described in this exclusion.

This exclusion does not apply to:

(1)     Any **insured** that did not commit, participate in, or have knowledge of any conduct described in this exclusion; or

(2)     A **claim** resulting from sabotage by **your** employee.

**P.**     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

(1)     Any actual or alleged **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat**, **act of cyber terrorism**, or **adverse media report** that took place or first commenced prior to the **retroactive date**; or

(2)     Any actual or alleged **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat**, **act of cyber terrorism**, or **adverse media report** that took place on or after the **retroactive date**, which, together with an actual or alleged **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat**, **act of cyber terrorism**, or **adverse media report** that took place prior to the **retroactive date**, would constitute related **multimedia perils**, **security and privacy wrongful acts**, **security breaches**, **privacy breaches**, **covered causes of loss**, **cyber extortion threats**, **acts of cyber terrorism**, or **adverse media reports**.

For purposes of this exclusion, **multimedia perils**, **security and privacy wrongful acts**, **security breaches**, **privacy breaches**, **covered causes of loss**, **cyber extortion threats**, **acts of cyber terrorism** or **adverse media reports** will be deemed related if we determine that they are logically or causally connected by any common fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

**Q.**     Any claim based upon, arising out of, resulting from, in consequence of, or in any way involving any conduct, act, error or omission of any individual serving in any capacity other than as **your** officer, director, partner, stockholder, trustee or employee.

**R.**     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving an **insured's** insolvency or bankruptcy, the insolvency or bankruptcy of any other individual or entity, or the failure, inability or unwillingness to make payments because of the insolvency, liquidation, or bankruptcy of any individual or entity.

**S.**     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the wear and tear, drop in performance, progressive deterioration, or aging of **your** electronic equipment or **computer hardware**.

**T.**     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving fire, smoke, explosion, lightning, wind, water, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, force majeure or any other physical event, however caused.

**U.**     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the gradual deterioration or wear and tear of an **insured computer system**.

**V.**     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the actual or alleged inaccurate, inadequate or incomplete description of the price of goods, products or services.

**W.**     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving cost guarantees, cost representations, contract price or cost estimates being exceeded.

**X.**     Any **claim** brought by or on behalf of:

(1)     An **insured** against another **insured**;

(2)     Any entity which is owned, in whole or in part, by an **insured**, or any entity directly or indirectly controlled, operated or managed by an **insured**;

(3)     Any entity which is a parent, affiliate or subsidiary of any business, organization or joint venture in which an **insured** is a partner; or

(4)     Any individual or entity who is a partner of any business, organization or joint venture in which an **insured** is also a partner.

This exclusion does not apply to an otherwise covered **claim** under Coverage Agreement B, which is brought by **your** past, present or future employee alleging a **security and privacy wrongful act**.

**Y.**  Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving unauthorized trading. For purposes of this exclusion, "unauthorized trading" means trading, which at the time of the trade is:

**(1)**  In excess of permitted financial limits; or
**(2)**  Outside of permitted product lines.

**Z.**  Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

**(1)**  The actual or alleged purchase or sale of securities, or an offer, or solicitation of an offer, to purchase or sell securities;
**(2)**  The actual or alleged loss of value of any securities; or
**(3)**  Any actual or alleged violation of any securities law such as the provisions of the Securities Act of 1933, the Securities Exchange Act of 1934, the Sarbanes-Oxley Act of 2002 or any regulation promulgated under the foregoing statutes, or any federal, state, local, or foreign laws similar to the foregoing statutes, including "Blue Sky" laws, whether such law is statutory, regulatory or common law.

**AA.**  Any **claim** for violation of the Organized Crime Control Act of 1970 (commonly known as 'Racketeer Influenced And Corrupt Organizations Act' or 'RICO'), as amended, or any regulation promulgated under the foregoing statutes, or any similar federal, state, local or foreign laws, whether such law is statutory, regulatory or common law.

**BB.**  Any **claim** which is brought by the Federal Trade Commission, the Federal Communications Commission or any other federal, state or local governmental entity, in such entity's regulatory or official capacity. This exclusion does not apply to an otherwise covered **claim** under Coverage Agreement C.

**CC.**  Any **claim** alleging:

**(1)**  The violation of any pension, healthcare, welfare, profit sharing or mutual or investment plans, funds or trusts; or
**(2)**  The violation of any provision of the Employee Retirement Income Security Act of 1974 and its amendments and/or the Pension Protection Act of 2006 and its amendments, or any regulation, ruling or order issued pursuant thereto.

**DD.**  Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

**(1)**  Strikes or similar labor actions, war, invasion, act of foreign enemy, hostilities or warlike operations (whether declared or not), civil war, mutiny, civil commotion assuming the proportions of, or amounting to, a popular uprising, military uprising, insurrection, rebellion, revolution, military or usurped power, or any action taken to hinder or defend against these actions;
**(2)**  The confiscation, commandeering, nationalization, requisition or destruction of, or damage to, property, including **computer hardware**, by or under the order of any government or public authority for whatever reason; or
**(3)**  Any action taken in controlling, preventing, suppressing or in any way relating to DD(1) or DD(2) above.

This exclusion does not apply to an **act of cyber terrorism**.

**EE.**  Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving **your** commercial decision to cease providing a particular product or service, but only if **you** are contractually obligated to continue providing such products or services.

**FF.**  Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

**(1)**  Gambling or pornography;
**(2)**  Prizes, awards or coupons; or
**(3)**  The sale or provision of prohibited, restricted or regulated items such as alcoholic beverages, tobacco or drugs.

**GG.**  Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the use of programs that are not **operational programs** or **delivered programs**.

**HH.**  Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving an **insured's**

intentional use of illegal or unlicensed programs.

II.    Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the existence, emission or discharge of any electromagnetic field, electromagnetic radiation or electromagnetism that affects the health, safety or condition of any person or the environment or that affects the value, marketability, condition or use of any property.

JJ.    Any claim based upon, arising out of, resulting from, in consequence of, or in any way involving any violation of the Telephone Consumer Protection Act (47 U.S.C.§227), the Telemarketing and Consumer Fraud and Abuse Prevention Act (15 U.S.C. §§ 6101-6108), or the CAN-SPAM Act (15 U.S.C. §§ 7701-7713), as amended, or any regulations promulgated thereunder, or any similar federal, state, local or foreign laws, whether such laws are statutory, regulatory or common law, including any anti-spam law or other law concerning the use of telephonic or electronic communications for solicitation purposes, or any allegations of invasion or violation of any rights to privacy derived therefrom. This exclusion does not apply to an otherwise covered **claim** under Coverage Agreement B or Coverage Agreement C alleging a violation of the CAN-SPAM Act as amended, or any regulations promulgated thereunder, or any similar federal, state, local or foreign law, whether such law is statutory, regulatory or common law, but only if such violation arises out of a **security breach**.

KK.    Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

    **(1)**    Any violation of the **PCI Data Security Standard** or any payment card company rules; or
    **(2)**    The failure to implement, maintain or comply with any security measures or standards related to payment card **data**, including any fine or penalty imposed by a payment card company on a merchant bank or payment processor that **you** have paid or agreed to reimburse or indemnify.

This exclusion does not apply to an otherwise covered **claim** under Coverage Agreement D.

LL.    With respect to Coverage Agreement F(1):

    **(1)**    Any amount incurred in restoring, updating or replacing **digital assets** to a level beyond that which existed prior to the **covered cause of loss**;
    **(2)**    Physical damage to the **computer hardware** or **data** center, other than accidental physical damage or destruction of **electronic media** so that stored **digital assets** are no longer machine-readable;
    **(3)**    Contractual penalties or consequential damages;
    **(4)**    Any liability to third parties for whatever reason, including legal costs and expenses of any type;
    **(5)**    Fines or penalties imposed by law;
    **(6)**    The economic or market value of **digital assets**;
    **(7)**    Costs or expenses incurred to identify, patch or remediate software program errors or **computer system** vulnerabilities;
    **(8)**    Costs to upgrade, redesign, reconfigure or maintain an **insured computer system** to a level of functionality beyond that which existed prior to the **covered cause of loss**; or
    **(9)**    Any losses paid under Coverage Agreement F(2).

MM.    With respect to Coverage Agreement F(2):

    **(1)**    Any loss arising out of updating or replacing **digital assets** to a level beyond that which existed prior to the **covered cause of loss**;
    **(2)**    Contractual penalties or consequential damages;
    **(3)**    Any liability to third parties for whatever reason, including legal costs and expenses of any type;
    **(4)**    Fines or penalties imposed by law;
    **(5)**    Costs or expenses incurred to identify, patch or remediate software program errors or **computer system** vulnerabilities;
    **(6)**    Loss of goodwill and reputational harm;
    **(7)**    Costs to upgrade, redesign, reconfigure or maintain an **insured computer system** to a level of functionality beyond that which existed prior to the **covered cause of loss**; or
    **(8)**    Any losses paid under Coverage Agreement F(1).

NN.    With respect to Coverage Agreement I:

    **(1)**    Any amounts incurred by **you** in an effort to re-establish **your reputation**, including **public relations expenses**;
    **(2)**    Any amounts incurred in any **claim** that is insured by any other insurance, except excess  insurance;

**(3)** Any amounts incurred in connection with an **adverse media report** that also affects or refers in similar terms to a general security issue, an industry or **your** specific competitors without any specific allegations regarding a **privacy breach** or **security breach** by an **insured**, a **BPO service provider**, an **outsourced IT service provider**, or by others acting on **your** behalf and for whom **you** are legally responsible;

**(4)** Any civil or regulatory liability to third parties for whatever reason, including legal costs and expenses of any type;

**(5)** Contractual penalties or consequential damages;

**(6)** **Privacy breach response costs**, **notification expenses** or **breach support and credit monitoring expenses** paid under Coverage Agreement E; or

**(7)** Fines or penalties imposed by law or regulation.

## SECTION IV - LIMITS OF LIABILITY

**A.** The limit of insurance shown in the Schedule as applicable to a Coverage Agreement is the most the Company will pay for each **claim** and in the aggregate under that Coverage Agreement, including **defense costs** where applicable, regardless of the number of **insureds** involved or affected, the number of individuals or entities making a **claim**, or the number of **claims** made.

**B.** Subject to the provisions respecting each Coverage Agreement, the limit of insurance shown in Schedule as the "Annual Aggregate Limit" is the most the Company will pay for all **claims** made during the **endorsement period** under all Coverage Agreements of this Endorsement combined. The "Annual Aggregate Limit" includes **defense costs**.

**C.** If the "Annual Aggregate Limit" is exhausted, then the Company's obligations under this Endorsement will be deemed completely fulfilled and extinguished.

**D.** All **claims** made under any one Coverage Agreement which arise out of the same, related, or continuing acts, facts or circumstances, will be considered a single **claim** without regard to the number of **insureds**, **claims**, or persons or entities making a **claim**, and only one "each **claim**" limit will apply. Such **claim** will be deemed to have been first made on the date the earlier of the related **claims** was first made and will be deemed to have been first reported to the Company on the date the earlier of the related **claims** was first reported to the Company in writing. Appeals and any post-trial proceedings or consolidated proceedings approved by us will be considered to be part of the original **claim**.

**E.** In the event that a **claim** is made and applies to more than one Coverage Agreement of this Endorsement, only one "each **claim**" limit will apply. The Company has the sole discretion to allocate amounts paid, if any, against the appropriate limit of liability.

## SECTION V - DEFINITIONS

When used in this Endorsement:

**Acquiring bank** means a bank or financial institution that accepts credit and debit card payments (including stored value cards and pre-paid cards) for products or services on behalf of a merchant, including processing and crediting those payments to a merchant's account.

**Act of cyber terrorism** means the premeditated use of information technology to organize and execute attacks, or the threat thereof, against computers, **computer systems**, networks or the internet by any person or group, whether acting alone, on behalf of, or in connection with any organization or government, which is committed for political, religious, or ideological purposes, with the intention to influence any government, put the public in fear, or cause destruction or harm to critical infrastructure or **data**.

**Adverse media report** means any report or communication of an actual or potential **security breach** or **privacy breach**, which:

**A.** Has been publicized through any media channel including, but not limited to, television, **print media**, radio or electronic networks, the internet, or electronic mail; and

**B.** Threatens material damage to **your reputation** or brands.

**Assumed under contract** means liability for **damages** resulting from a **multimedia peril, security breach** or **privacy breach** where such liability has been assumed by **you** in the form of a written hold harmless or indemnity agreement,

provided that such agreement was executed prior to the date the **multimedia peril**, **security breach**, or **privacy breach** occurred.

**Bodily injury** means physical injury, sickness, disease, pain or death, and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or emotional distress sustained by a person at any time.

**BPO service provider** means any third-party independent contractor that provides business process outsourcing services for **your** benefit under a written contract with **you**, including, but not limited to, call center services, fulfillment services, and logistical support.

**Brand loss** means **your** net profit as could have been reasonably projected immediately prior to **notification** or, in the event of an **adverse media report**, immediately prior to the publication of an **adverse media report**, but which has been lost as a direct result of such **notification** or **adverse media report**. **Brand loss** will be determined in accordance with Section VII.C of this Endorsement.

**Breach support and credit monitoring expenses** means those reasonable and necessary costs and expenses **you** incur, with the Company's prior written consent, for the provision of support activity to affected individuals in the event of a **privacy breach**, including the cost to provide a maximum of twelve (12) months of credit monitoring and identity theft education or assistance.

**Card association** means Visa International, Mastercard, Discover, JCB American Express and any similar credit or debit card association that is a participating organization of the Payment Card Industry Security Standards Council.

**Claim** means:

A.      With respect to Coverage Agreement A (Multimedia Liability) and Coverage Agreement B (Security and Privacy Liability):

     **(1)**     Any written demand for monetary or non-monetary relief made against an **insured**;

     **(2)**     Any civil proceeding or arbitration proceeding initiated against an **insured**, commenced by the service of a summons, complaint or similar pleading or notice; or

     **(3)**     Any written request to toll or waive a statute of limitations relating to a potential **claim** against an **insured**, including any appeal therefrom.

A **claim** under Coverage Agreement A or Coverage Agreement B will be deemed to be first made when an **insured** first receives notice of any of A(1) through A(3) above.

B.      With respect to Coverage Agreement C (Privacy Regulatory Defense and Penalties), a **government investigation** commenced against an **insured** by letter, notice, complaint or order of investigation.   A **claim** under Coverage Agreement C will be deemed to be first made when it is first received by an **insured**.

C.      With respect to Coverage Agreement D (PCI DSS Assessment), a written demand made against an **insured** by an **acquiring bank** or **card association** for a **PCI DSS assessment** due to the **insured's** non-compliance with the **PCI Data Security Standard**.  A **claim** under Coverage Agreement D will be deemed to be first made when such written demand is received by an **insured**.

D.      With respect to Coverage Agreement E (Privacy Breach Response Costs, Notification Expenses, and Breach Support and Credit Monitoring Expenses), **your** written report to the Company of an **adverse media report**, **security breach** or **privacy breach**.

E.      With respect to Coverage Agreement F (Network Asset Protection), **your** written report to the Company of a **covered cause of loss**.

F.      With respect to Coverage Agreement G (Cyber Extortion), **your** written report to the Company of a **cyber extortion threat**.

G.      With respect to Coverage Agreement H (Cyber Terrorism), **your** written report to the Company of an **act of cyber terrorism**.

H.      With respect to Coverage Agreement I (BrandGuard), **your** written report to the Company of **brand loss** directly caused by an **adverse media report** or **notification**.

**Computer hardware** means the physical components of any **computer system**, including CPU's, memory, storage devices, storage media, input/output devices and other peripheral devices and components, including, but not limited to, cables, connectors, fiber optics, wires, power supply units, keyboards, display monitors and audio speakers.

**Computer program** means an organized set of instructions that, when executed, causes a computer to behave in a predetermined manner. **Computer program** includes, but is not limited to, communication systems, networking systems, operating systems, and related **computer programs** used to create, maintain process, retrieve, store, or transmit electronic **data**.

**Computer system** means interconnected electronic, wireless or web systems, or similar systems (including all **computer hardware** and software) used to process and store **data** or information in an analogue, digital, electronic or wireless format including, but not limited to, **computer programs**, electronic **data**, operating systems, **firmware**, servers, media libraries, associated input and output devices, mobile devices, networking equipment, websites, extranets, off line storage facilities (to the extent that they hold electronic **data**), and electronic backup equipment.

**Computer virus** means a program that possesses the ability to create replicas of itself (commonly known as an "auto-reproduction" program) within other programs or operating system areas, and which is capable of spreading copies of itself, wholly or in part, to other **computer systems**.

**Covered cause of loss** means, and is limited to, the following:

A.   Accidental Damage or Destruction

   (1)   Accidental physical damage or destruction of **electronic media**, so that stored **digital assets** are no longer machine-readable;
   (2)   Accidental damage or destruction of **computer hardware**, so that stored **data** is no longer machine-readable;
   (3)   Failure in power supply or under/over voltage, but only if such power supply, including back-up generators, is under **your** direct operational control;
   (4)   **Programming error** of **delivered programs**; or
   (5)   Electrostatic build-up and static electricity.

B.   Administrative or Operational Mistakes

   An accidental, unintentional, or negligent act, error or omission by an **insured**, a **BPO service provider** or **outsourced IT service provider** in:

   (1)   The entry, or modification of **your** electronic **data**, which causes damage to such **data**; or
   (2)   The creation, handling, development, modification or maintenance of **your digital assets**; or
   (3)   The on-going operation or maintenance of an **insured computer system** excluding the design, architecture, or configuration of an **insured computer system**.

C.   Computer Crime and Computer Attacks

   A negligent act, error or omission in the operation of an **insured computer system** or in the handling of **your digital assets** by an **insured**, a **BPO service provider** or **outsourced IT service provider**, which fails to prevent or hinder any of the following attacks on an **insured computer system**:

   (1)   A **denial of service attack**;
   (2)   **Malicious code**;
   (3)   **Unauthorized access**; or
   (4)   **Unauthorized use**.

**Criminal proceeding** means any governmental action for enforcement of criminal laws, including those offenses for which conviction could result in imprisonment or criminal fine.

**Cyber extortion expenses** means all reasonable and necessary costs and expenses **you** incur, with the Company's prior written consent, as a direct result of a **cyber extortion threat**, other than **cyber extortion monies**.

**Cyber extortion monies** means any funds or property **you** pay, with the Company's prior written consent, to a person or organization reasonably believed to be responsible for a **cyber extortion threat**, in order to terminate such **cyber extortion threat**.

**Cyber extortion threat** means a credible threat or series of related credible threats, including, but not limited to, a demand for **cyber extortion monies**, directed at **you** to:

A.   Release, divulge, disseminate, destroy or use the confidential information of a third party taken from an **insured** as a result of **unauthorized access** to, or **unauthorized use** of, an **insured computer system**;
B.   Introduce **malicious code** into an **insured computer system**;
C.   Corrupt, damage or destroy an **insured computer system**;
D.   Restrict or hinder access to an **insured computer system**, including, but not limited to, the threat of a **denial of service attack**; or
E.   Electronically communicate with **your** customers and falsely claim to be **you** or to be acting under **your** direction in order to falsely obtain personal or confidential information of a customer (also known as "pharming", "phishing", or other types of false communications).

**Damages** means the amount of money which an **insured** is legally obligated to pay as a result of a covered **claim** under Coverage Agreement A or Coverage Agreement B, including judgments, legal fees and costs awarded against an **insured** pursuant to such judgments, punitive and exemplary damages where insurable, and settlements negotiated with the Company's consent.

**Damages** does not include:

A.   Taxes;
B.   Any amount for which an **insured** is absolved from legal responsibility to make payment to a third party;
C.   Amounts owed under contract;
D.   **Your** future profits or royalties or any return, withdrawal, restitution or reduction of **your** professional fees, profits or other charges;
E.   Liquidated damages or the multiplied portion of multiplied damages;
F.   Fines, sanctions or penalties;
G.   Any matters that are deemed uninsurable under applicable law;
H.   The costs to comply with orders granting injunctive or non-monetary relief, including specific performance or any agreement to provide such relief;
I.   Disgorgement of any remuneration or financial advantage to which **you** were not legally    entitled; or
J.   Settlements negotiated without the Company's consent.

**Data** means any and all machine-readable information, including, but not limited to, ready-for-use programs, applications, account information, personal information, health and medical information, or electronic information subject to back-up procedures, irrespective of the way it is used or rendered.

**Defense costs** means reasonable and necessary legal fees and related costs and expenses incurred with the Company's consent in the investigation, defense and appeal of any **claim** under Coverage Agreement A, Coverage Agreement B, Coverage Agreement C, or Coverage Agreement D.  **Defense costs** does not include any wages, salaries, fees, overhead or other charges incurred by, or paid to, any **insured** for time spent in cooperating in the defense and investigation of any **claim** or potential **claim** under this Endorsement.

**Delivered programs** means programs, applications, and software where the development stage has been finalized, having passed all test-runs and been proven successful in a live environment.

**Denial of service attack** means an event caused by unauthorized or unexpected interference or a malicious attack intended by the perpetrator to overwhelm the capacity of a **computer system** by sending an excessive volume of electronic **data** to such **computer system** in order to prevent authorized access to such **computer system**.

**Digital assets** means **data** and **computer programs** that exist in an **insured computer system**. **Digital assets** does not include **computer hardware**.

**Digital assets loss** means reasonable and necessary expenses and costs **you** incur to replace, recreate or restore **digital assets** to the same state and with the same contents immediately before it was damaged, destroyed, altered, misused, or stolen, including expenses for materials and machine time.   **Digital assets loss** also includes amounts representing employee work time to replace, recreate or restore **digital assets**, which shall be determined on a predefined billable hours or per hour basis as based upon **your** schedule of employee billable hours.

**Electronic media** means floppy disks, CD ROMs, flash drives, hard drives, solid state drives, magnetic tapes, magnetic discs, or any other media on which electronic **data** is recorded or stored.

API1016CYBR

**Endorsement period** means the period of coverage beginning on the effective date specified on this Endorsement and ending on the earlier of the termination, expiration or cancellation date of the Policy to which this Endorsement attaches. **Endorsement period** does not include any extended reporting period.

**Firmware** means the fixed programs that internally control basic low-level operations in a device.

**Government investigation** means a formal investigation instituted against an **insured** by any federal, state or local government agency or authority, the subject matter of which is a **privacy breach** or **security breach**.

**Income loss** means financial loss **you** sustain, as determined in accordance with the provisions of Coverage Agreement F(2) or Coverage Agreement H.

**Insured** means the **named insured** and current executive officers, partners, directors, stockholders, trustees, or employees of the **named insured**, but only while such individuals are acting within the scope of their duties on behalf of the **named insured**.

**Insured computer system** means:

A.    A **computer system** operated by, and either owned by or leased to, **you**;
B.    With respect to Coverage Agreement B only, a **computer system** operated by a **BPO service provider** or **outsourced IT service provider** and used for the sole purpose of providing hosted computer application services to **you** or for processing, maintaining, hosting, or storing **your** electronic **data**, pursuant to a written contract with **you** to provide such services.

**Interruption expenses** means those expenses, excluding **special expenses**, which **you** incur in accordance with the provisions of Coverage Agreement F(2) or Coverage Agreement H to:

A.    Avoid or minimize the suspension of **your** business as a result of a total or partial interruption, degradation in service, or failure of an **insured computer system** caused directly by a **covered cause of loss** or **act of cyber terrorism**, which **you** would not have incurred had no **covered cause of loss** or **act of cyber terrorism** occurred, including, but not limited to, the use of rented/leased external equipment, substitution of other work or production procedures, use of third party services, or additional staff expenditures or labor costs; and
B.    Minimize or avoid a **covered cause of loss** or an **act of cyber terrorism** and continue **your** business.

The amount of **interruption expenses** recoverable under paragraph A. above shall in no case exceed the amount by which the covered **income loss** is reduced by such incurred expenses.

**Malicious code** means software intentionally designed to insert itself into and damage a **computer system** without the owner's informed consent by a variety of forms including, but not limited to, viruses, worms, Trojan horses, spyware, dishonest adware, and crimeware.

**Multimedia peril** means the release of or display of any **electronic media** on **your** internet site or **print media** for which **you** are responsible, which directly results in any of the following:

A.    Any form of defamation or other tort related to the disparagement or harm to the reputation or character of any person or organization, including libel, slander, product disparagement or trade libel;
B.    Invasion, infringement or interference with an individual's right of privacy or publicity, including false light, intrusion upon seclusion, commercial misappropriation of name, person or likeness, or public disclosure of private facts;
C.    Plagiarism, piracy or misappropriation of ideas under an implied contract;
D.    Infringement of copyright, trademark, trade name, trade dress, title, slogan, service mark or service name; or
E.    Domain name infringement, improper deep linking, or framing.

**Named insured** means the person or organization listed as such on the Declarations Page of the Policy to which this Endorsement attaches.

**Notification** means written notice to affected individuals in the event of a **security breach** or a **privacy breach**.

**Notification expenses** means:

A.    Those reasonable and necessary legal expenses, computer forensic and investigation fees, postage expenses and related advertising expenses incurred by **you**, with the Company's prior written consent, to comply with

governmental privacy legislation mandating notice to affected individuals in the event of a **security breach** or **privacy breach**; and

**B.** **Voluntary notification expenses** incurred with the Company's prior written consent, subject to the **voluntary notification expenses sublimit**.

**Operational programs** means programs and software which are ready for operational use, having been fully developed, tested, and accepted by **you**.

**Outsourced IT service provider** means a third party independent contractor that provides information technology services for **your** benefit under a written contract with **you**. **Outsourced IT service provider** services include, but are not limited to, hosting, security management, co-location, and **data** storage.

**PCI Data Security Standard** (known as "PCI DSS") means the published data security standards in effect now, or as hereafter amended, which all merchants and processors must follow when storing, processing and transmitting cardholder **data**.

**PCI DSS assessment** means monetary fines, penalties or assessments, such fraud recoveries, card reissuance costs, operational expenses or compliance case costs, imposed against an **insured** by an **acquiring bank** or **card association** as a result of a **security breach** or **privacy breach**.

**Period of indemnity** means the period beginning with the earlier of the date of **notification** or the first publication of an **adverse media report** (whichever applies), and ending on the earlier of:

**A.** The date that gross revenues are restored to the level they had been prior to **notification** or the first **adverse media report** (whichever applies); or

**B.** One hundred eighty (180) consecutive days after the notice of **brand loss** is received by the Company.

**Period of restoration** means the period of time beginning on the date when the interruption, degradation or failure of an **insured computer system** began and ending on the earlier of:

**A.** The date when the **insured computer system** is restored or could have been repaired or restored to the same condition, functionality, and level of service that existed prior to the **covered cause of loss** or **act of cyber terrorism** with reasonable diligence, plus up to thirty (30) additional consecutive days after restoration of the **insured computer system** to allow for restoration of **your** business; or

**B.** One hundred twenty (120) consecutive days after the notice of **covered cause of loss** or **act of cyber terrorism** is received by the Company.

**Print media** means newspapers, newsletters, magazines, brochures, books and literary works in any form, or other types of publications and advertising materials, including packaging, photographs, and digital images.

**Privacy breach** means any of the below, whether actual or alleged, but only if committed or allegedly committed by an **insured** or by others acting on **your** behalf for whom **you** are legally responsible, including **BPO service providers** and **outsourced IT service providers**:

**A.** A common law breach of confidentiality, infringement, or violation of any right to privacy, including, but not limited to, a breach of **your** privacy policy, false light, intrusion upon a person's seclusion, commercial misappropriation of name, person, or likeness, or public disclosure of a person's private information; or

**B.** Any breach or violation of U.S. federal, state or local privacy statutes or regulations, as they currently exist and as amended, associated with confidentiality, access, control, and use of personally identifiable, non-public information, including, but not limited to:

**(1)** The Health Insurance Portability and Accountability Act of 1996 (Public Law 104- 191), known as HIPAA, and related state medical privacy laws;

**(2)** The Gramm-Leach-Bliley Act of 1999 (GLBA), also known as the Financial Services Modernization Act of 1999;

**(3)** State and federal statutes and regulations regarding the security and privacy of consumer information;

**(4)** Governmental privacy protection regulations or laws associated with the control and use of personal information;

**(5)** Privacy provisions of consumer protection laws, including the Federal Fair Credit Reporting Act (FCRA) and similar state laws;

**(6)** Title XIII, the Health Information Technology for Economic and Clinical Health Act ("HITECH"), of the American Recovery and Reinvestment Act of 2009 ("ARRA").

A series of continuing **privacy breaches**, related or repeated **privacy breaches**, or multiple **privacy breaches** resulting from the same facts or circumstances will be considered a single **privacy breach** and will be deemed to have occurred at the time the first of such **privacy breaches** occurred.

**Privacy breach response costs** means:

A.    Those reasonable and necessary **public relations expenses you** incur, with the Company's prior written consent, to avert or mitigate any material damage to **your reputation** or brands, which results or reasonably will result from an **adverse media report**; and

B.    **Proactive privacy breach response costs** incurred with the Company's prior written consent, subject to the **proactive privacy breach response costs sublimit**.

**Proactive privacy breach response costs** means those reasonable and necessary **public relations expenses you** incur in response to an actual or potential **security breach** or **privacy breach**, but prior to the publication of an **adverse media report**, in an effort to avert or mitigate the potential impact of such **adverse media report**. **Proactive privacy breach response costs** must be incurred with our prior written consent.

**Proactive privacy breach response costs sublimit** means the maximum amount that the Company will pay for **proactive privacy breach response costs**. The **proactive privacy breach response costs sublimit** is included within, and will erode, the limits of liability applicable to Coverage Agreement E.

**Programming error** means an error that occurs during the development or encoding of a **computer program**, software, or application, which would, when in operation, result in a malfunction or incorrect operation of a **computer system**.

**Property damage** means injury to tangible property, including all resulting loss of use of that property, and loss of use of tangible property that is not physically injured. **Data** is not considered tangible property.

**Public relations expenses** means reasonable and necessary fees and expenses **you** incur in the employment of a public relations consultant to re-establish **your reputation** which was damaged as a direct result of an **adverse media report**.

**Regulatory compensatory award** means a sum of money an **insured** is legally obligated to pay as an award or fund for affected individuals, including a regulatory agency's monetary award to a third party, due to an adverse judgment or settlement arising out of a **government investigation**. **Regulatory compensatory award** does not include any criminal penalty or fine issued by a regulatory agency of any kind, including federal, state, or local governmental agencies.

**Regulatory fines and penalties** means civil or administrative fines and penalties imposed against an **insured** as a result of a **government investigation**.

**Regulatory fines and penalties** does not include:

A.    Any criminal fines or penalties of any nature whatsoever;

B.    Any fines or penalties imposed against an **insured** for failure to comply with or follow the **PCI Data Security Standard** or any payment card company rules; or

C.    Any interest assessed on **regulatory fines and penalties**.

**Retroactive date** means the date specified as such on this Endorsement, on or after which any **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach**, **covered cause of loss**, **act of cyber terrorism**, or **adverse media report** must have taken place in order to be considered for coverage under this Endorsement.

**Security and privacy wrongful act** means any of the following acts, whether actual or alleged, but only if committed or allegedly committed by an **insured**:

A.    The failure to prevent or hinder a **security breach**, which in turn results in:

    (1)    The alteration, copying, corruption, destruction or deletion of, or damage to, electronic **data** stored on an **insured computer system**;

    (2)    Theft, loss or unauthorized disclosure of electronic or non-electronic confidential commercial, corporate, personally identifiable, or private information that is in an **insured's** care, custody or control;

    (3)    Theft, loss or unauthorized disclosure of electronic or non-electronic confidential commercial, corporate, personally identifiable, or private information that is in the care, custody or control of a **BPO service**

provider or **outsourced IT service provider** that is holding, processing or transferring such information on **your** behalf; provided, however, that the theft, loss or unauthorized disclosure occurs while **your** written contract with such **BPO service provider** or **outsourced IT service provider** is in effect; or

(4)   **Unauthorized use** of or **unauthorized access** to a **computer system** other than an **insured computer system**;

B.   The failure to timely disclose a **security breach** affecting personally identifiable, nonpublic information, or the failure to dispose of personally identifiable, nonpublic information within the required time period, in violation of privacy regulations in effect now or in the future;

C.   The failure to prevent the transmission of **malicious code** or **computer virus** from an **insured computer system** to the **computer system** of a third party;

D.   A **privacy breach**;

E.   The failure to prevent or hinder participation by an **insured computer system** in a **denial of service attack** directed against internet sites or the **computer system** of any third party; or

F.   The loss of **your** employee's information.

**Security breach** means any of the following, whether a specifically targeted attack or a generally distributed attack:

A.   **Unauthorized access** to, or **unauthorized use** of, an **insured computer system**, including **unauthorized access** or **unauthorized use** resulting from the theft of a password from an **insured computer system** or from an **insured**;

B.   A **denial of service attack** against an **insured computer system**; or

C.   Infection of an **insured computer system** by **malicious code** or the transmission of **malicious code** from an **insured computer system**.

A series of continuing **security breaches**, related or repeated **security breaches**, or multiple **security breaches** resulting from a continuing failure of computer security will be considered a single **security breach** and will be deemed to have occurred at the time the first of such **security breaches** occurred.

**Special expenses** means reasonable and necessary costs and expenses **you** incur to:

A.   Prevent, preserve, minimize, or mitigate any further damage to **your digital assets**, including the reasonable and necessary fees and expenses of specialists, outside consultants or forensic experts;

B.   Preserve critical evidence of any criminal or malicious wrongdoing;

C.   Purchase replacement licenses for **computer programs** because the copy protection system or access control software was damaged or destroyed by a **covered cause of loss** or **act of cyber terrorism**; or

D.   Notify customers of a total or partial interruption, degradation in service, or failure of an **insured computer system** resulting from a **covered cause of loss** or **act of cyber terrorism**.

**Unauthorized access** means the gaining of access to a **computer system** by an unauthorized person.

**Unauthorized use** means the use of a **computer system** by unauthorized persons or by authorized persons in an unauthorized manner.

**Voluntary notification expenses** reasonable and necessary legal expenses, computer forensic and investigation fees, postage expenses and related advertising expenses **you** incur to provide written notice to any individual or organization of a **privacy breach** or **security breach** where there is no specific legal requirement in the applicable jurisdiction mandating such notice.

**Voluntary notification expenses sublimit** means the maximum amount that the Company will pay for **voluntary notification expenses**. The **voluntary notification expenses sublimit** is included within, and will erode, the limits of liability applicable to Coverage Agreement E.

**Waiting period** means:

A.   With respect to Coverage Agreement F(2) and Coverage Agreement H, the 8-hour period which must elapse before **income loss**, **interruption expenses** and **special expenses** may be payable. The **waiting period** applies to each **period of restoration**.

B.   With respect to Coverage Agreement I, the two-week period which must elapse after **notification**, or in the event of an **adverse media report**, after publication of the first **adverse media report**, before **brand loss** may be payable. The **waiting period** applies to each **period of indemnity**.

API1016CYBR

**You** and **your** mean the **named insured**.

**Your reputation** means the estimation of trust that customers or clients have in doing business with **you** or in purchasing **your** products or services.

## SECTION VI – NOTICE PROVISIONS

**A.        NOTICE OF A CLAIM**

**(1)**        As a condition precedent to coverage under Coverage Agreement A, B, C or D, an **insured** must give the Company written notice of any **claim** made against the **insured** no later than sixty (60) days after the **claim** is first made against the **insured**.

**(2)**        As a condition precedent to coverage under Coverage Agreement E, F, G, H or I, **you** must give the Company written notice of any **claim** no later than sixty (60) days from the date an **insured** first discovers the event or incident giving rise to such **claim**.

**(3)**        **You** must provide the Company with copies of all documentation comprising the **claim** as well as any authorization, cooperation, or assistance as the Company may require.

**(4)**        The Company will not be obligated to pay any amounts incurred prior to notice of a **claim** to the Company or amounts incurred without the Company's prior written consent.

**B.        NOTICE OF A POTENTIAL CLAIM**

If, during the **endorsement period**, any **insured** first becomes aware of any facts or circumstances which could give rise to a **claim** covered under this Endorsement, and if the **insured** provides the Company with written notice during the **endorsement period** of:

**(1)**        The details regarding such facts or circumstances;
**(2)**        The nature of the loss incurred;
**(3)**        The identity of the potential claimant(s) involved;
**(4)**        The manner in which the **insured** first became aware of the facts or circumstances; and
**(5)**        The consequences which have resulted or may result,

then any **claim** subsequently made arising out of such reported facts or circumstances will be deemed to be a **claim** first made on the date notice complying with the foregoing requirements was first received by the Company.

## SECTION VII - LOSS DETERMINATION

**A.        LOSS OF DIGITAL ASSETS**

For any and all coverage provided under Coverage Agreement F(1), **digital assets loss** will be determined as follows:

**(1)**        If the impacted **digital asset** was purchased from a third party, the Company will pay only the lesser of the original purchase price of the **digital asset** or the reasonable and necessary **digital assets loss**.

**(2)**        If it is determined that the **digital assets** cannot be replaced, restored or recreated, then the Company will only reimburse the actual and necessary **digital assets loss** incurred up to such determination.

**B.        NON-PHYSICAL BUSINESS INTERRUPTION AND EXTRA EXPENSE AND CYBER TERRORISM**

For any and all coverage provided under Coverage Agreement F(2) or Coverage Agreement H, **income loss** will be determined as the reduction of **your** income during the **period of restoration**, which is:

**(1)**        **Your** net income (net profit or loss before income taxes) that would have been reasonably projected, but which has been lost directly as a result of a total or partial interruption, degradation in service or failure of an **insured computer system** caused directly by a **covered cause of loss** or **act of cyber terrorism**, whichever applies.  The income projection will take into account the prior experience of **your** business preceding the date of the **covered cause of loss** or **act of cyber terrorism** and the probable experience had no **covered cause of loss** or **act of cyber terrorism** occurred.  Income includes the amount of money paid or payable to **you** for goods, products or services sold, delivered or rendered in the normal course of **your** business. The income projection will be reduced by the extent to which **you** use substitute methods, facilities or personnel to maintain **your** revenue stream.  The Company will take into consideration **your**

documentation of the trends in **your** business and variations in, or other circumstances affecting, **your** business before or after the **covered cause of loss** or **act of cyber terrorism**, which would have affected **your** business had no **covered cause of loss** or **act of cyber terrorism** occurred; and

**(2)**   Any fixed operating expenses (including ordinary payroll) incurred, but only to the extent that such operating expenses must continue during the **period of restoration**.

**C.   BRANDGUARD**

For any and all coverage provided under Coverage Agreement I, **brand loss** will be calculated by taking into account the prior experience of **your** business preceding the date of the **adverse media report** or **notification**, whichever applies, and the probable experience had no **adverse media report** been published or **notification** occurred. Income includes the amount of money paid or payable to **you** for goods, products or services sold, delivered or rendered in the normal course of **your** business. The income projection will be reduced by the extent to which **you** use substitute methods, facilities, or personnel to maintain its revenue stream. The Company will take into consideration **your** documentation of the trends in **your** business and variations in, or other circumstances affecting, **your** business before or after the **adverse media report** or **notification**, which would have affected **your** business had no **adverse media report** been published or **notification** occurred. Any fixed operating expenses (including ordinary payroll) incurred will be considered in calculating **brand loss**, but only to the extent that such operating expenses must continue during the **period of indemnity**.

**SECTION VIII – EXTENDED REPORTING PERIOD**

**A.   AUTOMATIC EXTENDED REPORTING PERIOD**

In the event of non-renewal or termination of this Policy for any reason other than non-payment of premium, the Company will provide an Automatic Extended Reporting Period of sixty (60) days during which **claims** otherwise covered by this Endorsement may be reported.  Such Automatic Extended Reporting Period will commence immediately upon termination or expiration of this Policy and will apply to:

**(1)**   A **claim** under Coverage Agreement A, B, C, or D which:

   **(a)**   Arises out of an actual or alleged **multimedia peril**, **security and privacy wrongful act**, **security breach** or **privacy breach**, whichever applies, that takes place or first commences on or after the **retroactive date**, but prior to the expiration or termination of the Policy; and

   **(b)**   Is first made against an **insured** during the **endorsement period**, but prior to the Policy termination or expiration date; and

   **(c)**   Is reported in writing to the Company during the Automatic Extended Reporting Period.

**(2)**   A **claim** under Coverage Agreement E, F, G, H, or I which:

   **(a)**   Arises out of an **adverse media report**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat** or **act of cyber terrorism**, whichever applies, that takes place or first    commences on   or after the **retroactive date**, but prior to the expiration or termination of the Policy; and

   **(b)**   Is reported in writing to the Company during the Automatic Extended Reporting Period.

**B.   SUPPLEMENTAL EXTENDED REPORTING PERIOD**

**(1)**   **You** shall have the option, upon payment of the required additional premium, to purchase a Supplemental Extended Reporting Period of 12 months, 24 months, or 36 months following the effective date of termination of coverage. The Supplemental Extended Reporting Period will extend the time during which **claims** otherwise covered by this Endorsement may be made and reported.  If the Supplemental Extended Reporting Period is purchased, the Automatic Extended Reporting Period will be included within the Supplemental Extended Reporting Period. Such Supplemental Extended Reporting Period will apply only to:

   **(a)**   A **claim** under Coverage Agreement A, B, C, or D which:

      **(i)**   Arises out of an actual or alleged **multimedia peril**, **security and privacy wrongful act**, **security breach** or **privacy breach**, whichever applies, that takes place or first commences on or after the **retroactive date**, but prior to the expiration or termination of the Policy; and

     **(ii)**    Is first made against an **insured** during the Supplemental Extended Reporting Period; and

     **(iii)**   Is reported in writing to the Company no later than 60 days after the **claim** is first made against an **insured**.

   **(b)**   A **claim** under Coverage Agreement E, F, G  H or I which:

     **(i)**    Arises out of an **adverse media report**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat** or **act of cyber terrorism**, whichever applies, that takes place or first commences on or after the **retroactive date**, but prior to the expiration or termination of the Policy; and

     **(ii)**   Is reported in writing to the Company during the Supplemental Extended Reporting Period, but no later than 60 days from the date any **insured** discovers the **adverse media report**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat**, **act of cyber terrorism** or **brand loss**, whichever applies.

**(2)**   The right to purchase the Supplemental Extended Reporting Period shall terminate unless written notice of such election, together with full payment of the required additional premium due, is received by us no later than sixty (60) days after the effective date of non-renewal or termination of the Policy.

**(3)**   The additional premium for the Supplemental Extended Reporting Period shall be a percentage of the rates for such coverage in effect on the later of the date the policy was issued or last renewed.

**(4)**   If **you** do not elect to purchase a Supplemental Extended Reporting Period, then coverage under this Endorsement will terminate at the end of the Automatic Extended Reporting Period. If **you** elect to purchase a Supplemental Extended Reporting Period, coverage will terminate at the end of the Supplemental Extended Reporting Period.

**(5)**   Once in effect, the Supplemental Extended Reporting Period may not be canceled, and the entire premium will be deemed fully earned. We will not be liable to return any portion of the premium to **you** for such Supplemental Extended Reporting Period. If **you** have not paid the required additional premium for the Supplemental Extended Reporting Period when due, then such Supplemental Extended Reporting Period shall be void.

**C.**   All terms and conditions of this Endorsement, including the limits of insurance, will continue to apply during any extended reporting period.

**D.**   The existence of any extended reporting period will not increase or reinstate the limits of insurance shown in the Schedule.

## SECTION IX – OTHER INSURANCE

The coverage provided by this Endorsement will be excess insurance over any other valid and collectible insurance available, including any self insured retention or deductible portion thereof, whether such insurance is stated to be primary, pro rata, contributory, excess, contingent or otherwise, unless such insurance specifically applies as excess insurance over the insurance provided under this Endorsement.

## SECTION X – ARBITRATION

Notwithstanding any other provision of this Endorsement or the Policy, any irreconcilable dispute between the Company and an **insured** is to be resolved by arbitration in accordance with the then current rules of the American Arbitration Association, except that the arbitration panel shall consist of one arbitrator selected by the **insured**, one arbitrator selected by the Company, and a third independent arbitrator selected by the first two arbitrators. Both parties must agree to arbitration at the time of dispute. Judgment upon the award may be entered in any court having jurisdiction. The arbitrator has the power to decide any dispute between the Company and the **insured** concerning the application or interpretation of this Endorsement. However, the arbitrator shall have no power to change or add to the provisions of this Endorsement. The **insured** and the Company will share equally in the cost of arbitration.

COMMERCIAL GENERAL LIABILITY
CG 00 37 04 13

# PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES
## PRODUCTS/COMPLETED OPERATIONS

## BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" included within the "products-completed operations hazard" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

**f. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you; or

**(4)** Personal property in the care, custody or control of the insured.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)** and **(4)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

**h. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**i. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**j. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**k. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**l. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**SUPPLEMENTARY PAYMENTS**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   **a.** All expenses we incur.

   **b.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   **c.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   **d.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   **e.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   **f.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   **a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   **b.** This insurance applies to such liability assumed by the insured;

   **c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   **d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   **e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   **f.** The indemnitee:

      **(1)** Agrees in writing to:

         **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

         **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

         **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      **(2)** Provides us with written authorization to:

         **(a)** Obtain records and other information related to the "suit"; and

         **(b)** Conduct and control the defense of the indemnitee in such "suit".

   So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverages – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

   Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

**(1)** "Bodily injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee") or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**b.** Coverage does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**3.** Subject to Paragraph **2.** above, the Each Occurrence Limit is the most we will pay for damages because of all "bodily injury" and "property damage" arising out of any one "occurrence".

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – PRODUCTS/COMPLETED OPERATIONS LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim. To the extent possible, notice should include:

      **(1)** How, when and where the "occurrence" took place;

      **(2)** The names and addresses of any injured persons and witnesses; and

      **(3)** The nature and location of any injury or damage arising out of the "occurrence".

   **b.** If a claim is made or "suit" is brought against any insured, you must:

      **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

      **(2)** Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

      **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      **(2)** Authorize us to obtain records and other information;

      **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

   **a. Primary Insurance**

      This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

   **b. Method Of Sharing**

      If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

      If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Premium Audit**

   **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**2.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**3.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of goods or products made or sold by you in the territory described in Paragraph **a.** above;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**4.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**5.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**6.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**7.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection, architectural or engineering activities.

**8.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**9.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**10.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**11.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**12.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)** When all of the work called for in your contract has been completed.

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products/completed operations are included.

**13.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from, computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**14.** "Suit" means a civil proceeding in which damages because of "bodily injury" or "property damage" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**15.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**16.** "Your product":

  **a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(a)** You;

      **(b)** Others trading under your name; or

      **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**17.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)** The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

POLICY NUMBER:   CPP-08129-E17-REG

**COMMERCIAL GENERAL LIABILITY**
**CG 20 18 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| Marquis Bank ISAOA/ATIMA<br>355 Alhambra Circle, Ste 1200<br>Coral Gables, FL 33134 | 2801 Greene Street<br>Hollywood, FL 33020 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012